**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) |
| Plaintiff, | ) ) ) Civil Action No. 12-0333 (GK) |
| v. | ) ) |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | ) ) ) |
| Defendant. | ) ) |

## DEFENDANT'S MOTION TO MODIFY THE SCHEDULING ORDER

### INTRODUCTION

Plaintiff Electronic Privacy Information Center ("EPIC" or "plaintiff") seeks, pursuant to the Freedom of Information Act, an enormous volume of classified and unclassified documents regarding the DIB Cyber Pilot, a cybersecurity pilot program jointly conducted by the Department of Defense and defendant the Department of Homeland Security ("DHS" or "defendant"). After identifying approximately 10,000 pages of documents as potentially responsive to EPIC's request, DHS asked EPIC to consider narrowing the scope of the request to avoid what would otherwise present a huge burden. A significant number of documents potentially responsive to the request are classified and would require detailed and time-consuming review by DHS and other agencies but would largely be exempt from disclosure under FOIA. Indeed, DHS estimated that it would need 18 months to complete the review and processing of the documents identified as potentially responsive. EPIC agreed to only a slight modification of its request, reducing the number of pages of potentially responsive documents to

approximately 9,200. EPIC refused to further narrow or clarify its request or to consent to the necessary time for DHS to process the documents.

DHS regrets that did not initially appreciate the enormity of the task presented in this case, which prevented it from immediately notifying the Court of the time that would be required to respond to plaintiff's FOIA request, and which renders it impossible for DHS to comply with the current scheduling order. But the conclusion that DHS needs ample time to process EPIC's request is inescapable. As detailed in the attached declaration by James V.M.L. Holzer, Director of Disclosure and FOIA Operations for the Department of Homeland Security Privacy Office, DHS has diligently attempted to conduct, as expeditiously as possible, a thorough search for responsive records. As a result of the thoroughness of its search, DHS now finds itself facing the unavoidably massive task of processing thousands of pages of documents and reviewing them line-by-line in consultation with other agencies. Many of the documents are classified and require painstaking classification review in order to segregate any non-exempt information that may be produced. The inter-agency nature of the cybersecurity pilot program that is the subject of EPIC's FOIA request requires review by multiple federal agencies to ensure that sensitive and often classified information is removed prior to production pursuant to one or more of FOIA's exemptions. This review is conducted in an iterative process, and it takes substantial time. *See* Holzer Decl. ¶ 36.

EPIC's refusal to further narrow its request and its demand that DHS review 9,200 pages of documents within five days would be unreasonable under any circumstances let alone the ones faced by DHS in this case.[1] As it stands, despite DHS's sustained efforts, the volume and

---

[1] EPIC's Complaint prays for the Court to "order Defendant to conduct an adequate search for agency records responsive to EPIC's FOIA Request within five working days of the

2

complexity of the requested records has made complying with the Court's order impossible. Given the extremely broad nature of EPIC's request, the volume of documents that are potentially responsive to the request, and the inter-agency coordination, consultation, referral, and review that is required, DHS estimates that it will be able to complete the processing of the approximately 9,200 pages of potentially responsive documents in 16 months. Accordingly, and as discussed further below, DHS respectfully requests that the Court modify the scheduling order to set the following deadlines: January 17, 2014 for defendant's complete production of documents; March 14, 2014 for defendant's motion for summary judgment; April 11, 2014 for plaintiff's opposition and cross-motion for summary judgment; April 25, 2014 for defendant's reply and opposition; May 9, 2014 for plaintiff's reply.

## FACTUAL AND PROCEDURAL BACKGROUND

The FOIA request at issue is the July 26, 2011 request sent by EPIC to DHS, requesting records related to the Defense Industrial Base Cyber Pilot—called the "DIB Cyber Pilot" for short. The DIB Cyber Pilot was a joint activity between the Department of Homeland Security and the Department of Defense to protect critical U.S. infrastructure. Under the pilot, the Government furnished classified threat and technical information to voluntarily participating Defense Industrial Base ("DIB") companies or their Commercial Service Providers ("CSPs"). This sensitive Government-furnished information enabled the DIB companies, or the CSPs on behalf of their DIB customers, to counter known malicious activity and to protect Department of Defense program information. EPIC's request sought:

---

date of the Court's Order in this matter," and "order Defendant to disclose all responsive agency records to EPIC's FOIA Request within ten days of the Court's Order in this matter," which would give DHS five days to produce records after completing its search.

