# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| ELECTRONIC PRIVACY | ) | |
| INFORMATION CENTER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:12-cv-00333-GK |
| | ) | |
| THE UNITED STATES DEPARTMENT | ) | |
| OF HOMELAND SECURITY | ) | |
| | ) | |
| Defendant. | ) | |

_____

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO MODIFY THE SCHEDULING ORDER AND CROSS-MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY DEFENDANT SHOULD NOT BE HELD IN CONTEMPT

Defendant Department of Homeland Security ("DHS") has three times missed a Court-ordered deadline for production of documents in this Freedom of Information Act case. Even after DHS represented to the Court that it could produce documents several months ago, it has not even made a pro forma production. Moreover, EPIC promptly agreed to narrow the scope of its request in reliance on the agency's representations that this would facilitate production. Accordingly, EPIC opposes the DHS motion to modify the scheduling order and cross-moves for the entry of an Order for DHS to show cause as to why DHS should not be held in contempt.

## STATEMENT OF FACTS

This case arises from a FOIA Request EPIC submitted to DHS on July 26, 2011. Pls. Compl. ¶ 17. As the agency failed to make a determination on the FOIA Request, U.S.C. §552(a)(6), EPIC submitted an administrative appeal on January 5, 2012. *Id*. ¶¶ 25-26; Declaration of Amie Stepanovich ("Stepanovich Decl.") ¶ 11, attached to this Motion as Exhibit 1. EPIC filed suit to compel the production of responsive records in March 2012. On May 21, 2012, the parties filed a Joint Meet and Confer Statement in which they agreed on all matters except the proposed schedule. On May 24, 2012, upon consideration of the parties' Joint Meet and Confer Statement, this Court set out a Scheduling Order that required Defendant's complete production of documents and *Vaughn* index by August 24, 2012.

In a filing with this Court regarding the Scheduling Order, the agency proposed to identify documents that are potentially responsive to the EPIC FOIA Request within "approximately six weeks," or by around June 27, 2012 and then to "make its first production by July 18, 2012." Joint Meet and Confer Statement, Dkt. No. 11 ¶ 6.

On Friday, August 24, 2012, at approximately 3:30 PM, counsel for DHS contacted EPIC for the first time since the Court entered the Scheduling Order. Stepanovich Decl. ¶ 18. DHS indicated that it would file

for a ten-day stay and asked EPIC to narrow the scope of the FOIA Request

it had submitted to the agency on July 26, 2011. *Id.* At no prior point had

DHS discussed narrowing the scope of EPIC's FOIA Request. *Id.* ¶ 17. In

fact, DHS itself stated "[d]uring January of 2012, a FOIA specialist with

NPPD spoke with EPIC by telephone and discussed the status of the FOIA

request, indicating that it was being processed. " Def. Mot. at 5; Declaration

of James V.M.L. Holzer ("Holzer Decl.") ¶ 13, attached to Def. Mot. If the

government believed that the request was overly broad, that would have

been the time to discuss narrowing the request.

   Nonetheless, EPIC did not oppose the government's first motion for a

stay.

   Following this Court's grant of the first ten-day stay, DHS waited

almost a week to contact EPIC, at which time counsel stated that the "vast

majority" of records potentially responsive to EPIC's FOIA request were in

the category third category of EPIC's FOIA Request.[1] In order to facilitate

the production of records, and relying on this representation, EPIC promptly

agreed to significantly narrow the scope of the FOIA request, asking simply

---

[1] Email from Lisa Marcus, Trial Attorney, U.S. Department of Justice to
Amie Stepanovich, Associate Litigation Counsel, EPIC (Aug. 30, 2012) (on
file with EPIC) ("The vast majority of the 10,000 pages have been identified
as potentially responsive to the 3rd category of requested records: 'all
analyses, legal memoranda, and related records regarding the [DIB Cyber
Pilot].'").

for "all legal and technical analyses, including legal memoranda, regarding the DIB cyber pilot."[2] EPIC further agreed to exclude any draft documents from the FOIA Request.[3] EPIC did not agree to exclude documents originating at other agencies or documents that the agency deemed to contain classified information, as these documents are still subject to the FOIA and EPIC has litigated such agency determinations in the past.[4]

On September 4, 2012, DHS filed for a second ten-day stay. EPIC opposed DHS' motion, stating the agency had essentially ignored the Court's deadline, waited until the last moment to begin processing of the request, obtained EPIC's agreement to narrow significantly the scope of the request and still claimed there were a large number of documents, and simply sought further delay without a clear commitment to provide documents responsive to the request. Dkt. No. 15. The Court granted DHS' motion. Dkt. No. 16. However, the Court stated that "this is the FINAL stay that will be granted." *Id.*

