# Exhibit 1

*Electronic Privacy Information Center v. Department of Homeland Security*
No. 12-00333 (GK)

Plaintiff's Opposition to Defendant's Motion to Modify the Scheduling
Order and Cross-Motion for DHS to Show Cause As to Why It Should Not
Be Held in Contempt

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| ELECTRONIC PRIVACY | ) | |
| INFORMATION CENTER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:12-cv-00333-GK |
| | ) | |
| THE UNITED STATES DEPARTMENT OF | ) | |
| HOMELAND SECURITY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DECLARATION OF AMIE STEPANOVICH**

I, AMIE STEPANOVICH, declare as follows:

1. I am Associate Litigation Counsel for the Plaintiff, Electronic Privacy
   Information Center ("EPIC").

2. I have been a licensed attorney in the State of New York since January 2011. In
   December 2011 I submitted an application for admission to the District of
   Columbia bar, which is now pending.

3. Plaintiff EPIC is a non-profit corporation located in Washington, D.C. EPIC was
   established in 1994 to focus public attention on emerging civil liberties issues and
   to protect privacy, the First Amendment, and other constitutional values. EPIC
   frequently submits Freedom of Information Act ("FOIA") requests and publishes
   records on its website in order to inform the public about the activities of federal
   agencies that implicate important privacy interests.

4.  I have been employed by EPIC since August 2010. I have pursued many FOIA requests with different administrative agencies. I make the following statements based upon my personal knowledge of this matter.

5.  The topic of the present FOIA request is of great importance to EPIC and aligns directly with the core purpose of the organization..

6.  The government's monitoring of private communications is of long-standing concern to the public, and is currently the subject of legislative proposals, cybersecurity strategies, and executive orders.

7.  EPIC's FOIA request seeks to inform the public about a vital topic of privacy and civil liberties.

8.  EPIC has pursued this request diligently, purposefully, and with due regard to the obligations that the FOIA places on federal agencies

9.  The purpose of this declaration is to provide the Court with a description of EPIC's communications with DHS and to explain how DHS has acted carelessly in regard to the processing of EPIC's FOIA Request.

10. On July 26, 2011, EPIC Open Government Director Ginger McCall and EPIC Law Clerk Andrew Christy submitted via facsimile a FOIA request on the Defense Industrial Base ("DIB") Cyber Pilot to DHS.

11. On January 5, 2011, after DHS failed to comply with the deadlines set out in the FOIA, I transmitted via facsimile an administrative appeal to the National Protection and Programs Directorate ("NPPD"), the sub-component where EPIC's FOIA Request was referred.

12. On January 23, 2012, I received a phone call from an official with NPPD, asking for EPIC to provide contract numbers in regard to category one of EPIC's FOIA Request. I indicated that the contract numbers were not public information, and the official stated that she would "start processing" EPIC's FOIA Request.

13. Through the date of EPIC's complaint, DHS failed to make a substantive determination regarding Categories 1-4 of EPIC's FOIA Request.

14. Noting DHS' failure to provide any substantive response to categories 1-4 of EPIC's FOIA Request, EPIC filed a complaint against DHS on March 1, 2012.

15. Between May 10, 2012 and May 21, 2012, I communicated multiple times with the counsel for DHS regarding the parties' Joint Meet and Confer Statement. DHS represented to me that a search for responsive records could be completed in six weeks, approximately late June 2012, and further represented that an initial production of documents could be made on July 18, 2012.

16. The parties had no further communications regarding this matter between the entry of the Scheduling Order on May 24, 2012 and the court-ordered date for a final production of documents and the Vaughn Index, August 24, 2012.

17. At no point prior to August 24, 2012 did counsel for DHS or any official with DHS discuss the scope of EPIC's FOIA Request or request EPIC to narrow the scope of its FOIA Request.

18. On August 24, 2012, at approximately 3:30 PM, counsel for DHS contacted me by telephone, indicating that the agency would file for a ten-day stay and asking EPIC to narrow the scope of its FOIA Request.

19. On August 30, 2012, counsel for DHS contacted me and provided information about the topic of EPIC's FOIA Request. DHS asserted, "the vast majority of the 10,000 pages have been identified as potentially responsive to the 3rd category of requested records." DHS requested that EPIC (1) better define the words "analyses" and "related records" in the third category; (2) limit EPIC's request to unclassified materials; (3) limit EPIC's request to exclude draft documents; and (4) limit EPIC's request to include only documents created by DHS.

20. On August 31, 2012, the day after I received the communications from counsel for DHS, I agreed to substantially narrow the scope of EPIC's FOIA Request. Relying on the representations put forward by the agency, EPIC agreed to remove the reference to "related records" and clarified that "analyses" referred to only "legal and technical" analyses of the program. I further agreed to exclude all draft documents from the scope of the request. However, I said that EPIC did not consent to exclude classified information or records that were not created by DHS, as EPIC has the right to challenge these determinations by the agency and had done so in the past.

21. On September 10, 2012, four days prior to the deadline of the Final Stay of this court, counsel for DHS contacted me and requested that EPIC further narrow the scope of its FOIA Request. In contradiction of the Agency's previous representations, DHS indicated that EPIC's consent to significantly modify category three of EPIC's FOIA Request had no impact on the volume of potentially responsive records. DHS did not explain how a further narrowing

would have any additional impact. I replied that EPIC could not make further

modifications to the scope of EPIC's request.

22. Throughout the scope of this litigation, EPIC has responded quickly and in good

faith to every communication from DHS.

23. DHS has not yet provided a single record to EPIC.

Under penalty of perjury, I hereby affirm that the foregoing is true and correct to the best

of my knowledge and belief.


\_\_September 19, 2012\_\_\_                      \_/s/ Amie Stepanovich_____
DATE                                             AMIE STEPANOVICH