**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 12-0333 (GK) |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF
ITS MOTION TO MODIFY THE SCHEDULING ORDER AND
OPPOSTION TO PLAINTIFF'S CROSS-MOTION**

Rather than presenting a reasonable counter-proposal to DHS's proposed scheduling modification, EPIC insists that the Court should allow DHS no additional time to process the approximately 9,200 pages of potentially responsive documents, many of which are classified. For the following reasons, and those advanced in DHS's opening brief, the Court should grant DHS's motion and deny EPIC's cross-motion.

**I.    DHS Has Demonstrated Good Cause**

Defendant has demonstrated good cause for the Court to modify the scheduling order: having conducted a thorough search for responsive records, DHS now faces the unavoidably massive task of processing approximately 9,200 pages of documents, many of which are classified, using a painstaking line-by-line review and an iterative, inter-agency process. Plaintiff's opposition completely ignores the detailed declaration of James V.M.L. Holzer, Director of Disclosure and FOIA Operations for the Department of Homeland Security Privacy Office, which was submitted in support of defendant's motion.  The thirteen-page Holzer

declaration amply demonstrates that DHS officials have worked diligently to conduct a search for responsive records, tasking five separate offices with conducting searches and repeatedly adding resources to assist with responding to the FOIA request.  Plaintiff provides no support for its argument that the required schedule modification here is actually "almost entirely the result of preventable carelessness on the part of the agency," rather than due to the broad nature of plaintiff's request.  Nor does plaintiff provide any basis for the Court to doubt Mr. Holzer's well-reasoned estimation that sixteen months are required to complete processing of the approximately 9,200 pages of potentially responsive documents that DHS has identified.

DHS has proposed an appropriate and reasonable schedule modification in light of both its limited resources and the enormous volume of potentially responsive documents that it recently discovered.  In support of its request, DHS has submitted the straightforward and logical declaration of James Holzer.  It is well-settled that "[a]ffidavits submitted by an agency are accorded substantial weight.  Mere unconfirmed allegations of bad faith will not undermine the agency's credibility." *Judicial Watch, Inc. v. Clinton*, 880 F. Supp. 1, 10 (D.D.C. 1995) (citations and footnote omitted); *see also Pickering-George v. DEA*, 553 F. Supp. 2d 3, 5 (D.D.C. 2008) ("Because agency declarations are accorded a presumption of good faith, it is incumbent upon the plaintiff to point to evidence sufficient to put the Agency's good faith into doubt." (citations omitted)).  EPIC does not point to any evidence that would contradict the Holzer declaration.  EPIC's opposition does not even acknowledge the Holzer declaration.

EPIC also ignores the substantial justification that DHS has provided for the delay in processing EPIC's request, including the fact that when the National Protection & Programs Directorate (NPPD) received EPIC's FOIA request, it had approximately 180 FOIA requests pending in front of EPIC's request.  In the past three years, NPPD has seen a fivefold increase in

FOIA requests.  Nonetheless, DHS has made significant progress by completing the initial search

for records responsive to EPIC's request and by culling down more than 16,000 pages to the

approximately 9,200 potentially responsive pages that remain.  Not once in its opposition does

EPIC acknowledge the enormous volume of documents that require review and processing

before non-exempt responsive records can be released to plaintiff.  This volume is a direct result

of EPIC's refusal to considerably narrow the scope of its request.  It is EPIC's prerogative to

maintain a broad request.  However, as DHS has explained to EPIC, the inclusion of classified

material within the scope of EPIC's request contributes significantly to the length of time

required to process the potentially responsive records.  This material both increases the number

of pages that require review and increases the difficulty of reviewing the documents, as DHS and

other federal agencies must use great care to ensure that all classified material is redacted before

any non-exempt portions of the documents can be released.

EPIC argues that "[a]gencies are routinely required to process records within specified

timetables."  Dkt. 18 at 9.  This is true, but EPIC overlooks the fact that courts endeavor to set

reasonable timetables.  Courts in this district frequently issue orders extending the time to

respond to FOIA requests, including orders granting stays of several years in length or otherwise

permitting agencies several years to process documents under exceptional circumstances such as

those encountered in this case.  *See, e.g.*, *Piper v. U.S. Dep't of Justice*, 339 F. Supp. 2d 13, 16

(D.D.C. 2004) (discussing a stay of two years given to the FBI); *Williams v. FBI*, No. 99-cv-

3378, 2000 WL 1763680, at *3 (D.D.C. Nov. 30, 2000) (giving the FBI until May 2, 2001, to

review records requested prior to August 21, 1998); *Judicial Watch of Fla., Inc. v. U.S. Dep't of

Justice*, 102 F. Supp. 2d 6, 9 & n.1 (D.D.C. 2000) (discussing an order giving the FBI until June

8, 2000 to respond to a request dated July 15, 1997); *Edmond v. U.S. Attorney*, 959 F. Supp. 1, 4

(D.D.C. 1997) (giving the U.S. Attorney's Office until April 1, 1998 to respond to a request filed August 14, 1992); *Jimenez v. FBI*, 938 F. Supp. 21, 31 (D.D.C. 1996) (permitting the FBI a total of nearly five years from the date of plaintiff's FOIA request to respond to the request); *Ohaegbu v. FBI*, 936 F. Supp. 7, 8-9 (D.D.C. 1996) (granting request for stay and permitting July 1997 response to FOIA request submitted in July 1995, where 175 pages had been identified as potentially responsive).

