**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ELECTRONIC PRIVACY INFORMATION     )
CENTER,                            )
                                   )
      Plaintiff,                  )
                                   )     Civil Action No. 12-0333 (GK)
      v.                          )
                                   )
UNITED STATES DEPARTMENT OF        )
HOMELAND SECURITY,                 )
                                   )
      Defendant.                  )

**<u>DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR RECONSIDERATION,
AND, IN THE ALTERNATIVE,
DEFENDANT'S CROSS-MOTION TO MODIFY SCHEDULE</u>**

Pursuant to the Court's "inherent authority to control and preserve the integrity of [its] judicial proceedings," *Pub. Citizen Health Research Grp. v. Food and Drug Admin.*, 953 F. Supp. 400, 404 (D.D.C. 1996), on October 15, 2012, this Court ordered the parties to develop a Protective Order and to craft a Memorandum "Claw Back" Agreement, to protect against wide-spread dissemination of inadvertently released classified, or otherwise sensitive, information exempted under the Freedom of Information Act (FOIA). Plaintiff has filed a motion for reconsideration of the Court's order, arguing that a permanent Protective Order is inappropriate in a FOIA case. Plaintiff's motion for reconsideration misses the mark in multiple ways, but the key flaw is that it does not address temporary protective orders or claw back agreements. As counsel for defendant explained to counsel for plaintiff prior to plaintiff's filing of its motion for reconsideration, a temporary protective order and temporary claw back agreement would comply with the directive given by this Court in the October 15 Order, would address defendant's concern about the possibility of inadvertent releases given the ambitious rolling production

schedule ordered by the Court, and would avoid the potential pitfalls of permanent disclosure restrictions.  Defendant proposed that the parties agree on a protective order and a claw back agreement that would remain in place until defendant files for summary judgment—shortly after defendant completes productions of non-exempt documents and has had the opportunity to review the productions in preparation for summary judgment—which would provide sufficient time for defendant to identify any inadvertently released classified/sensitive exempt information. But, plaintiff rejected this proposal, and accordingly, for the following reasons, defendant now opposes plaintiff's motion for reconsideration.

In the alternative, should the Court be inclined to revise its directive regarding a protective order and claw back agreement, defendant respectfully requests that the Court modify the schedule to provide for a single production of non-exempt responsive documents rather than rolling productions, and to increase the period of time in which to do so.  Releasing all non-exempt responsive documents at once, rather than on a rolling basis, would decrease the likelihood of inadvertent releases because defendant would have reviewed and processed the entire collection of potentially responsive documents before releasing any.  It would allow defendant's FOIA officers to have increased knowledge about the universe of information in the collection before finalizing release decisions, which would decrease the possibility that a FOIA officer might approve the release of particular information only to learn later that the information is classified/sensitive and exempted under one or more FOIA exemptions.  It would also make it easier for defendant to correct any inconsistencies in the manner in which information is treated. In addition, providing defendant more time to complete its production(s) of non-exempt responsive records would allow for more careful, less rushed, review and processing.  This

would decrease the chances that mistakes may be made and that classified/sensitive exempt material might be inadvertently released.

## **BACKGROUND**

On September 14, 2012, defendant filed a motion to amend the Court's prior Scheduling Order, and sought a sixteen month modification of the production schedule.  [Doc. # 17.]  In support of its motion, defendant submitted the declaration of James V.M.L. Holzer, Director of Disclosure and FOIA Operations for the Department of Homeland Security ("DHS") Privacy Office.  [Doc. # 17-1, attached herein as Ex.1.]  In his declaration, Mr. Holzer noted that the documents identified by defendant's FOIA officers as potentially responsive to plaintiff's request contained a significant amount of very sensitive classified information.  Mr. Holzer explained that "plaintiff's request, on its face, seeks information that relates to collaborative national security efforts of multiple federal agencies, [and] it is highly likely that the vast majority of these documents will be exempt from disclosure under FOIA."  Holzer Decl. ¶ 34. "Nonetheless," stated Mr. Holzer, "DHS is committed to reviewing the potentially relevant classified documents to determine whether any non-exempt portions of them can be segregated and produced to plaintiff.  *Extraordinary care must be taken when processing documents of this sort to ensure that the constraints on the disclosure of classified information are properly observed, and that no inadvertent disclosure of classified information is made.*"  *Id.* (emphasis added).

