**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) No. 1:12-cv-00333-GK<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR**
**RECONSIDERATION OF THE OCTOBER 16, 2012 ORDER**

Before the Court is Plaintiff's Motion for Reconsideration of two provisions contained in the October 16, 2012 Order that would require the parties to craft (1) a protective order and (2) a claw-back agreement for records subject to disclosure under the Freedom of Information Act ("FOIA"). Plaintiff contends that it is well settled that such restrictions may not apply in a FOIA action, as "unlike civil discovery . . . there is no opportunity to obtain a protective order." *Stonehill v. IRS*, 558 F.3d 534, 539 (D.C. Cir. 2009). In its Opposition, Defendant argues that the Court has "inherent authority to control and preserve the integrity of [its] judicial proceeding." *Pub. Citizen Health Research Grp. v. Food and Drug Admin.*, 953 F.Supp. 400, 404 (D.D.C. 1996), but is unable to cite a case where a court has established the provisions at issue in this case, nor is Defendant able to distinguish the authorities provided by Plaintiff in support of its Motion for Reconsideration. As such, Plaintiff respectfully asks the Court to grant the Motion for Reconsideration.

1

EPIC's Motion for Reconsideration, Dkt.26, properly challenged a determination that had not been briefed or discussed by the parties prior to the Court's October 16, 2012 Order: the creation of a protective order and claw back agreement for records subject to disclosure in response to EPIC's July 26, 2011 FOIA Request ("EPIC's FOIA Request"). A limitation on the dissemination of records in such circumstances is impermissible and has never been utilized by a Court. "When a document must be disclosed under FOIA, it must be disclosed to the general public." *Stonehill,* 558 F.3d at 538.

Further, Defendant's request for additional time to produce documents if a protective order is not available also misses the mark. This Court's Order requiring DHS to fully produce all responsive documents by March 15, 2013, which follows the Defendants earlier motion to extend the deadline for production, is not impacted and the deadline should not be further extended.

**ARGUMENT**

**I. The Government's Opposition Fails to Provide Any Legal Basis for the Issuance of a Protective Order or a Claw back Agreement for the Documents Subject to Disclosure in this Case**

Defendant DHS is unable to cite a single case where a protective order or claw back agreement has been utilized by a federal court as to unspecified documents sought in a FOIA matter. The Defendant cites cases where specific, identifiable records, disclosed in fact to the requester have been "clawed back" by an agency, and one case where an protective order has been issued in response to motion by an intervening party as to documents that party did not otherwise disclose. But there is simply no authority for the proposition that the government seeks to advance in this case where it has yet to

disclose any documents, let alone seek to retrieve any documents it may have inadvertently disclosed.[1]

In *ACLU v. DOD,* No. 09-8071 (S.D.N.Y. March 20, 2012), the Defendant Department of Defense "inadvertently produced a classified document to Plaintiffs." The Defense asked the Court to "direct Plaintiffs to return the Document to Defense." Plaintiff opposed Defense's motion and moved for partial summary judgment on the grounds that "the Documents is not properly classified and that the Court may not order Plaintiffs to return a document they possess lawfully."

The court in *ACLU v. DOD* first undertook a substantial analysis to determine whether the document that Defendant sought to have returned was in fact properly classified under FOIA exemption (b)(1). Upon consideration of the parties' motions, a declaration from the Defense regarding the classification of the specific document at issue, statutory authority, and relevant case law, the court having "applied the relevant law to the facts" found that the agency has "established that the Document is properly classified under FOIA Exemption 1." *Id.* at 10. Subsequent to that determination, the court then ordered the ACLU to return the document that was improperly disclosed. *Id.* at 16.

---

[1] Defendant makes the somewhat outrageous claim that "Defendant has no confidence that plaintiff would take seriously any request not to disseminate sensitive, expect information should such information be inadvertently produced and a temporary protective and claw back agreement were not in place." Def. Opp. at 10.  In fact, in almost exactly these circumstances, where a classified portion of a document was inadvertently released to EPIC by a federal agency in a FOIA matter, EPIC removed the document from EPIC's website within three hours of the agency's request. Internal EPIC email communication regarding a call from the Assistant Chief of the FOIA section of the FBI, stating stated that some documents recently released to EPIC were improperly released because they remain classified. Sept. 30, 2011. ("Apparently there are two paragraphs in one document that the FBI forgot to redact. . . .They propose that we take down the link to the pdf (or simply delete the document or page a issue from the pdf). They will reprocess the document and send us a new copy with the 2 paragraphs redacted.") (On file with EPIC).

