**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendant. | ) | Civil Action No. 12-0333 (GK) |

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT'S IN THE ALTERNATIVE CROSS-MOTION TO MODIFY SCHEDULE**

This Court's October 15 Order attempts to strike a balance between plaintiff's desire to obtain non-exempt responsive records as quickly as possible and defendant's responsibility to safeguard sensitive and classified exempt information. By providing for a safety net in the form of a Protective Order and Claw Back Agreement, the Order reasonably facilitates an expedited schedule of document processing—providing less than one third of the time that the Director of Disclosure and FOIA Operations for the DHS Privacy Office estimated would be required,[1] *cf.* Holzer Decl. at ¶ 36—while accounting for defendant's legitimate concern that a rushed schedule may result in inadvertent disclosure of sensitive and/or classified, exempt material. Should the Court reconsider its October 15 Order and decide to forgo the Protective Order and Claw Back Agreement, the Court should also modify the processing and production schedule. A timeframe closer to the time estimate provided by the Director of Disclosure and FOIA Operations would

[1] Mr. Holzer's title has been changed since he executed the declaration cited in defendant's opening memorandum and attached as Exhibit 1 to that memorandum, Doc. # 33-1. His new title is Senior Director for FOIA Operations, Privacy Office, U.S. Department of Homeland Security.

be more reasonable in light of such a decision than the current schedule. Further, allowing defendant to release all non-exempt responsive documents in a single production, rather than on a rolling basis, would decrease the likelihood of inadvertent releases because defendant would have reviewed and processed the entire collection of potentially responsive documents before releasing any documents.

In its two-paragraph opposition to defendant's cross-motion, plaintiff correctly notes that "[a]gencies are routinely required to process records within specified timetables," Pl. Opp. Br. Doc. # 35 at 8, while providing no argument whatsoever why the Court should require the "specified timetable" plaintiff prefers here, *see id.* Plaintiff fails to counter the reasons set forth by defendant why a more forgiving schedule is appropriate. *See id.* Nor does plaintiff discuss the Holzer declaration, which explains the multiple reasons why this FOIA request is more difficult to process than the typical FOIA request, why extraordinary care must be taken in processing the potentially responsive documents, and why substantial time is required to complete processing and productions of non-exempt responsive records. *See id.*

Plaintiff cites three cases that are not at all similar to the case at bar. In *Allen v. FBI*, the Federal Bureau of Investigation processed responsive records under a schedule that had been established "pursuant to a verbal agreement between plaintiff's counsel and defendants," not by order of the Court. 716 F. Supp. 667, 669 (D.D.C. 1988). Moreover, that case did not involve classified information, a demonstrated concern about inadvertent releases, or the amount/degree of likely-exempted sensitive material that is presented in this case. *See id.*; *compare also Allen v. FBI*, 749 F. Supp. 21, 23 (D.D.C. 1990) (subsequent decision noting that plaintiff was "entitled to the bulk of the records sought under FOIA" and that the government had released to the plaintiff over 80,000 pages of material) *with* Holzer Decl. at ¶ 34 (explaining that "because

plaintiff's request, on its face, seeks information that relates to collaborative national security efforts of multiple federal agencies[,] it is highly likely that the vast majority of these documents will be exempt from disclosure under FOIA," and citing FOIA Exemption (b)(1)).

Plaintiff also cites *Meeropol v. Meese*, 790 F.2d 942 (D.C. Cir. 1986), a case in which the district court had ordered the FBI to process documents on a rolling basis. Likewise in that case, there is no indication that the records at issue included classified information, let alone a significant amount of classified information. *See id.* Plaintiff fails to explain how the facts of the *Meeropol* case are similar to the facts presented in this one. The scheduling order in that case was entered three years after the litigation commenced and motion practice had begun, providing the FBI with significantly more lead time prior to the rolling-production schedule than the months that defendant has had here. *See id.* at 947. Productions of documents continued over a period of ten years. *Id.* Moreover, although it is unclear from the cited opinion the extent to which FBI was able to meet the scheduling order in that case, it is apparent from the opinion that the FBI did not maintain the pace of 40,000 pages per month ordered by the Court. *See id.* at 951 ("[A] total of 198 main subject files responsive to the Court's Order were retrieved, processed and all non-exempt material released to the plaintiffs. This represents 1,386 sections or volumes, 257 subsections or volumes, 172 enclosures behind file (EBF) and 106 bulky exhibits."); *id.* at 952 (rejecting plaintiff's argument that FBI demonstrated bad faith when it produced, in one production totaling <u>3,575</u> nonexempt pages, documents that plaintiff had reported as missing). Given the extraordinary effort demonstrated by the FBI in that case, however, the district court nonetheless held that FBI had "substantially complied" with the court's orders, a ruling that was subsequently upheld by the Court of Appeals. *Id.* at 948-49, 956.

