# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ELECTRONIC PRIVACY INFORMATION )
CENTER, )
            Plaintiff, )
                                        v. )    Civil Action No. 12-0333 (GK)

UNITED STATES DEPARTMENT OF )
HOMELAND SECURITY, )
           Defendant. )

**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 7(h), defendant submits this statement of material facts as to which no genuine issue exists.

**The Defense Industrial Base Cyber Pilot**

1. The Defense Industrial Base Cyber Pilot—called the "DIB Cyber Pilot" for short—was a cyber-security pilot program jointly conducted by the Department of Defense and defendant the Department of Homeland Security ("DHS" or "defendant"). Second Declaration of James V.M.L. Holzer, Tab A ("Tab A"), at ¶3.

2. The aim of the program was to protect U.S. critical infrastructure. Id. at ¶¶3, 4-6. Under the pilot, the Government furnished classified threat and technical information to voluntarily participating Defense Industrial Base (DIB) companies or their Commercial Service Providers (CSPs). Id. at ¶6. This sensitive Government-furnished information enabled the DIB companies, or the CSPs on behalf of their DIB customers, to counter

known malicious activity and to protect Department of Defense program information.

Id.

**EPIC's Freedom of Information Act ("FOIA") Request and DHS's Efforts to Process the Same**

3. On July 26, 2011, EPIC submitted a FOIA request to DHS that sought records related to the DIB Cyber Pilot.  Id. at ¶8.

4. EPIC's request described the pilot as "the new NSA pilot."  Compl., ECF No. 1, at ¶17; see also  Tab A, at ¶8.  DHS clarified with EPIC that EPIC was referring to, and seeking records regarding the DIB Cyber Pilot.  Tab A, at ¶8.

5. As initially submitted, the FOIA request sought the following documents:  (1)  "All contracts and communications with Lockheed Martin, CSC, SAIC, Northrop Grumman or other defense contractors regarding the new NSA pilot program;"  (2)  "All contracts and communications with AT&T, Verizon, and CenturyLink or any other [Internet Service Providers] regarding the new NSA pilot program;" (3)  "All analyses, legal memoranda, and related records regarding the new NSA pilot program;" (4)  "Any memoranda of understanding between NSA and DHS or any other government agencies or corporations regarding the new NSA pilot program;" (5) "Any privacy impact assessment performed as part of the development of the new NSA pilot program." Compl., ECF No. 1, at ¶17; see also Tab A, at ¶8.

6. The DHS Privacy Office ("DHS Privacy") responded to EPIC's FOIA request on August 3, 2011, denying the request in part because it was unable to locate any records responsive to category (e) of EPIC's FOIA request, and indicating that it had referred the remainder of the request (categories (a) through (d)) to the National Protection & Programs Directorate ("NPPD") FOIA Office for processing and direct response

because the documents requested were most likely to be located within NPPD offices. Tab A, at ¶9.

7. EPIC declined to repeal DHS's determination with respect to category (e) records. Id.

8. On January 5, 2012, EPIC sent by facsimile to the NPPD FOIA Office a letter that purported to constitute a FOIA appeal with regard to the remaining four categories of plaintiff's FOIA request. Id. at ¶11.

9. After receiving the facsimile from EPIC, an NPPD FOIA Specialist with NPPD updated an EPIC representative by telephone regarding the status of the FOIA request, and communicated that DHS was processing the request. Compl., ECF No. 1, at ¶29; Tab A, at ¶11.

10. Rather than wait for the administrative processing to be completed, EPIC filed this lawsuit on March 1, 2012. Compl., ECF No. 1; see also Tab A, at ¶12.

11. DHS filed an answer on May 1, 2012. Def's Answer, ECF No. 7; see also Tab A, at ¶12.

12. In the meantime, DHS continued to search for responsive documents. NPPD FOIA officers met with DHS subject matter experts who were familiar with the DIB Cyber Pilot. Together, they identified the DHS offices that were likely to have responsive records, and tasked these offices with conducting electronic and physical record searches for potentially responsive documents. Those offices were: a) the NPPD Office of the Under Secretary, including the Deputy Under Secretary and the Deputy Under Secretary for Cybersecurity; b) the NPPD Office of Privacy (NPPD Privacy); and c) the NPPD Office of Cybersecurity & Communications (CS&C), which as noted

above, is responsible for enhancing the security, resiliency, and reliability of the nation's cyber and communications infrastructure. Tab A, at ¶13.

13. In addition to tasking the NPPD Office of the Under Secretary, NPPD Privacy, and CS&C with searches, NPPD provided the original FOIA request to the DHS Office of General Counsel and the Office of Selective Acquisitions (OSA) within the DHS Office of the Chief Procurement Officer for review and possible response. The Office of the Chief Procurement Officer is located within the office of the DHS Under Secretary for Management, which is responsible for the DHS budget, appropriations, expenditure of funds, accounting and finance, and procurement, among other functions. OSA is responsible for overseeing the execution of classified procurements. Id. at ¶¶14-42.

