**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 12-0333 (GK) |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REPLY IN FURTHER SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................................1

DISCUSSION .....................................................................................................................2

    1.  EPIC's "Exhaustive List" of "Potentially Responsive Documents"
        Neither Demonstrates That DHS Failed to Locate Those Documents
        Nor Shows That DHS's Search Was Unreasonable or Inadequate ...................................2

    2.  James Holzer's Declaration Establishes That Information Withheld
        Pursuant to Exemption 1 Is In Fact Properly Classified; DHS Was Not
        Required To Submit a Separate Declaration from David J. Sherman .............................5

    3.  In Opposing DHS's Exemption 3 Withholdings, EPIC Misrepresents
        the Record and Misstates The Standard For Withholding Information
        Pursuant to the National Security Agency Act of 1959, An Established
        Exemption-3 Statute ........................................................................................................8

    4.  Under the Law of This Circuit, Company Identities May Be Withheld
        Under Exemption 4 .......................................................................................................10

    5.  With Respect to Its Exemption 5 Redactions, DHS Only Withheld
        Information That Was "Inter-agency or Intra-agency Memorandums or
        Letters" ..........................................................................................................................12

    6.  EPIC Construes Exemption 7(d) Too Narrowly; DHS Properly Applied
        The Exemption ..............................................................................................................14

    7.  The Court Should Deem All Issues and Withholdings Not Specifically
        Addressed By EPIC as Conceded ................................................................................17

CONCLUSION ..................................................................................................................18

**INDEX OF EXHIBITS**

Tab     Exhibit

E       Third Declaration of James Holzer, Senior Director of FOIA Operations for the
        Department of Homeland Security Privacy Office

E-1     Chart

E-2     Copy of Declaration of David J. Sherman, filed in <u>Electronic Frontier Foundation v.
        Department of Justice</u>, Civ. No. 12-1441 (D.D.C.) (ABJ) on September 4, 2013

## INTRODUCTION

Plaintiff the Electronic Privacy Information Center (EPIC) mounts a limited challenge to the Department of Homeland Security's (DHS) response to EPIC's FOIA request.  Although EPIC addresses a number of different issues in its opening brief—including the sufficiency of DHS's search and the propriety of DHS's withholdings pursuant to FOIA exemptions 1, 3, 4, 5, and 7—EPIC's arguments for each of these issues are narrowly channeled.  In general, EPIC concedes that much of DHS's response to its FOIA request was proper, and contests only limited portions of DHS's search, productions, and withholdings.

For example, EPIC squabbles with only one aspect of DHS's search.  Namely, EPIC argues that DHS unreasonably failed to revise its assessment of what constituted a reasonable search in light of "numerous potentially responsive documents" that were referenced in or attached to emails produced to EPIC.  Pl. S.J. Mem. 7.  [Dkt. 57-1].  But EPIC's argument ignores D.C. Circuit caselaw holding that "[m]ere reference to other files does not establish the existence of documents that are relevant to appellant's FOIA request."  Morley v. C.I.A., 508 F.3d 1108, 1121 (D.C. Cir. 2007).  As the Court of Appeals has recognized, the absence of referenced documents is not a reason to deny summary judgment to a FOIA agency defendant where, as here, the agency submits a detailed, non-conclusory, good-faith declaration describing its reasonable search.  See id.  Moreover, DHS actually produced some of the documents that EPIC asserts are "missing."  For others, EPIC gives no reason to assume that DHS failed to locate the documents, rather than that DHS located the documents but determined that they were non-responsive.  The second declaration of James Holzer, submitted by DHS in support of its motion for summary judgment, presents a detailed and logical explanation of a multi-prong search process, which located more than 10,000 pages of potentially responsive documents that were then individually reviewed by DHS's FOIA staff.  The Holzer declaration on its own provides a sufficient basis for the Court to grant DHS's motion for summary judgment on the

1

search issue.  See Swope v. U.S. Dep't of Justice, 439 F. Supp. 2d 1, 5 (D.D.C. 2006)

(explaining that agency satisfies its summary judgment burden in a FOIA action by submitting

declarations that "explain in reasonable detail and in a non-conclusory fashion the scope and

method of the agency's search").

　　　　The Court should also grant summary judgment to DHS on the propriety of its

withholdings and should reject EPIC's contention that DHS improperly applied FOIA

Exemptions 1, 3, 4, 5, and 7.  DHS's 222-page Vaughn index with more than 450 entries,

together with the declarations of James Holzer, Mark H. Herrington, and Vanessa R. Brinkmann,

demonstrate that DHS released all segregable, all non-exempt responsive information in the

records it located through its (more than) reasonable search, and withheld only that information

that is exempt from disclosure pursuant to FOIA's statutory exemptions.

