IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC FRONTIER; FOUNDATION )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>DEPARTMENT OF JUSTICE, )<br>)<br>Defendant. )<br>) | Civil Action No. 12-01441 (ABJ) |

## DECLARATION OF DR. DAVID J. SHERMAN

I, DAVID J. SHERMAN, hereby declare and state:

1. I am the Associate Director for Policy and Records at the National Security Agency ("NSA" or "Agency"). I have been employed with NSA since 1985. Prior to this current assignment, I held various senior and supervisory positions at NSA and elsewhere in the Executive Branch, to include serving as the Deputy Chief of Staff in the Agency's Signals Intelligence Directorate, its representative to the Department of Defense, Deputy Associate Director for Foreign Affairs, and Director for Intelligence Programs at the National Security Council. As the Associate Director of Policy and Records, I am responsible for the processing of all requests made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for NSA records.

2. In addition, I am a TOP SECRET classification authority pursuant to section 1.3 of Executive Order (E.O.) 13526, dated 29 December 2009 (75 Fed. Reg. 707). It is my responsibility to assert the FOIA exemptions over NSA information in the course of litigation. Through the exercise of my official duties, I have become familiar with the current litigation arising out of a request for information filed by the Plaintiff. The NSA received a consultation

from the Department of Justice's National Security Division ("NSD"), because the responsive records contained NSA information and NSA equities.

3. The purpose of this declaration is to advise the Court that NSA withheld certain information, as set forth below, because it is properly exempt from disclosure under the FOIA based upon Exemptions 1 and 3, 5 U.S.C. §§ 552(b)(1) and (3), respectively. This is so because the information remains currently and properly classified in accordance with E.O. 13526 and protected from release by statutes, specifically Section 6 of the National Security Agency Act of 1959 (Pub. L. No. 86-36) (codified at 50 U.S.C. § 3605) (formerly codified at 50 U.S.C. § 402 note) and Section 102A(i)(1) of the Intelligence Reform and Prevention Act of 2004 (codified at 50 U.S.C. § 3024) (formerly codified at 50 U.S.C. § 403-1(i)(1)). Records that are responsive to the Plaintiff's FOIA request are as follows: a report titled "The Intelligence Community's Collection Programs Under Title VII of the Foreign Intelligence Surveillance Act"; a Joint Statement Before the Senate Select Committee on Intelligence, dated 9 February 2012; a Joint Statement Before the House Permanent Select Committee on Intelligence, dated 8 December 2011; and a Memorandum Opinion issued by the Foreign Intelligence Surveillance Court ("FISC Opinion"), dated 3 October 2011. I have been advised that the Plaintiff is only challenging certain withholdings made by the U.S. Government to the 3 October 2011 FISC Opinion. Accordingly, this declaration will only address NSA's withholdings of information within that FISC Opinion.[1]

## ORIGIN AND MISSION OF NSA

4. The NSA was established by Presidential Directive in 1952 as a separately organized agency within the Department of Defense under the direction, authority, and control of the

---

[1] I understand the Plaintiff is not challenging the US Government's withholding of the names of individuals or companies, to include communication services providers, contained within the FISC Opinion. Thus, this declaration will not address those withholdings, which are not being challenged.

2

Secretary of Defense. NSA's foreign intelligence mission includes the responsibility to collect, process, analyze, produce, and disseminate signals intelligence ("SIGINT") information, of which communications intelligence ("COMINT") is a significant subset, for (a) national foreign intelligence purposes, (b) counterintelligence purposes, and (c) the support of military operations. See E.O. 12333, sec. 1.7(c), as amended.

5. In performing its SIGINT mission, NSA exploits foreign electromagnetic signals to obtain intelligence information necessary to the national defense, national security, and the conduct of foreign affairs. NSA has developed a sophisticated worldwide SIGINT collection network that acquires, among other things, foreign and international electronic communications. The technological infrastructure that supports NSA's foreign intelligence information collection network has taken years to develop at a cost of billions of dollars and untold human effort. It relies upon sophisticated collection and processing technology.

