IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendant. | Civil Action No. 12-0333 (GK) |

**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 7(h), defendant submits this statement of genuine issues in opposition to plaintiffs' statement of material facts.

1. **Plaintiff's Alleged Fact #1:** In May 2011, the Department of Homeland Security ("DHS") and the National Security Agency ("NSA") implemented the DIB Cyber Pilot to monitor all traffic flowing through certain Internet Service Providers ("ISPs") from Internet users to a select number of defense contractors. (internal citation omitted).

    **Genuine Issue:** Defendant disputes plaintiff's characterization of the DIB Cyber Pilot. *See* Second Decl. of James V.M.L. Holzer ("Second Holzer Decl."), ECF No. 53-3, at ¶¶3, 7 (explaining that the DIB Cyber Pilot was a joint program implemented by DHS and the Department of Defense). Defendant further states that plaintiff cannot rely on its own FOIA request to establish material facts about the nature of the DIB Cyber Pilot.

2. **Plaintiff's Alleged Fact #2**: The program was confirmed by Deputy Defense Secretary William J. Lynn III in a speech on June 16, 2011. Lynn explained the DIB Cyber Pilot program, stating the government would provide intelligence to certain companies or ISPs on

their behalf to identify and stop malicious activity within their network. (internal citation omitted).

**Genuine Issue**: Defendant disputes plaintiff's characterization of Deputy Defense Secretary William J. Lynn III June 16, 2011 speech, as plaintiff impermissibly relies on its own FOIA request, which in turn quotes a news article rather than the speech itself, to demonstrate this "fact." Defendant further states that June 16, 2011 speech speaks for itself and respectfully refers the Court to the Department of Defense's transcription of the speech at http://www.defense.gov/transcripts/transcript.aspx?transcriptid=4842.

3.    **Plaintiff's Alleged Fact #3**: Other NSA officials stated that the agency had developed "signatures" of malicious code and sequences of suspicious network behavior that the Agency can use to filter Internet traffic on ISPs that flows to specified defense contractors. (internal citation omitted).

**Genuine Issue**: Defendant disputes that plaintiff's citation to a press report containing purported anonymous sources establishes a "fact" for summary judgment purposes. Defendant further states that this purported "fact" is neither relevant nor material to plaintiff's summary judgment motion on their FOIA claim.

4.    **Plaintiff's Alleged Fact #4**: Reports demonstrated that individuals within the Department of Justice ("DOJ") expressed concern that the program could 'run afoul of laws forbidding government surveillance of private Internet traffic.'" (internal citations omitted).

**Genuine Issue**: Defendant disputes that plaintiff's citation to a press report containing purported anonymous sources establishes a "fact" for summary judgment purposes. Defendant further states that this purported "fact" is neither relevant nor material to plaintiff's summary judgment motion on their FOIA claim.

5. **Plaintiff's Alleged Fact #5**: The reports identified participating ISPs to include AT&T, Verizon, and Century Link, and defense contractors to include Lockheed Martin, CSC, SAIC, and Northrup Grumman. (internal citation omitted).

**Genuine Issue**: Defendant disputes that plaintiff's citation to a press report containing purported anonymous sources establishes "fact" for summary judgment purposes. Defendant further states that this purported "fact" is neither relevant nor material to plaintiff's summary judgment motion on their FOIA claim.

6. **Plaintiff's Alleged Fact #6**: The DoD announced on May 11, 2012, that the one-year DIB Pilot Program had concluded and the program would be fully implemented and expanded to included DIB Enhanced Cybersecurity Services. (internal citation omitted).

**Genuine Issue**: Defendant disputes that the DoD announced on May 11, 2012, that the one-year DIB Pilot Program had concluded and the program would be fully implemented and expanded to include DIB Enhanced Cybersecurity Services. Defendant further states that DoD's May 11, 2012 press release speaks for itself and respectfully refers the Court to the Department of Defense's press release at http://www.defense.gov/releases/release.aspx?releaseid=15266.

7. **Plaintiff's Alleged Fact #7**: On July 26, 2011 EPIC filed a FOIA request with DHS ("EPIC's FOIA Request"), including a request for news media fee status and for a waiver. Specifically, EPIC's request sought the following five categories of documents: (1) all contracts and communications with Lockheed Martin, CSC, SAIC, Northrup Grumman or any other defense contractors regarding the new NSA pilot program; (2) all contracts and communications with AT&T, Verizon and CenturyLink or any other ISPs regarding the new NSA pilot program; (3) all analyses, legal memoranda, and related records regarding the new NSA pilot; (4) any

memoranda of understanding between NSA and DHS or any other government agencies or corporations regarding the new NSA pilot program; (5) any privacy impact assessment performed as part of the development of the new NSA pilot program.  (internal citation omitted).