      a) All contracts and communications with Lockheed Martin, CSC, SAIC, Northrop Grumman or other defense contractors regarding the [DIB Cyber Pilot];

      b) All contracts and communications with AT&T, Verizon, and CenturyLink or any other [Internet Service Providers] regarding the [DIB Cyber Pilot];

      c) All analyses, legal memoranda, and related records regarding the [DIB Cyber Pilot]; and

      d) Any memoranda of understanding between NSA and DHS or any other government agencies or corporations regarding the [DIB Cyber Pilot].[2]

EPIC's request cited a June 16, 2011 Washington Post article that quoted remarks made by Deputy Defense Secretary William J. Lynn III at a global security conference in Paris. The request incorrectly asserted that "no public name has been given" to the DIB Cyber Pilot. Holzer Decl. ¶ 6. To the contrary, Deputy Defense Secretary Lynn referred to the DIB Cyber Pilot by name during his remarks at the global security conference in Paris. Secretary Lynn stated:

> [L]ast month, the Department of Defense, in partnership with the Department of Homeland Security, established a pilot program with a handful of defense companies to provide more robust protection for their networks. In this Defense Industrial Base -- or DIB -- Cyber Pilot, the Defense Department is sharing classified threat intelligence with defense contractors or their commercial internet service providers along with the know-how to employ it in network defense. By furnishing network administrators with this threat intelligence, we will be able to strengthen the existing cyber defenses at defense companies.

*Id.*

---

[2] EPIC's request originally included a fifth category:  e) "Any privacy impact assessment performed as part of the development of the [DIB Cyber Pilot]." DHS provided a substantive response to that category on August 3, 2011, indicating that after conducting a search DHS had been unable to locate or identify any responsive records, and EPIC did not appeal DHS's determination.

The DHS Privacy Office (DHS Privacy) responded to EPIC's FOIA request on August 3, 2011, denying the request in part and indicating that it had referred the remainder of the request to the National Protection & Programs Directorate (NPPD) FOIA Office for processing and direct response because the documents requested were most likely to be located within NPPD offices.[3]  *Id.* ¶ 11.  NPPD is a component within DHS that works to advance the Department's risk-reduction mission.  *Id.*  NPPD includes several subcomponents, including the Office of Cybersecurity and Communications (CS&C), which is charged with assuring the security, resiliency, and reliability of the nation's cyber and communications infrastructure.  *Id.*  As the Holzer declaration explains, the NPPD FOIA Office generally processes requests on a first-in, first-in out basis.  *Id.* ¶ 12.  At the time the NPPD FOIA Office received EPIC's request, NPPD had approximately 180 FOIA requests pending in front of EPIC's request.[4]  *Id.*

On January 5, 2012, EPIC sent by facsimile to the NPPD FOIA Office a letter that purported to constitute a FOIA appeal with regard to the remaining four categories of plaintiff's FOIA request.  Prior to receiving EPIC's facsimile, NPPD FOIA had first tasked out the search for responsive documents to CS&C and then conferred repeatedly with CS&C regarding the appropriate way to proceed with EPIC's FOIA Request given its broad scope.  *Id.* ¶ 13.  After receiving the facsimile, a FOIA Specialist with NPPD updated an EPIC representative by telephone on the status of the FOIA request, indicating that it was being processed.  *Id.*  EPIC filed this lawsuit on March 1, 2012, and DHS answered on May 1, 2012.

---

[3] As noted in footnote 2, *supra*, DHS denied category (e) of EPIC's request because after conducting a search DHS had been unable to locate or identify any responsive records.  EPIC did not appeal that determination.

[4] In the past three years, NPPD has seen a fivefold increase in FOIA requests.  In 2009, NPPD received 58 FOIA requests; in 2010, NPPD received 155 FOIA requests; and in 2011, NPPD received 318 FOIA requests.  Holzer Decl. ¶ 17.