Now, despite the fourteen months since DHS received EPIC's FOIA Request, despite DHS' representation that it could make an initial production

_____

[2] Email from Amie Stepanovich, Associate Litigation Counsel, EPIC, to Lisa Marcus, DOJ (Aug. 31, 2012) (on file with EPIC).
[3] *Id.*
[4] *Id.*

of documents by July 18, 2012, despite this Court's Scheduling Order, and despite two consecutive ten-day stays, DHS requests an additional sixteen months before it will comply with statutory obligations.[5]

## ARGUMENT

DHS has failed to demonstrate good cause to support its current motion for the Court to modify the scheduling order to permit an additional sixteen months to process EPIC's FOIA Request. Fed. R. Civ. P. 16(b). Further, DHS has failed to comply with the clear and unambiguous September 9, 2012 Order of this Court indicating that no additional stays would be granted in this matter.

For the reasons discussed herein, the Court should deny DHS' request to modify the Scheduling Order. EPIC also respectfully requests that this Court order DHS to show cause as to why it should not be held in contempt.

## I.      DHS Fails to Show Good Cause To Justify the Agency's Request For A Sixteen-Month Extension

Under the Freedom of Information Act, an agency has twenty working days to respond to a request and notify the requester as to its determination of whether to comply. 5 U.S.C. § 552(a)(6)(A)(i). When an agency fails to do so, the requester "shall be deemed to have exhausted his administrative

---

[5] Notably, DHS' proposed modification to the scheduling order also seeks an additional three months in order for DHS to complete its Motion for Summary Judgment, further delaying the timeline of this litigation.

remedies" and may commence an action in district court seeking the prompt production of requested records. 5 U.S.C. § 552(a)(6)(C)(i).

Once in litigation, FOIA lawsuits are typically resolved on cross-motions for summary judgment. *Reliant Energy Power Generation v. FERC*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007). These motions are governed by the Court's scheduling order in each case. *See Skybridge Spectrum Foundation v. FCC*, 842 F. Supp. 2d 65, 74 (D.D.C. 2012) ("After the FCC filed a responsive pleading, the Court set a schedule for the briefing of motions for summary judgment."); *Blazy v. Tenet*, 979 F. Supp. 10, 27 (D.D.C. 1997) (reprimanding pro se plaintiff for filing motions outside of the Court's scheduling order).

A scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarding by counsel without peril." *DAG Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 104 (D.D.C. 2005) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir.1992)); *see also Olgyay v. Soc'y For Envtl. Graphic Designs, Inc.*, 169 F.R.D. 219, 220 (D.D.C.1996) ("A scheduling order . . . is intended to serve 'as the unalterable road map (absent good cause) for the remainder of the case.'") (citation omitted). Indeed, to "disregard . . . the order would undermine the court's ability to control its docket, disrupt the agreed-upon

course of the litigation, and reward the indolent and the cavalier." *DAG Enterprises,* 226 F.R.D. at 104 (quotations omitted). Once entered, a scheduling order "shall not be modified except upon showing of good cause and by leave of the district judge." Fed. R. Civ. P. 16(b)(4); *see also* LCvR 16.4 ("The court may modify the scheduling order at any time upon a showing of good cause."). The primary factor in a good cause determination is the diligence of the party seeking the modification. *Saunders v. District of Columbia*, 279 F.R.D. 35, 38 (D.D.C. 2012). "If that party is not diligent, the inquiry should end." *DAG Enterprises*, 226 F.R.D. at 105 (quotations omitted). As this court has held, "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.* 2007 WL 1589495 at *6 (D.D.C. 2007).

Here, DHS fails to establish good cause for a modification, as the delay is almost entirely the result of preventable carelessness on the part of the agency. Thus, to avoid "reward[ing] the indolent and the cavalier," this Court should deny the agency's request to modify the Scheduling Order.

### A.    The Scope of EPIC's FOIA Request Does Not Provide Good Cause for a 16-Month Modification to the Scheduling Order

DHS did not contact EPIC regarding the scope of EPIC's FOIA Request until the afternoon of August 24, 2012, the date by which this Court

ordered DHS to produce all responsive records and a *Vaughn* index. Stepanovich Decl. ¶ 17. During the course of the two consecutive ten-day stays DHS was granted, EPIC responded quickly and in good faith to all requests made by DHS. *Id.* at ¶ 19-22. EPIC agreed to substantially narrow the category of records that DHS had represented to constitute "the vast majority" of responsive records, and further consented to omit any draft documents from the scope of EPIC's FOIA Request. *Id.* at ¶ 20.