Rather than proposing an alternative modification of the schedule or a lucid argument that DHS's proposal is somehow unreasonable, EPIC makes the incredible assertion that a modification is not necessary.  The Court should not credit such an extreme and unfounded position.

## II.     EPIC Does Not Advance Any Arguments in Opposition to DHS's Contention That DHS's *Vaughn* Index, if Any, Be Due with DHS's Motion for Summary Judgment

EPIC's opposition brief does not contest the second half of DHS's opening brief, in which DHS argued that requiring a *Vaughn* index in advance of DHS's motion for summary judgment would be unduly burdensome, Dkt. # 17 at 14-17, and therefore the Court should treat the *Vaughn* index issue as conceded.  *See Franklin v. Potter*, 600 F. Supp. 38, 60 (D.D.C. 2009) (treating defendant's argument in summary judgment motion as conceded where plaintiff failed to address it in plaintiff's response); *Hopkins v. Women's Div., General Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a . . . motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004); *Bancoult v. McNamara*, 227 F. Supp. 2d 144, 149 (D.D.C. 2002) ("[I]f the opposing party files a responsive memorandum, but fails to address certain

arguments made by the moving party, the court may treat those arguments as conceded, even when the result is dismissal of the entire case." (citation omitted)).

Given the volume of potentially responsive documents, and the likely volume of material that DHS will determine to be exempt as classified pursuant to 5 U.S.C. § 552(b)(1), it is now clear that requiring DHS to produce a *Vaughn* index in advance of summary judgment would be unduly burdensome, as DHS explained in its opening brief. *See* Dkt. 17 at 14-17. When it does file for summary judgment, DHS should be allowed, consistent with settled precedent, to justify its withholdings by submitting other measures in combination with or in lieu of a Vaughn index itself, and to submit a partial or sample Vaughn index if appropriate. *See id.*; *Judicial Watch, Inc. v. F.D.A.*, 449 F.3d 141, 146 (D.C. Cir. 2006).

### III.    EPIC Misreads the Court's September 5, 2012 Order, And the Court Should Deny EPIC's Cross-Motion

Plaintiff's cross-motion for an order to show cause why DHS should not be held in contempt is as baseless as plaintiff's arguments in opposition to defendant's request for a schedule modification. Plaintiff asserts that DHS has violated the Court's September 5, 2012 Order granting DHS's Motion to Continue Stay of Proceedings for 10 Additional Days.[1] Plaintiff is wrong for two reasons. First, plaintiff's reading of the September 5, 2012 Order is illogical and incorrect. Second, DHS has complied with the Order.

On August 24, 2012, DHS moved for a 10 day stay of these proceedings because it had recently identified approximately 10,000 pages of potentially responsive documents. Dkt. # 13. As DHS indicated in its stay motion, DHS was unable to meet the schedule outlined in the

---

[1] EPIC's cross-motion refers to the Court's order as the "September 9, 2012 Order," Dkt. 19 at 5, 11, 12, 13, 15, but EPIC describes the Court's September 5, 2012 Order, *see id.*; there was no September 9, 2012 order entered in this case. *See* Dkt. 16.

current scheduling order and would need to move for a modification of the schedule, but how much time DHS would need to request for the production of documents depended on whether the parties could reach agreement on narrowing the scope of EPIC's request. *Id.* at 1. The Court granted DHS's motion by Minute Order on August 27, 2012.

During the ten-day stay period, the parties engaged in discussions about the scope of the FOIA request, and EPIC agreed to a limited revision to the request. Dkt. # 13. On September 4, 2012, DHS moved to continue the stay for an additional ten days. DHS explained:

> Extending the existing stay is necessary to provide DHS with a short period in which to assess EPIC's revised request and to propose an appropriate modification to the current scheduling order, and to allow the parties to continue discussions about the scope of the FOIA request in this action. . . . It will take several days for DHS to develop an estimate of how the thus-far-agreed-upon narrowing will impact the volume of documents that are potentially responsive to EPIC's request, given that multiple offices at DHS possess potentially responsive documents on both classified and unclassified information systems. Thereafter, DHS will provide this information to EPIC with the goal of allowing EPIC to consider further narrowing the scope of its request and so that the parties can discuss a revised litigation schedule.

*Id.* at 1-3. Although EPIC did not consent to DHS's motion to extend the stay by ten days, DHS "believe[d] that this short period of time could be used productively by the parties to assess the current scope and corresponding burden of EPIC's request, and to discuss the potential revised schedule that DHS will propose in light of the recently revised scope of EPIC's request." *Id.* at 3.