Mr. Holzer's declaration detailed the process required for defendant to complete the review and processing of the enormous volume of potentially responsive documents that had been identified, a process that would include inter-agency review and deliberation regarding the

documents.  Mr. Holzer justified his estimation of the length of time required to complete this

task, and defendant's request for sixteen additional months, as follows:

> Extraordinary care . . . must be taken when reviewing potentially
> responsive documents of this sensitivity . . . . Typical review of
> 9,000-10,000 pages by DHS Privacy would normally take 5-6
> months.  The additional factors of classification reviews and
> referrals outside of DHS complicate that process on several levels.
> In addition to the work of actually reviewing and considering other
> agencies' analyses of appropriate classifications and redactions, the
> actual time it takes to physically deliver the documents to those
> agencies and receive them back is tripled. The review process must
> proceed in iterative steps—with DHS conducting its initial review
> and processing, other agencies conducting their review via
> referrals, and DHS conducting a final review and processing of
> records. Thus, the necessary time for review followed by referrals
> and consultations and then final review of the approximately 9,200
> pages of potentially responsive documents is, realistically, a
> minimum of 16 months.

*Id.* at ¶ 36.

Plaintiff opposed defendant's motion [Doc. # 18], and the Court held a status conference

on the matter on October 15, 2012.  During the status conference, the Court asked defendant's

counsel whether defendant would be amenable to rolling productions.  Counsel responded that

defendant did not have a general objection to rolling productions, though rolling productions

would complicate the review process by making it more difficult for defendant's FOIA officers

to ensure consistency.  Counsel emphasized the importance of allowing sufficient time for the

processing of the potentially responsive documents, given the sensitivity of the information, and

the need for multiple federal agencies to conduct line-by-line, word-by-word reviews, and to

coordinate with each other to segregate any non-exempt information that could be produced.

Counsel also expressed defendant's concern about the possibility of inadvertent disclosures of

classified or otherwise sensitive, exempt information.

4

On October 16, 2012 the Court issued an Order modifying the production and briefing schedule. [Doc. # 25.] The Court denied defendant's request for sixteen months in which to complete processing of the 9,200 pages of documents that had been identified as potentially responsive. Instead, the Court ordered defendant to complete its production of non-exempt documents within an ambitious timeframe of five months. The Court further ordered defendant to process at least 2,000 pages of documents per month during that time period, and to produce non-exempt documents to plaintiff on a rolling basis. To address defendant's concern regarding the possibility of inadvertent disclosure of exempted classified and/or sensitive information, the Court ordered the parties to "develop a proposed Protective Order to protect the Government in case any inadvertent disclosures are made." Order at 2. The Court further ordered "that the parties craft a Memorandum Agreement allowing the Government to 'claw back' any documents it has inadvertently produced." *Id.*

On November 7, 2012, plaintiff moved for reconsideration.

## ARGUMENT

**I.     It is Well Within the Court's Authority To Issue a Temporary Protective Order and To Approve a Claw Back Agreement Here, Where the Court Seeks to Facilitate Expedited Processing of Documents, to Protect Exempted National Security Information from Public Release, and to Preserve the Status Quo Until the Court Has Ruled on Defendant's Motion for Summary Judgment and Any Challenges By Plaintiff**

"It has long been recognized that federal courts possess certain implied or inherent powers that 'are necessary to the exercise of all others.' Inherent powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *United States v. Moussaoui*, 483 F.3d 220, 236 (4th Cir. 2007) (quoting *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812), and *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)) (citation omitted). In particular, federal

courts have "inherent equitable powers of courts of law over their own process, to prevent

abuses, oppression, and injustices." *In re Halkin*, 598 F.2d 176, 189 n.25 (D.C. Cir. 1979); *see*

*generally Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-50 (1991) (discussing inherent judicial

authority).

Because "[a] court's inherent power is limited by the necessity giving rise to its

exercise," courts must exercise "restraint in resorting to inherent power"; that is, the use of such

power must be "a reasonable response to the problems and needs that provoke it." *Degen v.*

*United States*, 517 U.S. 820, 823-24, 829 (1996).  Thus, courts must use their discretion to

exercise their inherent authority reasonably. *See Pigford v. Johanns*, 416 F.3d 12, 16 (D.C. Cir.