In the matter before this Court, there has been no inadvertent disclosure in fact, no request by the agency for the return of any specified document, and no determination by this Court that such a particular request is supported by law.

In *Hersh & Hersh v. U.S. Dept. of Health and Human Servs.*, 2008 WL 901539 (2008), intervenor Guidant Corporation, which had provided documents to defendant agency that were inadvertently disclosed, moved the court to require the return of certain documents. "The information sought is contained in documents that were produced by Guidant in compliance with the CIA entered into between HHS and Guidant's subsidiary corporation." *Id.* at *6. The court further explained the "facts are sufficient to demonstrate that, as part of the negotiations attendant to the execution of the CIA between Guidant and the OIG, and as understood by Guidant, the government obligated itself in good faith not to disclose the documents or information received pursuant to the CIA." *Id.* at *7. The court in *Hersh & Hersh* having reviewed the facts and the applicable law with respect to documents that were in fact disclosed, determined that "defendants have also met their burden in demonstrating that the b(4) exemption applies*." Id.* Subsequent to that determination, the court then ordered the return of documents that were inadvertently disclosed. *Id.* at *9.

*Al-Haramain Islamic Found., Inc. v. Bush*, 451 F. Supp. 2d 1215 (D. Or. 2006), *rev'd in part on other grounds,* 507 F.3d 1190 (9th Cir. 2007), is not even a FOIA case. In that case, arising under the Foreign Intelligence Surveillance Act, the district court considered the use of a protective order so as to enable the plaintiffs to determine whether unlawful surveillance had occurred. *Id.* at 1229. 1230 ("In making this determination, the court may disclose to the aggrieved person, under appropriate security procedures and

4

protective orders, portions of the application, order, or other materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance.") As the Ninth Circuit further noted, "The statute further provides that the court may disclose to the aggrieved person, using protective orders, portions of the materials 'where such disclosure is necessary to make an accurate determination of the legality of the surveillance.' [Citing 50 U.S.C. § 1806(f)]." Clearly, there is no similar provision in the FOIA providing for the use of protective orders.

Defendant's reliance on *Health Record Group v. Food and Drug Admin.*, 953 F.Supp. 400 (D.D.C. 1996), is particularly misplaced. In that case Defendant-Intervenors Aetna Corporation and Abbott Laboratories filed a motion seeking a protective order to forbid the disclosure of a single record released to the Health Research Group ("HRG") by a federal agency, the Food and Drug Administration. As the court made clear, the party seeking the protective order did not disclose the document to the requester. While the court had not made a determination as to the proper application of a FOIA exemption at the time the order issued, it made clear that the restriction was temporary. "[T]he protective order will be very limited in duration. This protective order will only control the use and dissemination of Table 1 by HRG until the court reaches its decision on the merits of the dispute." *Health Research Group,* 953 F.Supp. at 405 n. 5. In the matter before the Court there is no third party intervenor, no record inadvertently released, and no pending determination by the Court as to the agency's assertion of a particular FOIA exemption.

In fact, the government's citation to *Health Research Group* in this matter weighs in favor of Plaintiff's Motion for Reconsideration. Also at issue in *Health Research*

5

*Group* were the First Amendment concerns arising from a court order that would restrict the ability of an individual to publish information. *Id.* at 404. *See New York Times Co v. U.S.*, 403 U.S. 713 (1971) ("any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity"). As a protective order for unspecified documents subject to disclosure under FOIA would sweep far more broadly than did the order in *Health Research Group,* the First Amendment interests of Plaintiff in this matter are significantly stronger than in the prior case. Plaintiff has also set out in detail how a protective order would be contrary to the various provisions concerning fee determinations, fee waiver, expedited processing, and attorneys fees that seek to encourage publication of information obtained under the FOIA. Dkt. 26 at 4-6.