Finally, while the Court of Appeals in *Open America v. Watergate Special Prosecution Force* cited a Western District of Wisconsin case in which the district court ordered the FBI to review a minimum of 4,000 pages per month until plaintiff's request was processed, 547 F.2d 605, 613 n.15 (D.C. Cir. 1976), the Court of Appeals failed to adopt such a procedure for the case before it. The Court of Appeals did not require the FBI to conduct immediate, rolling productions on a set time table. Rather, the Court of Appeals held that the FBI could process the FOIA request *whenever* that request reached the front of the queue, following the FBI's practice of processing FOIA requests on "a first-in, first-out basis." *Id.* at 616.

Should the Court reconsider its October 15 Order, a revised schedule closer to the time frame estimated as necessary by the Holzer declaration would be appropriate. Courts in this district have ordered much less ambitious FOIA production schedules in cases that, unlike this case, involve neither classified information nor the necessity for inter-agency review. *See, e.g.*, *Memphis Pub. Co. v. FBI*, No. 10-cv-01878 (Minute Order dated Feb. 10, 2011) (providing federal agency with four months to process 1,536 pages and 12 audio tapes); *Elec. Frontier Found. v. Dep't of Justice*, 517 F.Supp.2d 111, 121 (D.D.C. 2007) (approving schedule of 800 pages processed per month, with status reports to be filed with the court every 90 days); *Raulerson v. Reno*, No. 95-2053, slip op. at 1 (D.D.C. Sept. 11, 1998) (granting thirty-month stay to process approximately 19,000 pages, and ordering annual interim status reports).
Accordingly, it would be reasonable for the Court to revise the current processing schedule to grant defendant the 16 months of time (from September 2012 until January 2014) that Mr. Holzer estimated was required to complete the processing of the nearly 10,000 pages of potentially responsive documents that were identified by defendant. Or, if the Court were inclined to provide defendant with less time to complete the processing of these documents, it

would be more reasonable than the current schedule to require either a) rolling processing of 500 or 1,000 pages per month, rather than 2,000 pages per month,[2] b) a schedule that would maintain the current overall deadline of March 2013 while requiring one production instead of rolling productions, or c) some other schedule that provides more time and less frequent productions than the current schedule. A revised, more forgiving schedule would decrease the possibility of inadvertent disclosures, and would be reasonable in light of the challenges presented by this particular FOIA request, which are outlined in the Holzer declaration.

The inter-agency nature of the cybersecurity pilot program that is the subject of EPIC's FOIA request requires review by multiple federal agencies to ensure that sensitive and often classified information is removed prior to production pursuant to one or more of FOIA's exemptions. This review is conducted in an iterative process, and it takes substantial time. *See* Holzer Decl. ¶ 36. As defendant's opening brief noted, releasing all non-exempt responsive documents at once, rather than on a rolling basis, would decrease the likelihood of inadvertent releases because defendant would have reviewed and processed the entire collection of potentially responsive documents before releasing any. It would allow defendant's FOIA officers to have increased knowledge about the universe of information in the collection before finalizing release decisions, which would decrease the possibility that a FOIA officer might approve the release of particular information only to learn later that the information is classified/sensitive and exempted under one or more FOIA exemptions. It would also make it easier for defendant to correct any inconsistencies in the manner in which information is treated. In addition, providing defendant more time to complete its production(s) of non-exempt

---

[2] Such a schedule would still be significantly shorter than the time estimated as required by the Holzer Declaration. It would still be extremely difficult for defendant to meet that schedule, but it would be more forgiving than the current schedule.

responsive records would allow for more careful, less rushed, review and processing. This would decrease the chances that mistakes may be made and that classified/sensitive exempt material might be inadvertently released.

## CONCLUSION

For the above stated reasons, and those explained in its opening brief, should the Court reconsider its October 15, 2012 Order, the Court should grant defendant's in-the-alternative cross motion to allow defendant to process documents over a longer period of time and without rolling productions.

Dated: December 14, 2012

Respectfully submitted,

STUART F. DELERY
Principle Deputy Assistant Attorney General

JOHN R. TYLER
Assistant Director

*/s/ Lisa Zeidner Marcus*

LISA ZEIDNER MARCUS
N.Y. Bar Registration No. 4461679
TAMRA MOORE
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, Room 6134
Washington, DC 20001
Tel: (202) 514-3336
Fax: (412) 644-6995
E-mail: lisa.marcus@usdoj.gov

Attorneys for Defendant