14. In April 2012, working with subject matter experts, NPPD FOIA crafted the following keywords to electronically search for responsive documents, which were provided to NPPD components to use in their initial search: Monitor + Defense contractors; Defense contractors + internet; DIB Pilot; NSA Pilot; MOA + DHS + NSA; PIA + DIB; PIA + NSA; ISPs Monitor; Monitor Internet + NSA. In addition to these keywords, in early May 2012, NPPD FOIA advised NPPD components to use the following additional keywords in their electronic search for responsive documents: NSA Pilot; NSA +[name of DIB company]; NSA +[name of DIB company]; NSA + [name of DIB company]; NSA + defense + pilot; NSA + AT&T; NSA + Century Link; NSA + Monitor + Internet; NSA + DHS + pilot; and DOD + pilot. Recognizing that employees often devise their own methods to store their own documents and records, NPPD FOIA instructed each employee to conduct searches utilizing the employee's knowledge of how and where they stored their own documents and records. Id. at ¶18.

15. By the end of July 2012, NPPD had gathered more than 16,000 pages of potentially responsive documents.  Id. at ¶43.

16. DHS assigned a team of FOIA specialists and attorneys to review the documents that had been gathered to remove duplicates and cull out documents that had been identified by DHS's electronic keywords search but plainly were not responsive to EPIC's request.  Working diligently for several weeks to review the more than 16,000 pages of potentially responsive documents, DHS FOIA specialists and attorneys who had been assigned to the project removed approximately 6,000 documents as either duplicative or not responsive to the request.  In other words, after their review of the 16,000 documents, the team of DHS FOIA specialists and attorneys identified 10,000 documents that were potentially responsive to EPIC's FOIA request.  Id.

**EPIC Narrows the Scope of Its Request; DHS Processes the Records in Response to the Revised Request**

17. After gathering more than 10,000 pages of potentially responsive records, DHS furnished EPIC with detailed information about these documents and the DIB Cyber Pilot in order to allow EPIC to identify with increased particularity the records that it sought.  Id. at ¶13.

18. On August 31, 2012, EPIC modified its request in two ways.  First, EPIC modified its request by revising the phrasing of the third category of the request, changing the language from "all analyses, legal memoranda, and related records regarding the [DIB Cyber Pilot]" to "all legal and technical analyses, including legal memoranda, regarding the DIB cyber pilot."  Second, EPIC excluded draft documents from the record request.  Id.

19. EPIC's revised request sought the following, (excluding draft documents):

   (a) all contracts and communications with Lockheed Martin, CSC, SAIC, Northrop Grumman or other defense contractors regarding the DIB Cyber Pilot;

   (b) all contracts and communications with AT&T, Verizon, and CenturyLink or any other Internet Service Providers regarding the DIB Cyber Pilot;

   (c) all legal and technical analyses, including legal memoranda, regarding the DIB Cyber Pilot; and

   (d) any memoranda of understanding between NSA and DHS or any other government agencies or corporations regarding the DIB Cyber Pilot. Id.

20. Upon receiving EPIC's revised request, DHS tasked its Privacy Office to assist with completing the processing of revised FOIA request. DHS's Privacy Office conducted a page-by-page and line-by-line review of the potentially responsive documents to identify those records that were actually responsive to EPIC's revised FOIA request. This entailed segregating exempt portions of the responsive records from the non-exempt portions of them. Id. at ¶46.

21. On December 17, 2012, DHS issued a first interim response to EPIC, indicating that the agency had identified 494 pages of responsive materials that were being withheld in their entirety pursuant to Title 5 U.S.C. § 552(b)(1), (b)(5), and (b)(7)(E) FOIA Exemption 1, 5, and 7(E). Id. at ¶45.

22. On April 15, 2013, DHS completed its second final response to EPIC's revised FOIA request. That response consisted of 1,276 pages of materials, of which 117 pages of records were released in their entirety and 1,159 pages were partially releasable under FOIA exemptions b(6) and 7(E). On April 15, 2013, DHS, through its counsel at DOJ, transmitted this response directly to EPIC. Id. at ¶46.

23. Since production of these responsive documents, DHS has made itself available to answer EPIC's questions regarding the production. EPIC sent DHS, through DHS's counsel, a list

of 17 documents that EPIC believed were missing from the production.  DHS reviewed the list of documents identified by EPIC and determined that 14 of the 17 documents were draft documents that were excluded from the production pursuant to the parties' August 31, 2012 agreement.  Id. at ¶¶47-48.

24.  On August 16, 2013, DHS issued a supplemental response to EPIC's revised FOIA request, providing EPIC with the remaining three documents it had identified as missing from the production.  Id. at ¶49.

25.  A total of 84 pages of records were provided to EPIC.  Of the 84 pages, 25 pages were re-released documents from the April 15, 2013 production after DHS determined to make certain additional discretionary releases of information.  Fifty-nine pages of the supplemental response had not been previously provided to EPIC, including 26 pages of documents that corresponded with the three documents EPIC had identified as missing.  Id.

Dated:  August 30, 2013

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

JOHN R. TYLER
Assistant Director

*/s/ Lisa Zeidner Marcus*
LISA ZEIDNER MARCUS
TAMRA T. MOORE
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, 7th Floor
Washington, DC 20001
Tel: (202) 514-3336
Fax: (202) 616-8460

E-mail: lisa.marcus@usdoj.gov

Counsel for Defendant