## DISCUSSION

1.     **EPIC's "Exhaustive List" of "Potentially Responsive Documents"**
        **Neither Demonstrates That DHS Failed to Locate Those Documents**
        **Nor Shows That DHS's Search Was Unreasonable or Inadequate**

　　　　As discussed in DHS's memorandum in support of summary judgment, an agency

satisfies its summary judgment burden in a FOIA action by submitting declarations that "explain

in reasonable detail and in a non-conclusory fashion the scope and method of the agency's

search."  Def. SJ Mem. at 10 (quoting Swope, 439 F. Supp. at 5).  The question for the Court is

whether the agency conducted a "reasonable" search, that is, whether "the search itself was

adequate notwithstanding the fact that other responsive documents may exist."  Id. at 9 (citing

Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994)).  Given the extremely

detailed and logical second declaration of James Holzer, outlining the multi-prong process

undertaken by DHS over the course of several months to first locate more than 10,000 pages of

potentially responsive documents and then to conduct page-by-page, line-by-line reviews to

determine which documents were actually responsive to EPIC's request, it is easy for the Court

to answer this question in the affirmative.

Rather than engaging with the Holzer declaration, or attempting to directly counter it,

EPIC argues that the Court should deem DHS's search unreasonable because the documents

DHS produced to EPIC referenced other "potentially responsive documents" that were not

produced to EPIC.  See Pl. SJ Mem. at 7.  EPIC's insufficiency-of-the-search argument relies on

at least two flawed premises.  First, EPIC assumes that most, or at least many, of the referenced-

but-excluded documents were themselves responsive to EPIC's FOIA request.  This assumption

runs counter to the titles of the documents and the context in which they appear, which tend to

suggest that the supposedly "missing" documents were not substantively responsive to the four

remaining categories of EPIC's FOIA request.[1]  See Third Declaration of James Holzer ¶ 6-7 and

Exhibit A.  Moreover, a number of the "missing" documents were actually produced by DHS to

EPIC.  See id.

Second, EPIC assumes that DHS's production and Vaughn index excluded the documents

because DHS failed to locate or review them, and not because DHS FOIA staff located the

documents but determined that they were non-responsive.  The record does not support EPIC's

---

[1] The four remaining categories of EPIC's FOIA request exclude "drafts" and otherwise seek:

> (a)  all contracts and communications with Lockheed Martin, CSC, SAIC,
> Northrop Grumman or other defense contractors regarding the DIB Cyber Pilot;
>
> (b)  all contracts and communications with AT&T, Verizon, and CenturyLink
> or any other Internet Service Providers regarding the DIB Cyber Pilot;
>
> (c)  all legal and technical analyses, including legal memoranda, regarding the
> DIB  Cyber Pilot; and
>
> (d)  any memoranda of understanding between NSA and DHS or any
> other  government agencies or corporations regarding the DIB Cyber Pilot.

Second Holzer Decl. ¶ 13.

assumption.  DHS searched five different DHS sub-components, including (1) the DHS's

National Protection & Programs Directorate ("NPPD") Office of the Under Secretary, including

the Deputy Under Secretary and the Deputy Under Secretary for Cybersecurity; (2) the NPPD

Office of Privacy (NPPD Privacy); (3) the NPPD Office of Cybersecurity & Communications

(CS&C); (4) the DHS Office of General Counsel; and (5) and the Office of Selective

Acquisitions (OSA), an office within the DHS Directorate for Management.  Second Holzer

Decl. ¶¶ 15-16.  DHS utilized both electronic, keyword searches and physical searches to locate

more than 10,000 potentially responsive documents.  Id. at ¶ 13, 15, 18.  DHS collected and

manually reviewed the gathered potentially responsive documents in this case, including emails

that were eventually produced to EPIC and the attachments to those emails, as well as other

types of documents.  Third Holzer Decl. ¶¶ 4-5.  DHS determined that some of the email

attachments were responsive to EPIC's FOIA request and that some of the email attachments

were not responsive to the request.  See id. ¶ 5.  The exclusion of a number of attachments from

the document production reflects the fact that these documents were deemed non-responsive, not

that the search failed to locate them.  See id.

     EPIC's insufficiency-of-the-search argument also ignores relevant D.C. Circuit caselaw.