## IMPORTANCE OF SIGINT TO THE NATIONAL SECURITY

6. There are two primary reasons for gathering and analyzing intelligence information. The first, and most important, is to gain the information required to direct U.S. resources as necessary to counter threats. The second reason is to obtain the information necessary to direct the foreign policy of the United States. Foreign intelligence information provided by the NSA is routinely distributed to a wide variety of senior Government officials, including the President; the President's National Security Advisor; the Director of National Intelligence; the Secretaries of Defense, State, Treasury, and Commerce; U.S. ambassadors serving in posts abroad; the Joint Chiefs of Staff; and the Unified and Specified Commanders. In addition, SIGINT information is disseminated to numerous agencies and departments, including, among others: the Central Intelligence Agency; the Federal Bureau of Investigation; the Drug Enforcement Administration; the Departments of the Army, Navy, and Air Force; and various intelligence components of the

Department of Defense. Information provided by NSA is relevant to a wide range of important issues, including, but not limited to, military order of battle; threat warnings and readiness; arms proliferation; terrorism; and foreign aspects of international narcotics trafficking. This information is often critical to the formulation of U.S. foreign policy and the support of U.S. military operations around the world. Moreover, intelligence produced by NSA is often unobtainable by other means.

7. NSA's ability to produce foreign intelligence information depends on its access to foreign and international electronic communications. Further, SIGINT technology is both expensive and fragile. Public disclosure of either the capability to collect specific communications or the substance of the information itself can easily alert targets to the vulnerability of their communications. Disclosure of even a single communication holds the potential for revealing the intelligence collection techniques that are applied against targets around the world. Once alerted, SIGINT targets can easily frustrate SIGINT collection by using different or new encryption techniques, disseminating disinformation, or by utilizing a different communications link. Such evasion techniques may inhibit access to the target's communications and, therefore, deny the United States access to information crucial to the defense of the United States both at home and abroad.

### NSA'S IMPLEMENTATION OF SECTION 702 OF THE FAA

8. NSA is one of the Federal agencies primarily involved in implementing Section 702. Using the authority granted by Section 702, NSA seeks to acquire foreign intelligence information concerning specific targets under a Section 702 certification from or with the compelled assistance of electronic communication service providers.

9. As required by Section 702, and as affirmed in affidavits NSA files with the Foreign Intelligence Surveillance Court ("FISC"), these targets must be non-United States persons

reasonably believed to be located outside the United States. Under the authorities granted by FAA 702, NSA only targets non-United States persons reasonably believed to be outside the United States under a Section 702 certification if NSA believes that the target possesses foreign intelligence information about persons, groups, or entities covered by a certification or are likely to communicate foreign intelligence information concerning these persons, groups, or entities.

10. Under the Section 702 targeting process, and pursuant to its FAA 702 FISC-approved targeting procedures, NSA targets persons by tasking selectors used by those persons to communicate foreign intelligence information. Once information is collected from tasked selectors, it is subject to FISC-approved minimization procedures. NSA's minimization procedures set forth specific measures NSA must take when it acquires, retains, and/or disseminates non-publicly available information about United States persons.

### NSA INVOLVEMENT IN THE REVIEW OF INFORMATION RESPONSIVE TO THE PLAINTIFF'S FOIA REQUEST

11. By letter dated 26 July 2012, the Plaintiff submitted a FOIA request to the Department of Justice ("DOJ") for records regarding the FAA. The Plaintiff specifically sought the following records: (1) Any written opinion or order, as described in the statement quoted in this request, in which "the Foreign Intelligence Surveillance Court held that some collection carried out pursuant to the section 702 minimization procedures used by the Government was unreasonable under the Fourth Amendment"; (2) Any written opinion or order, as described in the statement quoted in the request, reflecting or concerning a FISC determination that "the government's implementation of Section 702 of FISA has sometimes circumvented the spirit of the law"; and (3) Any briefing provided to the Senate Select Committee on Intelligence or the

House Permanent Select Committee on Intelligence concerning the FISC opinion or orders, described in items (1) and (2) of the request.[2]