      **Genuine Issue**: Defendant does not dispute this fact, but defendant notes that EPIC later revised the scope of its request to exclude drafts and to narrow the fourth category.  In addition, EPIC failed to administratively appeal DHS's determination that it did not locate records responsive to the fifth category; thus, that category no longer remains.

      8.     **Plaintiff's Alleged Fact #8**: By letter dated August 3, 2011, DHS acknowledged receipt of EPIC's FOIA Request and notified EPIC that no responsive documents had been located in response to category (5).  DHS then referred EPIC's FOIA Request to the National Protection and Programs Directorate ("NPPD"), a DHS component, for further processing of the remaining four categories of documents.  (internal citation omitted).

      **Genuine Issue**:  Defendant does not dispute this fact.

      9.     **Plaintiff's Alleged Fact #9**: NPPD failed to provide an acknowledgement of the receipt of EPIC's FOIA Request.  (internal citation omitted).

      **Genuine Issue**: Defendant disputes that NPPD failed to provide an acknowledgement of the receipt of EPIC's FOIA Request.  NPPD is a component of DHS and is not required to acknowledge receipt of the FOIA request separate and apart from DHS's acknowledgement of its receipt of the FOIA Request.  Defendant further states that on January 5, 2012, EPIC transmitted via facsimile a purported administrative appeal to NPPD's FOIA Office, appealing NPPD's non-responsiveness to categories 1-4 of EPIC's FOIA Request.  Second Holzer Decl., ECF No. 53-3, at ¶11.  Prior to receiving EPIC's facsimile, NPPD's FOIA Office had started processing the request by tasking out the search to the office that was most directly

responsible for DHS's involvement in the DIB Cyber Pilot, NPPD's subcomponent, the Office of Cybersecurity and Communications ("CS&C").  *Id.*  NPPD FOIA Officials had also engaged CS&C officials regarding the appropriate way to proceed with EPIC's FOIA Request given its potentially broad scope.  *Id.*  During January 2012, a FOIA Specialist with NPPD spoke with EPIC by telephone and discussed the status of the FOIA Request, indicating that the remaining four categories of the request were being processed.  *Id.*  Plaintiff filed this lawsuit on March 1, 2012, without waiting for DHS to complete the administrative processing of EPIC's FOIA Request.  *Id.* at ¶12.

10.     **Plaintiff's Alleged Fact #10**: On January 5, 2011, one hundred and fifty-five business days after DHS's acknowledgment, EPIC transmitted an administrative appeal alleging that the Agency had missed its statutory deadlines in regard to categories 1-4 of EPIC's FOIA Request.  (internal citation omitted).

   **Genuine Issue**: Defendant disputes this fact to the extent that it suggests that plaintiff's administrative appeal was timely.  Second Holzer Decl., ECF No. 53-3, at ¶¶ 9-12.

11.     **Plaintiff's Alleged Fact #11**: On January 23, 2012, a FOIA Agent in NPPD contacted EPIC Attorney Amie Stepanovich by telephone and indicated that the component would 'start processing' EPIC's FOIA Request.  (internal citations omitted).

   **Genuine Issue**: Defendant disputes that, on January 23, 2012, a FOIA Agent in NPPD contacted EPIC Attorney Amie Stepanovich by telephone and indicated that the component "would 'start processing'" EPIC's FOIA Request.  Defendant further states that NPPD already had begun processing plaintiff's FOIA Request when an NPPD FOIA Specialist contacted EPIC's counsel in on January 23, 2012. Second Holzer Decl., ECF No. 53-3, at ¶¶9-11.

12. **Plaintiff's Alleged Fact #12**: No further communications from NPPD were received by EPIC. (internal citation omitted).

**Genuine Issue**: Defendant disputes that EPIC received no further communications from NPPD. During the processing of EPIC's FOIA request, DHS communicated with EPIC. *See, e.g.*, Second Holzer Decl., ECF No. 53-3, at ¶¶ 11, 13,45. Defendant further states that, since the beginning of this lawsuit, DHS, and its subcomponent, NPPD, have continued to communicate with EPIC through defendant's counsel. *See, e.g.*, *id.* at ¶¶ 447, 49.

13. **Plaintiff's Alleged Fact #13**: Fifty-six additional business days after EPIC submitted its administrative appeal, EPIC filed a complaint in federal district court on March 1, 2012. The complaint alleged that DHS failed to comply with the statutory provisions of the FOIA. (internal citation omitted).