In early April 2012, the NPPD FOIA Office determined that, despite its continued efforts to coordinate the search for and produce records responsive to EPIC's FOIA request in a timely fashion, the process needed be accelerated. *Id.* ¶ 18. To develop a renewed search plan for documents related to this multi-faceted pilot project, the NPPD FOIA Office met with subject matter experts who had been involved in the DIB Cyber Pilot and with DHS Office of General Counsel (OGC) attorneys. *Id.* Together the NPPD FOIA Office and the experts identified the following NPPD subcomponents as the most likely to have responsive records, and tasked these offices with conducting electronic and physical record searches for potentially responsive documents: a) the NPPD Office of the Under Secretary; b) the NPPD Office of Privacy (NPPD Privacy); and c) the NPPD Office of Cybersecurity & Communications (CS&C), which as noted above, is responsible for enhancing the security, resiliency, and reliability of the nation's cyber and communications infrastructure. *Id.* They also crafted revised keyword searches to be used in electronically searching for responsive documents. *Id.*

In addition to tasking the NPPD Office of the Under Secretary, NPPD Privacy, and CS&C with searches, NPPD provided the original FOIA request to additional DHS offices—the DHS Office of General Counsel and the Office of Selective Acquisitions (OSA) within the DHS Office of the Chief Procurement Officer for review and possible response. *Id.* ¶ 19. The Office of the Chief Procurement Officer is located within the office of the DHS Under Secretary for Management, which is responsible for the DHS budget, appropriations, expenditure of funds, accounting and finance, and procurement, among other functions. *Id.* OSA is responsible for overseeing the execution of classified procurements. *Id.* The DHS Office of General Counsel (OGC) provided legal support to the project staff. *Id.*

These five separate offices—the NPPD Office of the Under Secretary, NPPD Privacy, CS&C, OGC, and OSA—had just begun to conduct searches for potentially responsive records under the terms of the renewed search plan when the District Court held a status conference in this matter on May 24, 2012.  *Id.* ¶ 20.  At that time, DHS was unable to provide the Court with an estimate of the volume of potentially responsive documents that would require review; nor could DHS provide the Court with a reasonable estimate of how long it would require to complete the overall search, review, processing, and production of all non-exempt records responsive to EPIC's FOIA request.[5]  *Id.*  Without the benefit of knowing the volume of documents that would require review and processing, the Court adopted plaintiff's proposed schedule and issued a scheduling order setting August 24, 2012 for defendant's complete production of documents and *Vaughn* index; September 24, 2012 for defendant's motion for summary judgment; October 24, 2012 for plaintiff's opposition and cross-motion for summary judgment; November 7, 2012 for defendant's reply and opposition; and November 21, 2012 for plaintiff's reply.  Dkt. # 12.

Following the Court's entry of its scheduling order, DHS diligently proceeded with its renewed search.  The NPPD FOIA Office and Office of General Counsel continued to work with the NPPD Office of the Under Secretary, NPPD Privacy, CS&C, and OSA to ensure that sufficient searches were being conducted.  *Id.* ¶ 21.  Three attorneys from OGC, including the Assistant General Counsel for Infrastructure Programs, assisted the NPPD FOIA Office and

---

[5] In the Joint Statement filed by the parties prior to the status conference, DHS noted that it was "unable to estimate the time needed for the consultation with and referral to other agencies" or "assess how long it will take to review and process the records" until after it had finished gathering the potentially responsive documents.  Dkt. # 11, at 2-3.

7

other offices with the search. *Id.* DHS also tapped the Office of the Chief Information Officer to assist with the searches, as the search included review of electronically archived documents. *Id.*

By the end of July, DHS had gathered more than 16,000 pages of potentially responsive documents. *Id.* ¶ 23. DHS recognized that it would likely need to ask for a modification of the Court's scheduling order, but before doing so DHS endeavored to get a proper handle on this enormous task so that it would be in a position to provide the Court with an accurate estimate of the time required to complete the processing and production of non-exempt records.

First, DHS officials worked to identify additional personnel to assist the three-person NPPD FOIA office with the remaining tasks required to process the huge volume of potentially responsive documents, including coordinating with other agencies, conducting line-by-line reviews, redacting exempt—often classified—material, and processing the non-exempt records for release. *Id.* ¶ 25. Recognizing that NPPD FOIA lacked the resources to process this volume of documents in a reasonable amount of time, DHS assigned DHS Privacy to assist with this FOIA request. *Id.* The DHS Privacy Office's FOIA section is led by the Deputy Chief FOIA Officer at the Senior Executive Service Level, one of few Senior Executive Service career FOIA positions in the Federal government. *Id.* In addition to the Deputy Chief FOIA Officer, there are three directors and nine Senior FOIA Program Specialists who process FOIA requests for the office. *Id.* The DHS Privacy Office has a greater number of FOIA staff and access to more individuals with the necessary clearances to review and redact classified documents. *Id.*