DHS did not ask EPIC to narrow the scope of its FOIA Request prior to August 24, 2012 . In fact, no communications between EPIC and DHS prior to August 24, 2012, related in any way to the scope of EPIC's FOIA Request. *Id.* ¶ 17. Now, despite EPIC's good faith efforts to reasonably narrow the scope of its FOIA Request, even at this late stage of the litigation, DHS requests an additional sixteen months for processing. Def. Mot. at 11.

DHS should not be permitted to wait until a deadline for document production to raise questions about the scope of the request. Such an argument evinces bad faith. *See Moore v. Chertoff*, 255 F.R.D. 10, 35 (D.D.C. 2008) ("However, it is settled that 'bad faith does not require actual ill will; substantial and prejudicial obduracy may constitute bad faith.'") (internal citations omitted).

**B.    Other Considerations Do Not Provide Good Cause for a 16-Month Modification to the Scheduling Order**

DHS erroneously asserts that EPIC is "not entitled to classified information under the FOIA." Def. Mot. at 10-11. In fact, the FOIA only exempts documents that are "specifically authorized" to be kept secret and are "properly classified" pursuant to that authorization. *See* 5 U.S.C. § 552(b)(1). As such, it is a legal question as to whether records are "properly classified" pursuant to the FOIA, and one which is routinely litigated in FOIA matters. *See, e.g.*, EPIC's Opposition and Cross Motion for Summary Judgment, *EPIC v. National Security Agency*, No. 10-00196 Dkt. No. 14 at 22-25 (D.D.C. filed Feb. 2, 2010) ("To properly invoke FOIA Exemption 1, the 'government must demonstrate that information is in fact properly classified pursuant to both procedural and substantive criteria.'") (internal citations omitted).

Moreover, DHS has not provided any information that would allow EPIC to make a meaningful determination as to which records could be excluded. Def. Mot at 11 (noting only that "many" of the pages of potentially responsive documents are classified). Agencies are routinely required to process records within specified timetables. *See, e.g.*, *Allen v. FBI*, 716 F. Supp. 667 (D.D.C. 1988) (FBI agreed to process responsive records at a rate of 5,000 pages per month); *Meeropol v. Meese*, 790 F.2d

942 (D.C. Cir. 1986) (FBI ordered by the district court to "search, process [sic] documents at the rate of 40,000 pages per month."); *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976) (Federal district court ordered the FBI to review a minimum of 4,000 pages per month until plaintiff's request was processed).

Good cause does not exist to now grant DHS a sixteen-month delay in the processing of EPIC's FOIA Request. The fact that DHS now refuses to comply with the Court's scheduling order is a result only of the agency's own carelessness.

**II.      This Court Should Order DHS to Show Cause Why the Agency Should Not be Held in Civil Contempt Because DHS Has Violated a Clear and Unambiguous Court Order**

There is "no question" that this Court has the inherent power to enforce compliance with its lawful orders through civil contempt. *Shillitani v. United States*, 384 U.S. 364, 370 (1966); *see also Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass LLC*, 736 F. Supp. 2d 35, 38 (D.D.C. 2010) ("Civil contempt is a remedial device that a court can utilize to achieve full compliance with its orders."). In order to show contempt, EPIC must: (1) establish the existence of an order that is "clear and unambiguous," *Salazar ex rel. Salazar v. Dist. of Columbia*, 602 F.3d 431, 442 (D.C. Cir. 2010); and (2) demonstrate, by clear and

convincing evidence, that DHS has violated that order. S*ee Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C.Cir.2006); *see also Negley v. F.B.I.*, 766 F. Supp. 2d 190, 193 (D.D.C. 2011). Importantly, civil contempt operates according to a strict liability standard: "the intent of the recalcitrant party is irrelevant," *Negley*, 766 F. Supp. 2d at 193. Once EPIC has made the above showing, the burden shifts to DHS to justify its noncompliance by, for example, showing a good faith attempt to comply. *Int'l Painters*, 736 F. Supp. 2d, at 38.

EPIC has satisfied its burden in this case. DHS has violated a clear and unambiguous order from this Court granting a "final" stay of the case through September 14, 2012. That date has now passed without the production of a single document, and the agency's latest motion indicates that it will not comply for at least another sixteen months.

## A.   This Court's Order of September 9, 2012 is Clear and Unambiguous

This Court's September 9, 2012 order is clear and unambiguous: it directs that "the case is stayed up to and including September 14, 2012," and states that "this will be the FINAL stay." Dkt. No. 16. Indeed, it is hard to imagine an order being any more clear or unambiguous. The Order's meaning depends not on a phrase or clause but on a date, "September 14, 2012" and the word "final"—a word with a clear, readily-ascertainable

meaning. *See Kapral v. United States*, 166 F.3d 565, 570 (3d Cir. 1999)

(citing Black's Law Dictionary 629 (6th ed.1990), defining "final" as "[l]ast;

conclusive; decisive; definitive; terminated; completed" and defining "final

decision or judgment" as "[o]ne which leaves nothing open to further dispute

and which sets at rest cause of action between the parties."); *Bell*

*Laboratories, Inc. v. Colonial Products, Inc.*, 644 F. Supp. 542, 545 (S.D.