On September 5, 2012, having considered DHS's motion and EPIC's opposition, the Court granted DHS's motion, "for good cause shown." Dkt. 16. The Court stayed the case up to and including September 14, 2012, and further ordered "that this will be the FINAL Stay." *Id.* The clear and unambiguous meaning of the Court's Order was to provide the parties with a short

period of time, and no more, to assess both the scope of EPIC's revised request and the length of

time that would be required to process documents potentially responsive to the revised request.

At the end of the stay period, DHS expected, either on its own or jointly with EPIC, to move for

an appropriate modification of the scheduling order.

EPIC now argues that the "clear and unambiguous" purpose of the Court's September 5,

2012 Order was to provide DHS with ten days to complete the production of all non-exempt

responsive records and a *Vaughn* index as required by the original scheduling order.  That

interpretation is unreasonable and cannot be credited.  The purpose of the stay was to allow the

parties to confer about a modification to the original scheduling order.

EPIC argues that by moving for a modification of the original scheduling order, as DHS

repeatedly informed plaintiff and the Court that it intended to do, DHS somehow is in violation

of the Court's September 5, 2012 admonition that the Court would not grant any additional stays

for the parties to assess the scope of the request.  But DHS fully complied with the Court's

September 5, 2012 Order.  During the stay period, DHS provided EPIC with an estimate of how

EPIC's limited revision to the FOIA request had impacted the volume of documents that are

potentially responsive to the request, just as DHS had promised it would do.[2]  DHS urged EPIC

to reconsider the inclusion of classified documents within the scope of its request because

properly classified information is exempt under FOIA and because "[i]ncluding classified

---

[2] DHS relayed that the exclusion of draft documents from EPIC's request reduced the estimated volume of potentially responsive documents requiring further review from approximately 10,000 pages to approximately 9,000 pages.  However, changing the third category of the request from "all analyses, legal memoranda, and related records regarding the DIB Cyber Pilot" to "all legal and technical analyses, including legal memoranda, regarding the DIB Cyber Pilot" did not reduce at all the volume of potentially responsive documents that require review and processing. Email from Lisa Marcus, Trial Attorney, U.S. Department of Justice to Amie Stepanovich, Associate Litigation Counsel, EPIC (Sept. 10, 2012) (on file with DHS).

documents within the scope of the request considerably adds to the amount of time that DHS will need to process the documents in order to produce non-exempt records to EPIC."[3]  DHS also met and conferred with EPIC about DHS's proposed schedule modification and the length of time that would be required to process documents potentially responsive to the revised request.  EPIC refused to make further modifications to its request or to consent to any additional amount of time for DHS to process identified potentially responsive documents.[4]  At the conclusion of the stay period, DHS did not request another stay to continue negotiations with EPIC.  Instead, DHS moved to modify the scheduling order to provide the required time to process the 9,200 pages of documents that are potentially responsive to EPIC's revised request.

## CONCLUSION

DHS readily acknowledges that it did not initially appreciate the enormity of the task presented in this case.  The enormous scope of the request at issue delayed DHS from immediately notifying the Court of the time that would be required to respond to it and rendered it impossible for DHS to comply with the current scheduling order.  But the conclusion that DHS needs ample time to process EPIC's request is inescapable.  Defendant's declaration systematically explains why it is impossible for DHS to comply with the scheduling order entered in this case on May 22, 2012, and why a sixteen month modification of that scheduling order is required.  EPIC has not provided any reason for the Court to doubt the good faith

---

[3] *Id.*  DHS also renewed its request that EPIC clarify what it sought by way of the phrase "technical analyses," a vague and unduly broad term.  *Id.*

[4] As noted above, it is EPIC's prerogative to include classified documents within the scope of its request and to litigate whether classified information is "properly classified."  But there can be no question that these documents require detailed and time-consuming review by DHS and other federal agencies and to the extent that they are properly classified, which DHS asserts that they are, they will largely be exempt from disclosure under FOIA.

estimate that DHS has provided.  For the above stated reasons and those discussed in its opening

brief, this Court should find good cause to grant DHS's motion to modify the scheduling order.

The Court should deny EPIC's baseless cross-motion.


Dated:  September 28, 2012                    Respectfully submitted,

                                              STUART F. DELERY
                                              Acting Assistant Attorney General

                                              JOHN R. TYLER
                                              Assistant Director

                                              */s/ Lisa Zeidner Marcus*
                                              LISA ZEIDNER MARCUS
                                              N.Y. Bar Registration No. 4461679
                                              Trial Attorney
                                              United States Department of Justice
                                              Civil Division, Federal Programs Branch

                                              Mailing Address:
                                              c/o U.S. Attorney's Office
                                              700 Grant St., Suite 4000
                                              Pittsburgh, PA 15219

                                              Federal Programs Branch Address:
                                              20 Massachusetts Avenue, Room 6134
                                              Washington, DC 20001

                                              Tel: (202) 514-3336
                                              Fax: (412) 644-6995
                                              E-mail: lisa.marcus@usdoj.gov

                                              Attorneys for Defendant