2005) (reviewing for abuse of discretion order issued by district court pursuant to district court's

inherent authority).

Pursuant to their inherent judicial authority, courts have repeatedly ordered FOIA

plaintiffs to return inadvertently disclosed records, involving both classified and unclassified

information.  *See, e.g.*, *ACLU v. DOD*, No.09-8071 at 3 (S.D.N.Y. Mar. 20, 2012) (attached

herein as Ex. 2) (requiring plaintiff to "return all copies" of an inadvertently released classified

document that had been released by the Department of Defense); *Hersh & Hersh v. U.S. Dept. of*

*Health and Human Servs.*, No. C 06-4234, 2008 WL 901539, at *9 (N.D. Cal. Mar. 31, 2008)

(ordering return of two entire productions, totaling more than 1,000 pages, which contained

inadvertently produced unclassified documents, and further ordering plaintiff "to withdraw any

inadvertently produced documents from the public record"); *Al-Haramain Islamic Found., Inc. v.*

*Bush*, 451 F. Supp. 2d 1215, 1229 (D. Or. 2006) (proposing potential protective order to allow

plaintiff to use disclosed document without disseminating it, and ordering plaintiff to return to

chambers all copies of sealed document that had been inadvertently released), *rev'd in part on*

*other grounds*, 507 F.3d 1190 (9th Cir. 2007).  Plaintiff attempts to distinguish one of these

cases, *ACLU v. DOD*, because the court in that case ordered retrospective relief, rather than

providing prospectively for a claw back agreement.  *See* Pl's Br. at 4.  This is a distinction

without a difference.  Plaintiff fails to explain why the court has authority to order the return of a

document, but lacks authority to approve a claw back agreement that would facilitate the return

of such a document.

Contrary to plaintiff's assertion that no court has issued a protective order "as to the

documents sought under the statute," Pl's Br. at 3, this Court has issued just such a protective

order in at least one FOIA case.  In *Public Citizen Health Research Group v. Food and Drug

Administration*, this Court issued a protective order restricting dissemination of a document that

had been inadvertently released under FOIA.  953 F. Supp. at 404.  In doing so, the Court relied

upon its "inherent authority to control and preserve the integrity" of its judicial proceedings.  *Id.*

The Court explained that the protective order would allow the court to "control the information

at issue until it determines whether it qualifies for non-disclosure pursuant to [an] exemption . . .

of FOIA."  *Id.*

In the case at bar, the Court has ordered defendant to complete all productions on a

rolling basis within five months, less than one third of the time that the Director of Disclosure

and FOIA Operations for the DHS Privacy Office estimated would be required.  The Court's

suggested protective order and claw back agreement are intended to facilitate the rapid

processing and production of documents ordered by the Court, by providing a safety net should

classified/sensitive exempt information be inadvertently released.  This is a reasonable way to

address defendant's concern about the possibility of an inadvertent disclosure, particularly given

the compressed timeframe now required.  Defendant's concern is legitimate, as classified and

non-classified information is intertwined in many of the potentially responsive documents.

Further, the inter-agency, national-security nature of the subject of plaintiff's FOIA request

requires defendant to consult multiple classification guides and to confer with multiple federal

agencies, which makes what is already an enormous task more difficult.

## II.     Plaintiff Would Not Be Entitled to Classified or Sensitive Information That is Exempted From the Freedom of Information Act, Should Such Information Be Inadvertently Released to Plaintiff

The Freedom of Information Act requires "broad disclosure of government records to the

public, subject to nine enumerated exemptions."  *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir.

2007) (citation omitted).  The protective order and claw back agreement envisioned by the Court

and later proposed by defendant to plaintiff would protect inadvertently released information—

particularly any classified or sensitive information—that is exempted under FOIA pursuant to

one or more of the exemptions.  The exemptions that would most likely apply to such

information are exemptions 1, 3, and 5.[1]  Exemption 1 protects matters "specifically authorized

under criteria established by an Executive order to be kept secret in the interest of national

defense or foreign policy and . . . in fact properly classified pursuant to such Executive order."