Lacking a specific document before the Court on which to base its claims, Defendant is able to argue only that it is conceivable that some documents disclosed to EPIC could be inadvertently released and could also be properly withheld under a FOIA exemption. But the agency is unable to tether a particular document to a particular exemption, offering only that some records may implicate FOIA exemptions 1, 3, 5, 4, and 7. Dkt. 33 at 8-10. "[C]ourts will simply no longer accept conclusory and generalized allegations of exemptions, . . . The need for adequate specificity is closely related to assuring a proper justification by the governmental agency." *Vaughn v. Rosen,* 484 F.2d 820, 824,825 (D.C. Cir. 1973); *see also King v. Dept. of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) ("Thus, when an agency seeks to withhold information, it must provide 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply'"). As this Court has previously said, "[i]n order to

discharge its burden, the agency must provide a 'relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.' *Mead Data Central, Inc. v. U.S. Dep't of Air Force,* 184 U.S. App. D.C. 350, 566 F.2d 242, 251 (D.C. Cir. 1977)." *Linn v. United States DOJ*, 1995 U.S. Dist. LEXIS 9302, *8  (D.D.C. 1995) (Judge Kessler)

      Defendant DHS has offered no authority for the proposition that a protective order or claw back agreement is appropriate in a FOIA case for records sought under the statute where no documents have in fact been disclosed or are in dispute, and no specific exemptions have been asserted. All of the case law points in the opposite direction. "There is no mechanism under FOIA for a protective order allowing only the requester to see whether the information bears out his theory, or for proscribing its general dissemination." *Nat'l Archives & Records v. Favish,* 541 U.S. 157, 174 (2004). *See Students Against Genocide v. Dept. of State*, 257 F.3d 828, 836 (D.C. Cir. 2001) ("The courts lack authority to limit the dissemination of documents once they are released under FOIA"), *citing Swan v. SEC*, 96 F.3d 498, 500 (D.C. Cir. 1996). "As the Department of Justice recognizes, 'It is well settled that it is not appropriate for a court to order disclosure of information to a FOIA requester with a special restriction, either explicit or implicit, that the requester not further disseminate the information received.' *Department of Justice Guide to the Freedom of Information Act* 721 (footnote omitted.)" *Yonemoto v. Dep't of Veterans Affairs,* 2012 U.S. App. LEXIS 1108 (9th Cir. Jan. 18, 2012) [attached as Exhibit 1].

The Court should strike the requirements for a protective order and claw back agreement from its October 16, 2012 Order.

## II. The Current Scheduling Order Should Not Be Modified Nor Should the Defendant Substitute a Single Final Production of Documents for the Court Ordered Rolling Production

This Court's Scheduling Order of May 24, 2012 required a complete and final production of records by August 24, 2012. Dkt. 12. Following Defendants various motions for a stay and then for an extension of time, and after considering both parties' motions, this Court ruled that Defendant could process documents at a rate of 2,000 pages per month, with a final production on March 15, 2013. Dkt. 25.

As for the rolling production of documents, the law is clear. "Agencies are routinely required to process records within specified timetables." *Allen v. FBI*, 716 F. Supp. 667 (D.D.C. 1988) (FBI processed responsive records at a rate of 5,000 pages per month); *Meeropol v. Meese*, 790 F.2d 942 (D.C. Cir. 1986) (FBI ordered by the district court to "search, process [sic] documents at the rate of 40,000 pages per month…"); *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976) (Federal district court ordered the FBI to review a minimum of 4,000 pages per month until plaintiff's request was processed).

## CONCLUSION

Plaintiff respectfully requests the Court to revise the Order of October 16, 2012 so as to remove the protective order and claw back agreement and to otherwise maintain the schedule for the production of documents set out in the order.

Respectfully submitted,

December 7, 2012                                         */s/ Marc Rotenberg*

DATE                                              MARC ROTENBERG
                                                  GINGER McCALL
                                                  Electronic Privacy Information Center
                                                  1718 Connecticut Ave., NW
                                                  Suite 200
                                                  Washington, D.C. 20009
                                                  (202) 483-1140
                                                  *Counsel for Plaintiff*