"[M]ere reference to other files does not establish the existence of documents that are relevant to

appellant's FOIA request."  Morley v. C.I.A., 508 F.3d 1108, 1121 (D.C. Cir. 2007).  If the

agency were required to locate every document referenced in the records uncovered during its

search, "an agency responding to FOIA requests might be forced to examine virtually every

document in its files, following an interminable trail of cross-referenced documents like a chain

letter winding its way through the mail."  Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 552

(D.C.Cir.1994).  Thus, the "question is not whether there might exist any other documents

possibly responsive to the request, but rather whether the search for those documents was

4

adequate." Id. at 551 (D.C.Cir.1994).  Where, as here, a FOIA agency defendant submits a

detailed, non-conclusory, good-faith declaration describing its reasonable search, the absence of

referenced documents is not a reason to deny summary judgment to the agency.  Id. at 551-52;

Morley, 508 F.3d at 1121; accord Mobley v. C.I.A., 924 F. Supp. 2d 24, 43 (D.D.C. 2013).

In sum, the declaration of James Holzer, submitted in support of DHS's motion for

summary judgment, provides a sufficient basis on its own for the Court to grant DHS's motion

for summary judgment, and EPIC has failed to show otherwise.

**2.**      **James Holzer's Declaration Establishes That Information Withheld
            Pursuant to Exemption 1 Is In Fact Properly Classified; DHS Was
            Not Required To Submit a Separate Declaration from David J.
            Sherman**

In support of its Exemption 1 withholdings, DHS submitted the detailed declaration of

James Holzer and a Vaughn index.  Mr. Holzer's declaration explained that "DHS determined—

after reviewing the DIB Cyber Pilot records and consulting with  other federal agencies,

particularly with the National Security Agency ("NSA")—that certain  portions of the records

were exempt under 5 U.S.C. § 552(b)(1) and must be withheld."  Second Holzer Decl. ¶ 52.  The

declaration then outlined the basis for DHS's conclusion that certain information within the

records remained classified, while providing sufficient detail for plaintiff and the Court to

evaluate the legitimacy of the Exemption 1 claim.

The Holzer declaration described the process undertaken by DHS to review the records

that had been located on DHS's classified systems,[2] id. at ¶ 55, and it explained why certain

---

[2] "DHS worked with other federal agencies including DOD and NSA to review the records that
had been located on DHS's classified systems, to segregate information that could be released as
unclassified, and to withhold information that remains properly classified.  David J. Sherman,
Associate Director for Policy and Records at the National Security Agency, who serves as a TOP
SECRET classification authority, reviewed the NSA-related records in this case.  Mr. Sherman
determined that certain information within them meets the criteria for classification and is in fact
currently and properly classified at the SECRET level in accordance with E.O. 13526.  Working
with NSA, [Mr. Holzer's] office segregated the unclassified or declassified information and

information within the records was properly classified pursuant to Executive Order 13,526, id. at

¶¶ 52-58.  Mr. Holzer identified two specific categories within that Executive Order, sub-sections

1.4(e) and 1.4(g), as providing the specific basis for the classification of information in these

records.  Id. at ¶ 56 (explaining that the "information in question reveals capabilities and/or

vulnerabilities of systems relating to the national security, specifically electronic networks used

by the defense industrial base sector" and that some of the information "is also classified as

pertaining to technological matters relating to the national security, namely cybersecurity

operations of the federal government and defense contractors").  Finally, Mr. Holzer described

the harm that could reasonably be expected from unauthorized disclosure of the information at

issue.  Id. at ¶¶ 57-58.

EPIC's sole argument with respect to DHS's Exemption 1 withholdings is that the DHS

"did not present adequate evidence to establish that Mr. [David] Sherman" — the National

Security Agency ("NSA") official who assisted DHS by reviewing the NSA-related records in

this case — "has been delegated original classification authority."  Pl. SJ Mem. at 10.  EPIC

appears to argue that DHS was required either to submit a separate declaration from the NSA

and/or Mr. Sherman, or to provide some additional basis beyond the statements in the Holzer

declaration "to support [the] claim of Mr. Sherman's alleged classification authority."  Id. at 11.

However, on motion for summary judgment in a FOIA case, declarations submitted by an agency

are accorded a presumption of good faith.  See, e.g., Meeropol v. Meese, 790 F.2d 942, 952

(D.C. Cir. 1986).  EPIC does not allege bad faith on the part of DHS, nor does EPIC provide the

Court with any other basis to doubt Mr. Holzer's statement that David Sherman "serves as a TOP

---

released it, while withholding that information that is currently and properly classified."  Second
Holzer Decl.¶ 55.

SECRET classification authority."  Compare Pl. SJ Mem. at 9-11 with Second Holzer Decl. at ¶ 55.