12. In response to the Plaintiff's FOIA request, the DOJ's National Security Division ("NSD") consulted with NSA seeking NSA's review of responsive documents, because they contained NSA information and equities. On 1 April 2013, in support of the Government's Motion for Summary Judgment, NSA provided a declaration to this Court justifying the withholding in full of the 3 October 2011 FISC Opinion as exempt from release based upon Exemptions 1 and 3 of the FOIA. An NSA original classification authority, the former Deputy Associate Director for Policy and Records, stated under the penalty of perjury that responsive information withheld by NSA was "currently and properly classified at the TOP SECRET – SENSITIVE COMPARTMENTED INFORMATION (SCI) and SECRET levels in accordance with E.O. 13526." Declaration at § 15. The former NSA Deputy Associate Director for Policy and Records further stated that "the release of this information could reasonably be expected to cause exceptionally grave damage and serious damage, respectively, to the national security." *Id.*

13. With respect to material exempt pursuant to Exemption 3 of the FOIA, the NSA Deputy Associate Director for Policy and Records stated that the withheld material fell "squarely within the scope of several [B3] statutes," including section 6 of the National Security Agency Act of 1959, Public Law 86-36 (50 U.S.C. § 3605) (providing that "[n]othing in this Act or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, [or] of any information with respect to the activities thereof . . ."); 18 U.S.C. § 798 (prohibiting the unauthorized disclosure of classified information concerning

---

[2] As noted above, DOJ NSD identified four documents responsive to the Plaintiff's FOIA request, and both DOJ and NSA withheld certain information from all four documents, to include certain documents in their entirety. The Plaintiff has indicated that the only withholdings from the Government's 21 August 2013 release that it continues to challenge are certain withholdings from the 3 October 2011 FISC Opinion.

6

United States COMINT activities); and Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004 (50 U.S.C. § 3024) (providing that the Director of National Intelligence "shall protect intelligence sources and methods from unauthorized disclosure"). *Id.* at §§ 20-26. Consequently, NSA's withholdings, as stated in its 1 April 2013 declaration, were appropriate and consistent with the FOIA's requirements under the circumstances as they existed on the date NSA's declaration was filed with this Court.

### UNAUTHORIZED DISCLOSURES OF CLASSIFIED INFORMATION CONCERNING GOVERNMENT COLLECTION OF INTELLIGENCE PURSUANT TO THE FISA

14. Over the past several months, beginning on or about 6 June 2013, there have been multiple unauthorized disclosures of classified information concerning the Government's collection of intelligence pursuant to the FISA, including Section 702. In response to those disclosures, President Obama directed the Director of National intelligence to declassify and make public as much information as possible about certain sensitive programs while being mindful of the need to protect sensitive classified intelligence activities and national security.

15. Accordingly, the US Intelligence Community, to include NSA, has been engaged in a coordinated, multi-agency review process of information that concerns the collection of intelligence pursuant to the FISA. The responsive records in this case, which concern the collection of intelligence information pursuant to Section 702 of the FISA, were among the many documents reviewed during this multi-agency effort. Ultimately, and as described in greater detail in a declaration filed today by the Office of the Director of National Intelligence, on 21 August 2013, the Director of National Intelligence authorized the declassification and public release of information contained within a number of documents pertaining to the Government's collection activities under Section 702 of the FISA, including certain portions of the documents responsive to the Plaintiff's FOIA request. As the DNI stated in his public letter authorizing the

release, "[t]hese documents were properly classified, and their declassification is not done lightly. The [DNI] has determined, however, that the harm to national security in these circumstances is outweighed by the public interest." "DNI James Clapper's Cover Letter Announcing the Document Release," dated 21 August 2013 (available at http://www.odni.gov/files/documents/DNI%20Clapper%20Section%20702%20Declassification%20Cover%20Letter.pdf). Each document that was released on 21 August 2013, to include the 3 October 2011 FISC Opinion, contained certain redactions of classified information. As the DNI's public letter noted, "[b]ecause these documents include discussion of matters that remain appropriately classified so as to protect national security, it was necessary to redact some information from them." Id.

## NSA WITHHOLDINGS TO THE 3 OCTOBER 2011 FISC OPINION

16. As described above, the 3 October 2011 FISC Opinion contains NSA information and NSA equities. I understand that the Plaintiff is challenging the information that has been redacted from the FISC Opinion, with the exception of the withholding of the names of individuals or companies, to include communication service providers, identified in the document. The withheld NSA information and equities, however, remain currently and properly classified in accordance with E.O 13526 and protected from release by statute, specifically section 6 of the National Security Agency Act, 18 U.S.C. § 798, and Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004. Accordingly, as set forth below, this information is exempt from release based upon Exemptions 1 and 3 of the FOIA.