**Genuine Issue**: Defendant disputes this fact to the extent it suggests that EPIC's administrative appeal was timely.

14. **Plaintiff's Alleged Fact #14**: On August 31, 2012, the Parties agreed to narrow the scope of EPIC's FOIA Request. EPIC agreed to exclude draft documents from the scope of the request, and narrowed the categories of documents requested as follows: (1) all contracts and communications with Lockheed Martin, CSC, SAIC, Northrup Grumman or any other defense contractors regarding the DIB Cyber Pilot; (2) all contracts and communications with AT&T, Verizon and CenturyLink or any other ISPs regarding the DIB Cyber Pilot; (3) all legal and technical analyses, including legal memoranda, regarding the DIB Cyber Pilot; (4) any memoranda of understanding between NSA and DHS or any other government agencies or corporations regarding the DIB Cyber Pilot. (internal citation omitted).

**Genuine Issue**: Defendant disputes that the parties "agreed" on the narrowed scope of EPIC's FOIA Request. Plaintiff partially narrowed the scope of its FOIA request. Defendant further states that it was only after DHS informed plaintiff that the agency had collected more than 10,000 pages of potentially responsive documents that plaintiff narrowed the scope of its FOIA request. Second Holzer Decl., ECF No. 53-3, at ¶13.

15.     **Plaintiff's Alleged Fact #15**: In accordance with this Court's Scheduling Order, DHS produced approximately 1,300 pages of partially-redacted documents on April 15, 2013. (internal citation omitted).

**Genuine Issue**: Defendant disputes this fact to the extent that it omits that, on December 17, 2012, DHS Privacy issued its first interim response to EPIC, stating that it had identified 494 pages of responsive materials that were being withheld in their entirety pursuant to Title 5 U.S.C. § 552(b)(1), (b)(5), and (b)(7)(E), FOIA Exemptions 1, 5, and 7(E). Second Holzer Decl., ECF No. 53-3, at ¶45. DHS later determined that the number of pages identified in this response was inaccurate because it included some number of pages of non-responsive documents in addition to the pages of withheld-in-full documents. *Id.* Defendant further states that DHS produced to plaintiff 1,276 pages, of which DHS Privacy determined that 117 pages of the records were releasable in their entirety, and 1,159 pages were partially releasable pursuant to Title 5 U.S.C. § 552(b)(6), and (b)(7)(E), FOIA Exemptions 6 and 7(E). *Id.* at ¶46.

16.     **Plaintiff's Alleged Fact #16**: A partial *Vaughn* Index was provided on June 15, 2013. The remaining preliminary *Vaughn* Index was provided on June 22, 2013. In response to questions raised by EPIC, DHS made a supplemental production of documents on August 16, 2013.

**Genuine Issue**: Defendant disputes that it provided EPIC a "remaining preliminary *Vaughn* Index" on June 22, 2013. Defendant further states that it provided EPIC with the final *Vaughn* index when DHS moved for summary judgment on August 30, 2013. *See* Exhibit 4 to Def's Mot. for S.J., ECF No. 53-4.

Defendant also disputes this statement to the extent that it suggests that DHS's supplemental production of documents was wholly in response to questions raised by EPIC. A few of the documents included in the supplemental production were provided in response to the questions raised by EPIC, while others were provided based on DHS's separate determination to re-release records or to release records for the first time. Second Holzer Decl., ECF No. 53-3, at¶47-50. Many of the documents identified as "missing" by EPIC were non-responsive to the FOIA Request (based on EPIC's narrowing of the scope of its FOIA Request in August 2012). Id. at¶47. And DHS, on its own, decided to conduct a supplemental search, which yielded documents that the agency determined should be released and produced to EPIC in whole or part. *See id.* at ¶¶ 48-50.

Dated:  November 4, 2013                              Respectfully submitted,

                                                      STUART F. DELERY
                                                      Assistant Attorney General

                                                      JOHN R. TYLER
                                                      Assistant Director

                                                      */s/ Lisa Zeidner Marcus*
                                                      LISA ZEIDNER MARCUS
                                                      TAMRA T. MOORE
                                                      Trial Attorneys
                                                      United States Department of Justice
                                                      Civil Division, Federal Programs Branch
                                                      20 Massachusetts Avenue, 7th Floor
                                                      Washington, DC 20001

Tel: (202) 514-3336
Fax: (202) 616-8460
E-mail: lisa.marcus@usdoj.gov

Counsel for Defendant