Second, DHS contacted classification review specialists within DHS and the other agencies whose review of the potentially responsive documents would be required, to establish mechanisms for sharing the documents and to start to develop a timeline for review. *Id.* ¶ 26. Because many of the potentially responsive documents are located on a classified system, the

documents remain presumptively classified and must be processed on classified systems until government officials with classification authority determine that all classified information has been removed or redacted and only non-classified, non-exempt information remains. *Id.* DHS must rely on couriers with the appropriate clearances to courier documents to the Sensitive Compartmented Information Facilities (SCIFs) required for reviewing the classified documents, which are spread throughout the Washington, DC metropolitan area, including DHS Headquarters, Rosslyn and Arlington locations of NPPD. *Id.* ¶¶ 26, 22.

Third, DHS assigned a team of FOIA specialists and attorneys to review the documents that had been gathered to remove duplicates and weed out documents that had turned up because of DHS's electronic keyword search but plainly were not responsive to EPIC's request. *Id.* ¶ 27. DHS FOIA professionals and attorneys who had been assigned to the project spent several weeks reviewing the more than 16,000 pages of documents and culled them down to approximately 10,000 pages. *Id.*

On August 24, 2012, DHS moved for a stay of the scheduling order so that the parties could discuss a possible narrowing of the scope of the request. Dkt. # 13. As DHS indicated in its stay motion, DHS would need to move for a modification of the schedule, but how much time DHS would need to request for the production of documents would depend on whether the parties would be able to reach agreement on narrowing the scope of EPIC's request. *Id*. at 1. The Court granted DHS's motion by Minute Order on August 27, 2012.

During the stay period, DHS furnished EPIC with detailed information both about the 10,000 pages of potentially responsive documents that DHS had identified and about the DIB Cyber Pilot, in order to allow EPIC to identify with increased particularity the records that it

seeks.[6]  On August 31, 2012, EPIC modified its request solely by rephrasing the third category of its request, changing it from "all analyses, legal memoranda, and related records regarding the [DIB Cyber Pilot] to "all legal and technical analyses, including legal memoranda, regarding the DIB cyber pilot," and by excluding draft documents from the record request.[7]

On September 5, 2012, DHS moved to continue the stay to provide DHS with a short period in which to assess EPIC's revised request and to allow the parties to continue discussions about the scope of EPIC's request.  Dkt. # 14.  The Court granted the motion that same day.  Dkt. # 16.

Thereafter, DHS advised EPIC that while the exclusion of "draft documents" from the scope of the request had marginally narrowed the volume of potentially responsive documents, rephrasing the third category of the request from "all analyses, legal memoranda, and related records regarding the DIB Cyber Pilot" to "all legal and technical analyses, including legal memoranda, regarding the DIB Cyber Pilot" did not reduce the volume of potentially responsive documents that require review and processing.[8]  DHS repeated its previous request for EPIC to clarify what is meant by the vague phrase "technical analyses."[9]  DHS also urged EPIC to reconsider its insistence that classified documents are within the scope of its request.[10]  EPIC is not entitled to classified information under the FOIA, and, as DHS explained, including

---

[6] Email from Lisa Marcus, Trial Attorney, U.S. Department of Justice to Amie Stepanovich, Associate Litigation Counsel, EPIC (Aug. 30, 2012) (on file with DHS).

[7] Email from Amie Stepanovich to Lisa Marcus (Aug. 31, 2012) (on file with DHS).

[8] Email from Lisa Marcus to Amie Stepanovich (Sept. 10, 2012) (on file with DHS).

[9] *Id.*

[10] *Id.*

classified documents within the scope of the request adds considerably to the amount of time that DHS would need to process the documents in order to produce non-exempt records to EPIC.[11]

EPIC refused to make further modifications to its request or to better define the phrase "technical analyses."[12]

Pursuant to Local Civil Rule 7(m), counsel for DHS met and conferred with counsel for EPIC about the subject of this motion. EPIC's counsel indicated that EPIC opposed the motion and would not consent to any additional time for DHS to review, process, and produce non-exempt responsive records.