Fla. 1986) (citing Webster's International Dictionary (2nd ed.), defining

"final" as "an adjective: (1) pertaining to the end or conclusion, last,

ultimate, as the final issue, final hope, final solution; (2) conclusive,

decisive, determinative, as a final judgment, (3) of purpose, result, and as a

noun . . . the termination, the last."). Thus, the "clear and unambiguous"

meaning of the September 9, 2012 Order is to give DHS through September

14, 2012, *and no longer*, to accomplish the production of documents and

*Vaughn* index required by the original scheduling order. *See* Dkt. No. 12.

### B.   Clear and Convincing Evidence Demonstrates that DHS Has Violated This Court's Order of September 9, 2012

EPIC has clearly and convincingly demonstrated a violation of this

Court's September 9, 2012 Order. As of the date of this Motion, DHS has

produced not a single document, nor has the agency produced a *Vaughn*

index.  Stepanovich Decl. ¶ 23. DHS has not contradicted EPIC's

representations, and through filing yet another extension, the agency has all

but conceded to them. Thus, EPIC has demonstrated a violation of this Court's September 9, 2012 Order. *See Int'l Painters,* 736 F. Supp. 2d, at 39 ("Through these unrebutted representations, the plaintiffs have offered clear and convincing evidence that the defendant has failed to comply with the order.").

DHS cannot claim a good faith compliance with this Court's September 9, 2012 Order. "'Some attempts' at compliance are not enough to pass the close scrutiny of the alleged contemnor's claims*," NAACP v. Brock*, 619 F. Supp. at 850, and here DHS has made no attempt at compliance. In fact, by seeking another extension, the agency has plainly indicated that it will not comply. *See Am. Rivers v. U.S. Army Corps of Engineers*, 274 F. Supp. 2d 62, 68 (D.D.C. 2003) ("Moving to stay an order does not represent a good faith effort to comply with that order; rather, it represents an effort to postpone compliance with that order in the hope that it will be overturned on appeal."). Finally, the records are in the possession of the agency, and a defense of good faith is not available for "self-induced" delay. *See S.E.C. v. Showalter*, 227 F. Supp. 2d 110, 120 (D.D.C. 2002) ("[T]o the extent that a defendant's inability to comply is self-induced, it is not a defense to a finding of contempt.").

Although contempt is a "potent weapon," *Int'l Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76, (1967), a court must "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.,* 370 U.S. 626, 630–31 (1962). *See also In re Fletcher*, 216 F.2d 915, 917 (4th Cir. 1954) (a court must take "affirmative action when [its] lawful commands . . . are defied."). Unnecessary delays and wasted judicial resources are some of the harms that have caused other courts to exercise their contempt powers. *See Johnson v. Sec'y, Dept. of Health & Human Services*, 587 F. Supp. 1117, (D.D.C. 1984) (ordering a show cause hearing for the Department of Health and Human Services as a result of delays that were "not well grounded in fact or warranted by existing law and [were] interposed to cause unnecessary delay and needless increase in the cost of this litigation.").

DHS is engaged in similar, wasteful delay in this case. Despite this Court's grant of a "final" stay, DHS has not yet begun to produce documents, and instead seeks to delay this case by a further sixteen months. DHS's refusal to follow a clear order of this Court is exactly the type of behavior that led to the development of the contempt power. *Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 798 (1987) ("The underlying concern that gave rise to the contempt power was . . .

disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial."). Thus, this Court should order DHS to show cause as to why it should not be held in contempt.

**CONCLUSION**

For the foregoing reasons, the Court should deny DHS' motion for a sixteen-month extension in this Court's scheduling order because DHS fails to demonstrate good cause in order to modify the scheduling order. Further, the Court should require that DHS show cause as to why it should not be held in contempt for its failure to comply with this Court's September 9, 2012 Order.

Respectfully submitted,

September 19, 2012                    /s/ Marc Rotenberg_____
DATE                                 MARC ROTENBERG
                                     GINGER McCALL
                                     AMIE STEPANOVICH[*]
                                     Electronic Privacy Information Center
                                     1718 Connecticut Ave., NW
                                     Suite 200
                                     Washington, D.C. 20009
                                     (202) 483-1140
                                     Counsel for Plaintiff

_____

[*] Amie Stepanovich is barred in New York State. Her application for admission in the District of Columbia is pending.