5 U.S.C. § 552(b)(1).  Exemption 3 covers matters "specifically exempted from disclosure by

statute," provided that such statute leaves no discretion on disclosure or "establishes particular

criteria for withholding or refers to particular types of matters to be withheld."  *Id.* § 552(b)(3).

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be

available by law to a party . . . in litigation with the agency," including material protected by the

deliberative process privilege which covers decision-making processes of government agencies.

*Id.* § 552(b)(5).

---

[1] Other likely exemptions include exemptions 4 and 7, 5 U.S.C. §§ 552(b)(4) and (b)(7).

A protective order and claw back agreement would be particularly helpful in containing any inadvertently-released national security information, and protecting it from widespread dissemination.  As of November 2012, Executive Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009) (reproduced at 50 U.S.C. § 435 note), governs the classification of national security information.  Section 1.1 of the Executive Order lists four requirements for the classification of national security information:  (1) an "original classification authority" must classify the information; (2) the information must be "owned by, produced by or for, or [be] under the control of the United States Government"; (3) the information must fall within one of eight protected categories of information listed in Section 1.4 of the Executive Order; and (4) the original classification authority must "determine[] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security" and be "able to identify or describe the damage."  Exec. Order No. 13,526, § 1.1(a); *see ACLU v. DoD*, 752 F. Supp. 2d 361, 364 (S.D.N.Y. 2010).

Were defendant to inadvertently release classified information to plaintiff, such mistaken disclosure would not change—or waive—the classified status of that information.  As Executive Order 13,526 specifically states, "[c]lassified information shall not be declassified automatically as a result of any unauthorized disclosure of identical or similar information."  Exec. Order No. 13,526, § 1.1(c); *see generally Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990); *see also, e.g.*, *Nuclear Control Inst. v. U.S. Nuclear Regulatory Comm'n*, 563 F.Supp. 768, 771 (D.D.C. 1983) ("[U]nauthorized publication of a classified document does not require either declassification or disclosure of the document under the Freedom of Information Act."); *Wilson v. CIA*, 586 F.3d 171, 177-78, 190 (2d Cir. 2009) (holding that classified information did not lose its classified status even when it was erroneously included in an unmarked document and sent

via unclassified channels).  Only a public, "official and documented disclosure" of the precise information at issue by an authorized agency representative can operate to declassify the information.  *Fitzgibbon*, 911 F.2d at 765.

The Court's order that the parties jointly propose a protective order and claw back agreement recognizes the danger of releasing classified information to the public.  With or without a protective order or claw back agreement, of course, defendant would endeavor to prevent the unauthorized disclosure of classified information.  A temporary protective order and claw back agreement are necessary because plaintiff has repeatedly demonstrated an unwillingness to cooperate with defendant in an attempt to reach a reasonable resolution when the parties have disagreed.  Defendant has no confidence that plaintiff would take seriously any request not to disseminate sensitive, exempt information should such information be inadvertently produced and a temporary protective order and claw back agreement were not in place.

## CONCLUSION

Plaintiff is wrong in requesting reconsideration of the Court's October 15, 2012 Order. That part of the order requiring the parties to develop a Protective Order and to craft a Memorandum "Claw Back" Agreement is entirely within the Court's authority and is reasonable. The Court should deny plaintiff's motion.  In the alternative, the Court should grant defendant's cross-motion to allow defendant to process documents over a longer period of time and without rolling productions.

\

\

\

Dated:  November 30, 2012

Respectfully submitted,

STUART F. DELERY
Principle Deputy Assistant Attorney General

JOHN R. TYLER
Assistant Director

*/s/ Lisa Zeidner Marcus*
LISA ZEIDNER MARCUS
N.Y. Bar Registration No. 4461679
TAMRA MOORE
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch

Mailing Address:
c/o U.S. Attorney's Office
700 Grant St., Suite 4000
Pittsburgh, PA 15219

Federal Programs Branch Address:
20 Massachusetts Avenue, Room 6134
Washington, DC 20001

Tel: (202) 514-3336
Fax: (412) 644-6995
E-mail: lisa.marcus@usdoj.gov

Attorneys for Defendant