There is no question that Mr. Holzer's second declaration provides sufficient evidence that David J. Sherman, Associate Director for Policy and Records at the National Security Agency, serves as a TOP SECRET classification authority.  Second Holzer Decl. ¶ 55.  Mr. Holzer's office (the Department of Homeland Security (DHS) Privacy Office) frequently works with the National Security Agency on FOIA matters, and Mr. Sherman's delegated TOP SECRET classification authority was information provided to Mr. Holzer in the course of his official duties, information that Mr. Holzer was qualified to relay to the Court.  Third Holzer Decl. ¶ 7.  Finally, to supplement the second Holzer declaration, DHS submits the third declaration of James V.M.L. Holzer.  That declaration provides additional information about David Sherman's TOP SECRET classification authority.  Third Holzer Decl. ¶¶ 7-8.  It also includes, as Exhibit E-2, a declaration executed by David Sherman in another matter, which also states that Mr. Sherman is a TOP SECRET classification.

Further, the Holzer declaration on its own provides the sufficient explanation of the Exemption 1 withholdings for the plaintiff and the Court to assess the Exemption 1 claims.  As noted, the Holzer declaration described the process for reviewing material located on DHS's classified systems and DHS's efforts to work with other agencies to identify the segregable, unclassified, non-exempt materials.  See Second Holzer Decl. ¶¶ 52-55.  The declaration, together with DHS's Vaughn index, described the categories of classified information that remained in these records as well as the harm that could reasonably be expected should the classified information be disclosed, id. ¶¶ 57-58 , and EPIC did not contest these portions of the Holzer declaration.

Indeed, EPIC fails to counter any of the arguments that DHS asserts in support of its

Exemption 1 withholdings.  EPIC thus concedes that but-for the alleged deficiency of not

demonstrating David Sherman's TOP SECRET classification authority, a proposition that DHS

rebuts above, the Exemption 1 withholdings were proper.  See Buggs v. Powell, 293 F.Supp.2d

135, 141 (D.D.C. 2003) ("It is understood in this Circuit that when a plaintiff files an opposition

to a dispositive motion and addresses only certain arguments raised by the defendant, a court

may treat those arguments that the plaintiff failed to address as conceded.").  The Court should

uphold DHS's Exemption1 withholdings.

**3.**      **In Opposing DHS's Exemption 3 Withholdings, EPIC Misrepresents the Record and Misstates The Standard For Withholding Information Pursuant to the National Security Agency Act of 1959, An Established Exemption-3 Statute**

Both DHS's opening brief and the Holzer declaration explained that the redactions of

information made by DHS on behalf of NSA "consist primarily of [NSA] employee names,

personally identifiable information, and telephone numbers, as well as information relating to the

Agency's internal processes, and activities, such as handling instructions for classified

information."  Def. SJ Mem. at 26; Second Holzer Decl. ¶ 60.  This information falls squarely

within the scope of Section 6 of the National Security Agency Act of 1959, Public Law 86-36

(50 U.S.C. § 402 note) (hereinafter, "the NSA Act"), a statute that EPIC acknowledges as an

Exemption 3 statute for the purpose of FOIA.  Pl. SJ Mem. at 12.

In challenging DHS's Exemption 3 withholdings, EPIC's principal argument is that DHS

failed to show that the information DHS withheld pursuant to the NSA Act "relate[s] to the

functions or activities *of the National Security Agency* – not another Agency or nongovernmental

entity."  In support of this argument, EPIC selectively quotes from DHS's Vaughn index but

ignores the Holzer declaration and the information that is revealed in the partially-redacted

documents themselves.  Again, EPIC fails to credit DHS with the presumption of good faith and

8

the substantial weight to which it is entitled.  Cf. Meese, 790 F.2d at 952 (declarations submitted

by agency defendant in FOIA matter are entitled to presumption of good faith); Ray v. Turner,

587 F.2d 1187 (D.C. Cir. 1978), on remand to, 468 F. Supp. 730 (D.D.C. 1979) (explaining that

"substantial weight" should be accorded declarations supporting Exemption 1 and Exemption 3

claims in the national security context).

For example, EPIC implies that DHS redacted other agency information, not NSA

information, within document 438 (Bates 1279-1286).  Pl. SJ Mem. at 13-14.  EPIC quotes a

sentence from the Vaughn index stating "[t]his is an eight page email chain that summarizes the

properly classified legal issues DOJ raised regarding the DIB Pilot," id. at 14, and suggests that

the sentence indicates that DHS withheld information relating to DOJ's activities, not to NSA's

activities.  But another sentence in the Vaughn index description explains that "[t]he document

. . . is covered by  P.L. 86-36 . . . to protect the functions of NSA."  (emphasis added).  This

statement is entitled to a presumption of good faith, particularly because DHS provides additional

details in the Holzer declaration describing why Exemption 3 covers the redacted information.  EPIC

also fails to mention that the partially-redacted and released document 438 itself makes clear that

the redactions were applied to NSA information.  The first sentence in the email states that the

email chain contains a "[s]ummary of legal issues prior to [Deputies Committee] prepared . . . for