## FOIA EXEMPTION ONE

17. Section 552(b)(1) of the FOIA provides that the FOIA does not require the release of matters that are specifically authorized – under criteria established by an Executive Order – to be kept secret in the interest of the national defense or foreign policy and are in fact properly

classified pursuant to such Executive Order. The current Executive Order that establishes such criteria is E.O. 13526.

18. Section 1.4 of E.O. 13526 provides that national security information shall not be considered for classification unless it falls within one (or more) of eight specifically enumerated categories of information. The categories of classified information in the document at issue here are those found in Section 1.4(c), which include intelligence activities (including covert action), intelligence sources and methods, or cryptology; and Section 1.4(g), which include vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security.

19. In my role as a TOP SECRET classification authority, I have reviewed the 3 October 2011 FISC Opinion and, for the following reasons, I have determined that all of the information withheld by NSA is currently and properly classified at the TOP SECRET – SCI level in accordance with E.O. 13526. Accordingly, the release of this information could reasonably be expected to cause exceptionally grave damage to the national security. Additionally, this information is subject to special access and handling restrictions, because it involves sensitive compartmented information.

20. The information withheld by NSA in the 3 October 2011 FISC Opinion that the Plaintiff challenges can be generally described to pertain to operational details of NSA's collection activities under Section 702 of the FAA. The withheld information can be further segregated into the following four specific categories. First, certain of the withheld information identifies the specific types of communications that NSA is able to successfully target and acquire pursuant to Section 702, and the means by which NSA performs its targeting and

collection activities.[3] Second, certain of the withheld information consists of specific technological limitations that impact NSA's capability to target and acquire certain communications pursuant to Section 702 of the FAA as well as the technological solutions that NSA employs to overcome such limitations, to the extent available.[4] Public disclosure of these two categories of information would reveal information to adversaries that could be used to develop technical countermeasures to NSA's Section 702 targeting and collection activities. Targeted persons have been known to analyze public disclosures of NSA's capabilities. Therefore, the public disclosure of the specific types of communications that NSA acquires pursuant to Section 702 or specific technological limitations that prevent NSA from collecting specific types of communications pursuant to Section 702, would allow targeted adversaries to frustrate SIGINT collection by using different communication techniques that they now know to be safe or developing customized methods of communication that exploit technical limitations impairing NSA's collection capabilities. As a result, NSA may be denied access to adversaries' communications and therefore suffer a loss of access to information crucial to the national security and defense of the United States.

21. Third, certain of the withheld information consists of specific technical measures that NSA implements when targeting communications pursuant to Section 702 of the FAA to ensure that the collection is targeted at non-United States persons reasonably believed to be located outside of the United States.[5] The public disclosure of this information would provide persons targeted by NSA using Section 702 of the FAA – i.e., non-United States persons reasonably

---

[3] Withholdings falling under this category of information can be found on pages 5, 30, 34, 36, 43, and 73 of the 3 October 2011 FISC opinion.

[4] Withholdings falling under this category of information can be found on pages 30-31, 32, 35, 40, 47, 48, 57, 58, and 63 of the 3 October 2011 FISC opinion.

[5] Withholdings falling under this category of information can be found on pages 5, 31, 33, and 58 of the 3 October 2011 FISC opinion.

believed to be located outside of the United States – with a roadmap for evading NSA's acquisition of their communications pursuant to Section 702. The procedures that NSA utilizes in carrying out its FAA 702 targeting activities address, among other subjects, the manner in which NSA determines that a person targeted under Section 702 is a non-United States person reasonably believed to be located outside the United States, the post-targeting analysis conducted on the targeted selectors, and the documentation that NSA is required to produce. The public disclosure of this information would enable an adversary to take countermeasures and potentially avoid the acquisition of his communications pursuant to Section 702 of the FAA.