## **Argument**

### **I.  DHS's Proposed Schedule Modification is Appropriate and Reasonable**

A defendant presented with a request for records under FOIA is required to conduct a "search reasonably calculated to uncover all relevant documents," *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1983), and review all records which are created or obtained by the defendant. *See U.S. Dep't of Justice of Tax Analyst*, 492 U.S. 136, 144-45 (1989). This Court has recognized that the scope of a FOIA plaintiff's request is "critical" in driving the deadline by which an agency must complete its production. *Appleton v. F.D.A.*, 254 F. Supp. 2d 6, 11 (D.D.C. 2003). Here, the scope of EPIC's request remains unreasonably broad in light of the deadlines under the existing scheduling order, as it requires the unrealistically rapid line-by-line review of approximately 9,200 pages of potentially responsive documents, many of which are classified documents.

---

[11] *Id.*

[12] Email from Amie Stepanovich to Lisa Marcus (Sept. 12, 2012) (on file with DHS).

The attached detailed declaration of James Holzer outlines DHS's sustained efforts to respond to EPIC's FOIA request as well as Mr. Holzer's reasoned estimate of the time required to complete the processing of EPIC's request. Repeatedly, DHS has added resources to coordinate the review and processing of potentially responsive records in order to comply with EPIC's request and the Court's order. *See* Holzer Decl. ¶¶ 19, 21, 25. But given the breadth of EPIC's request, the volume of potentially responsive classified records, and the significant inter-agency coordination required, Mr. Holzer expects that DHS will complete the processing of EPIC's request in 16 months. *Id.* ¶ 36.

DHS's proposed timeframe is not ideal, but it is both necessary and permissible. Courts have recognized that a defendant's untimely efforts to process a FOIA request do not deprive it of the opportunity to do so after litigation has commenced. *See, e.g.*, *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986). All that can really be said about an agency's failure to provide a timely response is that it gives a FOIA requester the right to sue in federal court. *See Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 58 (D.C. Cir. 1987). The lack of timely response does not, however, entitle a FOIA requester to substantive relief. Under 5 U.S.C. § 552(a)(4)(B), a federal court is authorized only to 'enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld. . . .'" *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982) (internal citations removed).

DHS must process the approximately 9,200 pages of potentially responsive documents before it can make the determination to withhold documents as exempt under FOIA. A lengthy search and a response outside of the 20-day time limit set in the FOIA statute do not preclude the eventual grant of summary judgment in an agency's favor. *See id.* ("This Court has concluded that the search conducted by defendant was reasonable and, as such, defendant's lack of

timeliness will not preclude summary judgment in its favor."); *Muhammad v. U.S. Customs & Border Protection*, 559 F. Supp. 2d 5, 7 (D.D.C. 2008) ("[D]efendant would be entitled to summary judgment because its search efforts were reasonable."); *Landmark Legal Found. v. E.P.A.*, 272 F. Supp. 2d 59, 62 (D.D.C. 2003) ("[A] lack of timeliness does not preclude summary judgment for an agency in a FOIA case. The only question for summary judgment is whether the agency finally conducted a reasonable search, and whether its withholdings are justified. When exactly a reasonable search was conducted is irrelevant.") As this Court has acknowledged, "[s]earches that last a year or more are not uncommon in FOIA cases." *Int'l Counsel Bureau v. U.S. Dep't of Defense*, 723 F. Supp. 2d 54, 59-60 (D.D.C. 2010) (alteration in original).

Courts have also recognized that agencies must proceed with care when processing classified documents, lest classified information be inadvertently released. *See, e.g.*, *James Madison Project v. CIA*, 607 F.Supp.2d 109, 131 (D.D.C. 2009). That is certainly the case here, where it is critical that reviewers take meticulous care to review the approximately 9,200 pages of potentially responsive documents. The DIB Cyber Pilot was a national security initiative, and accordingly many of the records related to the pilot, and responsive to EPIC's broad FOIA request, are classified. This is so because revealing certain details regarding the pilot could reveal information about cybersecurity vulnerabilities to those who would seek to exploit them. Despite the difficulties presented, DHS is committed to processing the potentially responsive documents as expeditiously as possible, using a line-by-line review. Holzer Decl. ¶¶ 31, 34.

Accordingly, DHS requests that the Court modify the scheduling order as follows: December 13, 2013 for defendant's complete production of documents; February 6, 2014 for defendant's motion for summary judgment; March 6, 2014 for plaintiff's opposition and cross-

motion for summary judgment; March 20, 2014 for defendant's reply and opposition; April 3, 2014 for plaintiff's reply.  Of course, should plaintiff substantially reformulate or narrow its request, the time and resources required for defendant to complete processing of the request and to its dispositive motion would be proportionately reduced, and defendant would so advise both plaintiff and the Court.