DDIR NSA."  Redactions marked "(b)(3) P.L. 86-36," in the signature blocks indicate that the

emails within the email chain were written by NSA employees.  According to the released

portion of the document, one of the emails within the chain was written by the "Executive

Assistant to the Deputy Director, NSA."  Another email within the chain was written by the

"Chief, NSA Cyber Task Force."  A released sentence within several of the emails within the

chain reads, "Subject to attorney-client privilege.  Do not release outside NSA without OGC

approval."  Finally, the email contains classification markings stating that the information was

"DERIVED FROM: NSA."  This information, along with the representations made by the

Holzer declaration and the Vaughn index, make clear that the redacted portions of the document reveal NSA employee identities or other information regarding the function and activities of the NSA.[3]

The other three "examples" cited by EPIC fare no better. Again, the Vaughn index, the Holzer declaration, and the released portions of the documents make clear that DHS narrowly applied Exemption 3 to protect the "'organization or any function of the National Security Agency, [and] any information with respect to the activities thereof, or of the names, titles, salaries, or number of persons employed by [NSA].'" Second Holzer Decl. ¶ 60 (quoting National Security Agency Act of 1959, Public Law 86-36 (50 U.S.C. §3605)). DHS did not rely on Exemption 3 to redact information relating solely to other agencies or to non-governmental entities, and the Court should reject EPIC's supposition to the contrary.

4.    **Under the Law of This Circuit, Company Identities May Be Withheld Under Exemption 4**

EPIC's argument in opposition to DHS's Exemption 4 withholdings is that Exemption 4 may not be used to protect the identities of companies that are publicly-known entities. EPIC argues, without authority, that the identity of a public company can never be considered "confidential," even where the company served as a confidential source for the government. Pl. SJ Mem. at 19-20.

The Court of Appeals has held otherwise. In Board of Trade v. Commodity Futures Trading Commission, the Court of Appeals recognized that identities of sources may be withheld pursuant to Exemption 4, so long as the information is "commercial" and "provided by a person." 627 F.2d 392, 402 (D.C. Cir. 1980), abrogated in part on other grounds by U. S. Dep't

---

[3] The preliminary Vaughn index that DHS sent to EPIC included in the document 438 description a sentence saying, "This email was sent to a distribution list of DOD, DHS, and NSA employees." DHS eliminated that sentence and several others after EPIC's counsel communicated to DHS's counsel that EPIC would not challenge DHS's Exemption 6 redactions or any Exemption 3 redactions that were applied to NSA employee names or identifying information.

of State v. Washington Post Co., 456 U.S. 595 (1982).  The Court of Appeals cautioned district

courts against assessing the confidentiality of source identifiers "standing alone."  Id. at 402.

Although a source may be otherwise publicly known, the source's identity qualifies as

"confidential" when connected to particular government records, particularly where those

records indicate that the entity served as a source for the government, and the agency describes

the promise of confidentiality provided to the source.  Indeed, the Court of Appeals applauded

agencies for releasing as much of the substance of the records as possible while redacting the

source-identifying information within the records.  Id. at 402 (observing that the agency "while

still asserting the right to preserve the confidentiality of its sources under Exemption 4, laudibly

sought to reveal as much information as it could").  As noted in the chart below, that is just what

DHS did here; DHS redacted the names of DIB companies that served as confidential sources

while releasing the text of the documents in which those names appear.  "The whole purpose of

blotting out identities is to render the remaining contents of documents nonexempt, and the

[agency's] success in doing just that cannot be turned against it as a reason for requiring

reinsertion of the identifying details."  Id. at 403.

DHS offers the following specific responses to the individual Exemption 4 challenges

raised by EPIC:

| **Doc. 22:**<br>(Bates 71 – 78) | As noted in the Vaughn Index, the full text of this email is released except for two small redactions covering words that would reveal the identity of the DIB company. |
|---|---|
| **Doc 90:**<br>(Bates 256 – 56) | As noted in the Vaughn Index, the full text of the email is released except for two small redactions covering words that would reveal the identity of the DIB company.  The name, title, and phone number of the email author, and the name of another employee of the DIB company are likewise redacted, pursuant to Exemption 6 (which EPIC does not challenge) and Exemption 4 because that information would identify the DIB company. |