22. Finally, certain of the withheld information describes the specific impact of changing Internet service provider protocols and services to NSA targeting and acquisition activities carried out pursuant to Section 702 of the FAA.[6] The public disclosure of such information would provide adversaries with insights into which of their methods of communication are vulnerable to NSA's surveillance (and, vice versa, which of their methods of communications are not vulnerable). It would also reveal to adversaries the level of interest that NSA may have in those services and the Agency's ability to collect new and emerging services (or, vice versa, an inability to collect such services). Public disclosure of such information would again provide adversaries with a roadmap for evading NSA's acquisition of their communications pursuant to Section 702, thus frustrating NSA's SIGINT collection efforts and causing a loss of access to information crucial to the national security and defense of the United States.

23. Consequently, for the reasons described above, disclosing any of the information withheld by NSA in the publicly disclosed 3 October 2011 FISC Opinion would disclose operational details of NSA's activities under the FAA and would provide our adversaries with critical information about NSA's capabilities and limitations. For this reason, any operational

---

[6] Withholdings falling under this category of information can be found on pages 32 and 63 of the 3 October 2011 FISC opinion.

details of NSA's acquisition efforts under the FAA are exempt from disclosure pursuant to Exemption 1 of the FOIA, because the information is currently and properly classified in accordance with E.O. 13526.

## FOIA EXEMPTION THREE

24. Section 552(b)(3) of the FOIA provides that the FOIA does not require the release of matters that are specifically exempted from disclosure by statute, provided that such statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or establishes particular criteria for withholding or refers to particular types of matter to be withheld. See 5 U.S.C. § 552(b)(3). Review of the application of Exemption 3 statutes consists solely of determining that the statute relied upon qualifies as an Exemption 3 statute and that the information withheld falls within the scope of the statute.

25. The NSA information withheld from the 3 October 2011 FISC Opinion falls squarely within the scope of several statutes. The first of these statutes is a statutory privilege unique to NSA. As set forth in Section 6 of the National Security Agency Act of 1959, Public Law 86-36 (50 U.S.C. § 3605), "[n]othing in this Act or any other law . . . shall be construed to require **the disclosure of the organization or any function of the National Security Agency, [or] of any information with respect to the activities thereof . . . .**" (emphasis added). Congress, in enacting the language in this statute, decided that disclosure of any information relating to NSA activities is potentially harmful. Hayden v. NSA, 608 F.2d 1381, 1390 (D.C. Cir. 1979); see also Wilner v. NSA, 592 F.3d 60, 75 (2nd Cir. 2010); Larson, et al. v. Dep't of State, 565 F.3d 857, 868 (D.C. Cir. 2009); Students against Genocide, et al. v. Dep't of State, et al., 257 F.3d 828 (D.C. Cir. 2001); Lahr v. National Transp. Safety Bd., et al., 453 F. Supp.2d 1153, 1171-73 (C. D. Cal. 2006); People for the American Way v. NSA, 462 F.Supp.2d 21, 30 (D.D.C. 2006); and Florida Immigrant Advocacy Center v. NSA, 380 F.Supp.2d 1332, 1340-41 (S.D. Fla. 2005).

Federal courts have held that the protection provided by this statutory privilege is, by its very terms, absolute. See, e.g., Linder v. NSA, 94 F.3d 693 (D.C. Cir. 1996). Section 6 states unequivocally that, notwithstanding any other law, including the FOIA, NSA cannot be compelled to disclose any information with respect to its activities. See Hayden, 608 F.2d at 1389. Further, while in this case the harm would be exceptionally grave, NSA is not required to demonstrate specific harm to national security when invoking this statutory privilege, but only to show that the information relates to its activities. Id. at 1390. To invoke this privilege, NSA must demonstrate only that the information it seeks to protect falls within the scope of section 6. NSA's functions and activities are therefore protected from disclosure regardless of whether or not the information is classified.

26. The second applicable statute is 18 U.S.C. § 798. This statute prohibits the unauthorized disclosure of classified information: (1) concerning the communications intelligence activities of the United States; or (ii) obtained by the process of communication intelligence derived from the communications of any foreign government. The term "communications intelligence," as defined by 18 U.S.C. § 798(b), means all procedures and methods used in the interception of communications and the obtaining of information from such communications by other than the intended recipients.

27. The third applicable statute is Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004 (50 U.S.C. § 3024), which states that "[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." NSA, as a member of the U.S. Intelligence Community, must also protect intelligence sources and methods. Like the protection afforded to core NSA activities by Section 6 of the NSA Act of 1959, the protection afforded to intelligence sources and methods is

similarly absolute. See CIA v. Sims, 471 U.S. 159 (1985). Whether the sources and methods at issue are classified is irrelevant for purposes of the protection afforded by 50 U.S.C. § 3024. Id.