## II. Given the Likely Volume of Records That Will Be Partially Redacted or Withheld In Full as Exempt Under 5 U.S.C. § 552(b)(1), Requiring a Vaughn Index in Advance of DHS's Motion for Summary Judgment Would Be Unduly Burdensome

It is blackletter law that an agency must bring forth evidence justifying its withholdings only "in connection with a motion for summary judgment filed by a defendant in a civil action pending in court." *Schwarz v. U.S. Dep't of Treasury*, 131 F. Supp. 2d 142, 147 (D.D.C. 2000) (citing *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  Thus, notwithstanding decisions of other courts to order the production of a *Vaughn* Index prematurely,[13] *see, e.g.*, *Am. Civil Liberties Union v. Dep't of Defense*, 339 F. Supp. 2d 501, 505 (S.D.N.Y. 2004), courts of this jurisdiction have made clear that an agency that has not yet moved for summary judgment on a FOIA claim need not provide a *Vaughn* Index, *see Bangoura v. U.S. Dep't of Army*, 607 F. Supp. 2d 134, 143 n.8 (D.D.C. 2009); *see also Gallant v. N.L.R.B.*, 26 F.3d 168, 172 (D.C. Cir. 1994) ("Appellant . . . requests this court to order the production of a *Vaughn* Index . . . . This we decline to do."); *Voinche v. FBI*, 412 F. Supp. 2d 60, 65 (D.D.C. 2006) ("[A]n agency does not have to provide an index per se.").

A *Vaughn* Index is one option available to an agency seeking to sustain its evidentiary burden of proving that withheld information falls within a FOIA exemption, but it is not the only

---

[13] A *Vaughn* index is an itemized index, correlating each withheld document or portion of a document with a specific FOIA exemption and the agency's nondisclosure justification. *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

14

one. *See, e.g.*, *Gallant*, 26 F.3d at 172-73 (noting that an agency's evidence may take "the form of an *in camera* review of the actual documents, something labeled a 'Vaughn Index,' a detailed affidavit, or oral testimony"). "Indeed, an agency may . . . submit other measures in combination with or in lieu of the index itself." *Judicial Watch, Inc. v. F.D.A.*, 449 F.3d 141, 146 (D.C. Cir. 2006).

Moreover, both the Court of Appeals and this Court have explained that it may be appropriate for an agency to index only a sample of the responsive documents when "the number of documents is excessive," *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1490 (D.C.Cir.1984), or where "the plaintiff's request for a comprehensive *Vaughn* index would be unduly burdensome to the agency," *Campaign for Responsible Transplantation v. F.D.A.*, 180 F.Supp.2d 29, 34 (D.D.C. 2001). In *Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1149-51 (D.C.Cir.1991) (Bader Ginsburg, J.), the Court of Appeals approved a sample of 63 of 1,776 disputed documents for a *Vaughn* index and held that representative sampling is "an appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved." Similarly, "in *Dowd v. Calabrese*, 101 F.R.D. 427, 437 (D.D.C.1984), this court held that the production of a *Vaughn* index for 15,000 pages of documents was unduly burdensome." *Campaign for Responsible Transplantation*, 180 F.Supp.2d at 34.

Given the volume of potentially responsive documents, and the likely volume of material that DHS will determine to be exempt as classified pursuant to 5 U.S.C. § 552(b)(1), it is now clear that requiring DHS to produce a *Vaughn* index in advance of summary judgment would be unduly burdensome. When it does file for summary judgment, DHS should be allowed, consistent with settled precedent, to justify its withholdings by submitting other measures in

combination with or in lieu of a *Vaughn* index itself, and to submit a partial or sample *Vaughn* index if appropriate. *See Judicial Watch*, 449 F.3d at 146.

## CONCLUSION

For the above stated reasons, and good cause shown, this Court should grant DHS's motion to modify the scheduling order.

Dated:  September 14, 2012
Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

JOHN R. TYLER
Assistant Director

*/s/ Lisa Zeidner Marcus*
LISA ZEIDNER MARCUS
N.Y. Bar Registration No. 4461679
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch

Mailing Address:
c/o U.S. Attorney's Office
700 Grant St., Suite 4000
Pittsburgh, PA 15219

Federal Programs Branch Address:
20 Massachusetts Avenue, Room 6134
Washington, DC 20001

Tel: (202) 514-3336
Fax: (412) 644-6995
E-mail: lisa.marcus@usdoj.gov

Attorneys for Defendant