| | |
|---|---|
| **Doc. 100:**<br>(Bates 283 – 85) | The few Exemption 4 withholdings within this document are also redacted pursuant to Exemption 5.  Because EPIC does not challenge the redactions of this information under Exemption 5, the Court need not reach the issue of whether Exemption 4 would also apply. |
| **Doc 110:**<br>(Bates 305) | DHS does not rely on Exemption 4 to withhold information in this document. Exemption 4 was not marked on the produced document as being a basis being relied upon, and no information was withheld on this basis.  It was a mistake to include a description of Exemption 4 in the <u>Vaughn</u> entry for this document. |
| **Doc 306:**<br>(Bates 790-91) | The few Exemption 4 withholdings within this document are also redacted pursuant to Exemption 5.  Because EPIC does not challenge the redactions of this information under Exemption 5, the Court need not reach the issue of whether Exemption 4 would also apply. |
| **Doc 404:**<br>(Bates 1161- 63) | DHS redacted the names and email addresses here under Exemption 6 as well as Exemptions 4 and 7(d).  Because EPIC does not challenge the redaction of this information under Exemption 6, the Court need not reach the issue of whether Exemption 4 would also apply.  (Exemption 6 is not listed in the Vaughn index here, but it is marked in the redactions on the document.  DHS deleted all of its Exemption 6 references in the final Vaughn index because EPIC dropped its challenge of the Exemption 6 withholdings after receiving DHS's preliminary Vaughn index.) |

5.  **<u>With Respect to Its Exemption 5 Redactions, DHS Only Withheld Information That Was "Inter-agency or Intra-agency Memorandums or Letters"</u>**

Of the numerous Exemption 5 redactions in the records produced to EPIC, EPIC

challenges only one paragraph contained in a single email page as improperly redacted.[4]

---

[4] EPIC separately challenges the Exemption 5 redactions in documents 440, 442, and 444 because DHS inadvertently excluded the Exemption 5 description from the entries for those three documents.  DHS addresses documents 440, 442, and 444 in paragraphs 11-14 of the third Holzer declaration and on page 14.

Namely, EPIC argues that DHS improperly applied Exemption 5 to redact a paragraph in document 276 (Bates 732-734).  EPIC surmises that the redacted paragraph contains a "forwarded email" from AT&T, a private company, see Pl. SJ Mem. at 23, and argues that DHS has failed to show that the redaction protects "inter-agency or intra-agency memorandums or letters" as required by Exemption 5, id.

EPIC misreads the redaction and ignores the Vaughn index entry for this document, which makes clear that the email chain contains an intra-agency discussion.  The Vaughn entry for document 276 explained that the email contains "communications among [DHS] counsel and [DHS] program personnel regarding a DIB cyber pilot meeting."  Dkt. # 53-4 at 132.  The released-in-part document shows that DHS applied a redaction box to the body text of an email within the chain, not to an entire email within the chain.[5]  See Plaintiff's Ex. 6 (Dkt. # 57-11).  In addition, in the Third Holzer Declaration, submitted herewith, Mr. Holzer explains that he re-reviewed the redacted portion of this document.  Third Holzer Decl. ¶ 10.  Mr. Holzer indicates that the withheld portion of the document is not itself an email sent from AT&T, nor is it a verbatim transcription of a separate communication from AT&T.  Id.  Rather, the redacted paragraph contains a summary of a separate communication between DHS program personnel and AT&T.  Id.  "The program office employee sent the email to a DHS attorney and his supervising attorney in the context of seeking legal review and advice.  Id.  Plainly, document 276 constitutes an "intra-agency" communication, and DHS properly withheld the information pursuant to Exemption 5 as protected by the deliberative process privilege and the attorney-client privilege.

---

[5] In document 276, as DHS did throughout the collection of records it produced, DHS released (at least in part) the various headers within the email chain.  These headers show who sent and received each email within the chain, the subject lines, and the dates and times when each email within the chain was sent.  See Plaintiff's Ex. 6 (Dkt. # 57-11).  The released-in-part document 276 shows a redaction box covering the body of an email, not an entire email within the chain.  See id.  To the extent that plaintiff had any doubt about this, plaintiff was free to review DHS's Vaughn index or seek clarification from defendant.

EPIC separately challenges documents 440, 442, and 444 because DHS inadvertently excluded from its <u>Vaughn</u> index a detailed description of the Exemption 5 redactions in these documents.  <u>See</u> Pl. SJ Mem. at 28.  In response, Mr. Holzer's third declaration provides supplemental <u>Vaughn</u> descriptions for these three documents.[6]  Third Holzer Decl. ¶¶ 12-14.  Those descriptions, like the many other Exemption 5 descriptions within DHS's <u>Vaughn</u> index that EPIC does not challenge, plainly demonstrate that the withheld portions of the documents constitute deliberative, pre-decisional inter-agency communications.   <u>See id.</u>  Moreover, for most of the Exemption 5 redactions within these three documents, Exemption 3 provides a secondary basis for the withholding.  <u>See id.</u>   The Court should find that DHS properly redacted this information.