28. As described above, Congress has enacted three statutes to protect the fragile nature of NSA's SIGINT efforts, to include, but not limited to, the existence and depth of signals intelligence-related successes, weaknesses and exploitation techniques. These statutes recognize the vulnerability of signals intelligence to countermeasures and the significance of the loss of valuable intelligence information to national policymakers and the Intelligence Community. Given that Congress specifically prohibited the disclosure of information related to NSA's functions and activities and its communications intelligence activities, as well as the sources and methods used by the Intelligence Community as a whole, I have determined that NSA's SIGINT activities and functions, and its intelligence sources and methods, would be revealed if any of the information withheld by NSA from the 3 October 2011 FISC Opinion were disclosed to the Plaintiff.

29. Based upon my review of the responsive NSA material, I conclude that the information that was withheld by NSA from the partially declassified 3 October 2011 FISC Opinion is protected from disclosure by statute pursuant to the following three authorities: (1) Section 6 of the NSA Act of 1959 (Pub. L. No. 86-36) (50 U.S.C. § 3605); because the information concerns the organizations, functions, and activities of the NSA, as described above; (2) 18 U.S.C. § 798, because disclosure would reveal classified information derived from NSA's exploitation of foreign communications; and (3) 50 U.S.C. § 3024, because the information concerns intelligence sources and methods.

30. The withheld information being challenged by the Plaintiff pertains to the operational details of NSA's Section 702 collection activities. Specifically, and as described above, the withheld information can be categorized as follows: first, certain of the withheld information

identifies the specific types of communication that NSA is able to successfully target and acquire pursuant to Section 702, and the means by which NSA performs its Section 702 targeting and collection activities; second, certain of the withheld information consists of specific technological limitations that impact NSA's capability to target and acquire certain communications pursuant to Section 702 of the FAA as well as the technological solutions that NSA employs to overcome such limitations, to the extent available; third, certain of the withheld information consists of specific technical measures that NSA implements when targeting communications pursuant to Section 702 of the FAA to ensure that the collection is targeted at non-United States persons reasonably believed to be located outside of the United States; and fourth, certain of the withheld information describes the specific impact of changing Internet service provider protocols and services to NSA targeting and acquisition activities carried out pursuant to Section 702 of the FAA. Each of these categories of information clearly relates to a function and/or an activity of the NSA. The withheld information also directly pertains to one of NSA's core missions, SIGINT collection. Finally, the withheld information pertains to the communications intelligence activities of the NSA. Accordingly, all of the information withheld by NSA from the 3 October 2011 FISC opinion is exempt from release under the FOIA pursuant to Exemption 3.

31. As indicated above, NSA's withholdings to the 3 October 2011 FISC opinion were appropriate and consistent under the circumstances. Congress expressly protected such information from disclosure in Section 6 of the NSA Act of 1959, and, therefore, Exemption 3 serves to ensure that congressional judgment is not implicitly overridden by the FOIA. See Association of Retired R.R. Workers v. U.S. R.R. Retirement Bd., 830 F.2d 331, 336 (D.C. Cir. 1987) ("[T]he purpose of Exemption 3 [is] to assure Congress, not the agency, makes basic nondisclosure decisions."); Founding Church of Scientology of Washington D.C. v. NSA, 610

F.2d 824, 828 (D.C. Cir. 1979) ("Section 6 . . . reflects . . . a congressional judgment that, in order to preserve national security, information elucidating the subjects specified ought to be safe from forced exposure. The basic choice was made by Congress, not entrusted to administrative discretion in the first instance.") For the reasons set forth above, all of the withheld NSA information from the 3 October 2011 FISC Opinion is likewise exempt based upon Exemption 1 of the FOIA, because the information is currently and properly classified in accordance with E.O. 13526.

32. I declare under penalty of perjury that the facts set forth above are true and correct.

Executed, this 4th day of September, pursuant to 28 U.S.C. § 1746.

_____
DR. DAVID J. SHERMAN
Associate Director for Policy and Records
National Security Agency