6.     **<u>EPIC Construes Exemption 7(d) Too Narrowly; DHS Properly Applied The Exemption</u>**

In order for information to be withheld under Exemption 7(d), the agency must show (1) that the information was "compiled for law enforcement purposes," and (2) that the release of the information "could reasonably be expected to disclose the identity of a confidential source."[7] 5 U.S.C. § 552(b)(7)(d).  EPIC does not contest DHS's assertion that the information at issue here was compiled for law enforcement purposes, <u>see</u> Pl. SJ Mem. at 24-28, and therefore the Court should treat that aspect of the Exemption 7(d) analysis as conceded.  <u>See, e.g., Wilkins v.</u>

---

[6] Even without the supplemental Vaughn description provided by Mr. Holzer's third declaration, the Court could have upheld the Exemption 5 redactions in these three documents on the basis of the Exemption 5 description provided in the Second Holzer Declaration.  That declaration, along with the more than 100 other specific "Exemption 5" entries within DHS's <u>Vaughn</u> index, provides ample description of the Exemption 5 redactions applied by DHS.   <u>See Schoenman v. F.B.I.</u>, 573 F. Supp. 2d 119, 134 (D.D.C. 2008) (explaining that "there is no set formula for a <u>Vaughn</u> index; so long as the agency provides the Court with materials providing a 'reasonable basis to evaluate the claim of privilege,' the precise form of the agency's submission—whether it be an index, a detailed declaration, or a narrative—is immaterial").

[7] Exemption 7(d) also protects "information furnished by a confidential source" if the information was compiled by a "criminal law enforcement authority in the course of a criminal investigation."  DHS does not rely on that provision of 7(d) to withhold information in these records.

Jackson, 750 F. Supp. 2d 160, 162 (D.D.C. 2010) ("It is well established that if a plaintiff fails to respond to an argument raised in a motion for summary judgment, it is proper to treat that argument as conceded.").  Instead, EPIC limits its Exemption 7(d) challenge to arguing that the withheld information here could not reasonably be expected to reveal a confidential source within the meaning of Exemption 7(d).  But EPIC is wrong on this point.

EPIC does not dispute that "[t]he purpose of the DIB Cyber Pilot was to evaluate the potential to enhance the  cybersecurity of participating DIB critical infrastructure entities and to protect sensitive information and DIB intellectual property that directly supports national defense missions from  unauthorized access, exfiltration, and exploitation."  Second Holzer Decl. ¶ 6.  It is within this specific context that the disclosure of the names of the participating DIB Cyber Pilot companies "could reasonably be expected to disclose the identity of a confidential source."  Within the confines of the DIB Cyber Pilot, the participating companies served as confidential sources, providing DHS and DoD with classified and technical information in order "to protect sensitive information and DIB intellectual property that directly supports national defense missions from  unauthorized access, exfiltration, and exploitation."   Second Holzer Decl. ¶6.  To that end, the participating DIB Cyber companies provided the Government with "cyber-incident data[,]" "including samples of malicious code that the companies [found] in their networks."  Herrington Decl. ¶ 14.   Moreover, the participating DIB Cyber companies provided this "extremely sensitive proprietary, commercial [and] operational information" id. at ¶ 7,with the express understanding that the information provided by the companies would not be disclosed publicly, and that the Government would take reasonable steps not only to protect against the unauthorized use or release of" such information, but keep confidential the companies' participation in this program, the purpose of which was focused exclusively on identifying and acknowledging cybersecurity vulnerabilities.  Herrington Decl. ¶ 11.  Based on the foregoing,

EPIC's argument that DHS failed to demonstrate the propriety of its application of Exemption 7(d) fails.

EPIC appears to argue that the agency is required to make a document-level showing, rather than a program-level or investigation-level showing, that a person or entity has served as a confidential source.  EPIC recognizes that Exemption 7(d) protects the identities of entities that serve as "sources," Pl. SJ Mem. at 26, but EPIC also appears to make the somewhat illogical argument that where the government furnishes information to a confidential source, the provision of government information can negate the entity's role as a source.  In an information-sharing law enforcement program such as the DIB Cyber Pilot, it is common for participants to serve as sources for the government and the government to provide information to the participants.  Thus, in connection with such a program, revealing who <u>receives</u> information from the government also reveals who <u>serves as a source</u> for the government.  EPIC invites this Court to interpret Exemption 7(d) in a manner that would require the government to protect the name of a confidential source in one document in which the source is providing the information to the government while simultaneously mandating the disclosure of the confidential source's identity on another page of the same document or an associated document simply because the government was the origin of the information on that page.  The Court should reject EPIC's invitation to adopt this nonsensical interpretation of 7(d).

Plaintiff fails to appreciate the scope of confidentiality afforded to sources who speak with an assurance of confidentiality.  "Once confidentiality is established, the source and the information supplied by that source remains confidential indefinitely."  <u>Reiter v. Drug Enforcement Admin.</u>, No. 96-0378, 1997 WL 470108, at *6 (D.D.C. Aug. 13, 1997), aff'd, No. 97-5246, 1998 WL 202247 (D.C. Cir. Mar. 3, 1998).  Under Exemption 7(D), "the question is not whether the requested <u>document</u> is of the type that the agency usually treats as confidential, but whether the particular <u>source</u> spoke with an understanding that the communication would

16

remain confidential." U.S. Dept. of Justice v. Landano, 508 U.S. 165, 172 (1993).  Here, plaintiff concedes that the sources protected by DHS were provided express promises of confidentiality.  Pl. SJ Mem. at 27.   It is irrelevant that those sources also received information from DHS because "once an informant's confidentiality has been established, almost nothing can eviscerate Exemption 7(D) protection."  Reiter, 1997 WL 470108, at *6.  The agency properly protects the identities of its confidential sources regardless of whether those sources separately act in a non-confidential-source manner, later testify at trial, or even die.  See id.  Because DHS and DOD have established that the program participants acted as confidential sources, it was proper for DHS to withhold information that would identify these sources.

7.    **The Court Should Deem All Issues and Withholdings Not Specifically Addressed By EPIC as Conceded**

DHS raised a number of issues in its motion for summary judgment and supporting materials that EPIC fails to contest either in whole or in part.  For example, as noted above, EPIC challenged only one aspect of DHS's search and only one aspect of DHS's Exemption 1 withholdings.   EPIC mounted limited challenges to DHS's Exemption 3, Exemption 4, and Exemption 7(d) withholdings as well.  EPIC failed to challenge the vast majority of DHS's Exemption 5 withholdings.  EPIC did not contest DHS's Exemption 7(e) withholdings at all.  To the extent that EPIC failed to counter DHS's arguments, the Court should deem those issues conceded.  See, e.g., Wilkins, 750 F. Supp. 2d at 162; Buggs, 293 F.Supp.2d at 141.

The Court should also decline to credit any bare or conclusory assertions made by EPIC. For example, EPIC asserts, in a cursory fashion, that DHS failed to sustain its burden of showing that it properly applied Exemptions 7(c) and 7(f) as an alternative, additional basis to withhold certain information within document 419 that was also withheld pursuant to Exemption 7(e). But EPIC fails to explain why the Court should even reach this issue, given that EPIC does not contest the withholding of the same information under Exemption 7(e).  Nor does EPIC provide authority for its proposition that the Vaughn index description cannot serve as a basis for the

17

Court to find that DHS met its burden with regard to these withholdings.  Instead, EPIC

incorrectly states that "DHS has provided no information on why these exemptions may apply."

Pl. SJ Mem. at 28.  "Such a conclusory assertion typically does not warrant review."  Fox v. Am.

Airlines, Inc., 389 F.3d 1291, 1296 (D.C. Cir. 2004); see also id. (citing Wash. Legal Clinic for

the Homeless v. Barry, 107 F.3d 32, 39 (D.C.Cir.1997) for the proposition that an "issue [is] not

properly raised where addressed in "cursory fashion" supported only with "bare-bones

arguments").

## **CONCLUSION**

DHS supported its motion for summary judgment with detailed, non-conclusory

declarations and a Vaughn index that logically establish the connection between the withheld

material and FOIA exemptions.  In response, EPIC asserts limited arguments that disregard the

record and relevant case law.  The Court should grant DHS's motion for summary judgment and

should deny EPIC's cross-motion.

Dated:  November 4, 2013                    Respectfully submitted,

                                           STUART F. DELERY
                                           Assistant Attorney General

                                           JOHN R. TYLER
                                           Assistant Director

                                           /s/ Lisa Zeidner Marcus
                                           LISA ZEIDNER MARCUS
                                           TAMRA T. MOORE
                                           Trial Attorneys
                                           United States Department of Justice
                                           Civil Division, Federal Programs Branch
                                           20 Massachusetts Avenue, 7th Floor
                                           Washington, DC 20001
                                           Tel: (202) 514-3336
                                           Fax: (202) 616-8460
                                           E-mail: lisa.marcus@usdoj.gov

                                           Counsel for Defendant