**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER )<br><br>Plaintiff, )<br><br>v. )<br><br>THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY )<br><br>Defendant. ) | No. 1:12-cv-00333-GK |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

Defendant Department of Homeland Security ("DHS") has failed to establish that the

agency conducted an adequate search for responsive records and has also failed to show that the

agency lawfully invoked several Freedom of Information Act ("FOIA") exemptions. On both

issues, Summary Judgment should be granted for Petitioner Electronic Privacy Information

Center ("EPIC").

In order to determine the adequacy of DHS' response to EPIC's FOIA Request, EPIC

reviewed DHS' entire document production. EPIC also reviewed Agency affidavits and the

*Vaughn* index. *See* Dkt. No. 53, Exhibit 3 ("Second Holzer Decl."); Dkt. No. 53, Exhibit 5

("Herrington Decl."); Dkt. No. 53, Exhibit 6 ("Brinkmann Decl."); Dkt. No. 53, Exhibit 4

("Vaughn index"). Based on this information, EPIC initially brought a small number of specific,

narrow challenges to DHS' response to EPIC's FOIA Request, specifically:

1. The sufficiency of DHS' search based on specific references in the universe of

    documents released by the Agency (EPIC Motion at 6-8);

2. The failure of DHS to provide the original classification authority for David J. Sherman (*Id*. at 9-12);

3.  DHS' failure to adequately support Exemption 3 withholdings in 8 identified documents (*Id*. at 13-15);

4. The redaction of the names of the companies participating in the DIB Cyber Pilot under Exemptions 4 and 7(D) (*Id*. at 15-22, 24-28);

5. The categorization of a summary of a communication with a private company in one identified document as an "inter-agency or intra-agency memoradum[] or letter[] under Exemption 5 (*Id*. at 22-24); and

6. The failure of DHS to provide any basis for specific withholdings asserted under Exemptions 7(C), 7(F), and 5.

To support its claims, DHS now provides further information on the redactions, as well as an additional affidavit. *See, e.g.,* Dkt. No. 62 ("DHS Reply"); Dkt. No. 62, Exhibit 1 ("Third Holzer Decl."). In a few instances, DHS demonstrates the validity of certain claims. However, in most cases DHS has failed to meet its burden of proof. *See* 5 U.S.C. § 552(a)(4)(B) ("the burden is on the agency to sustain its action"); *see also EPIC v. Dept. of Homeland Security*, 384 F. Supp. 2d 100, 106 (D.D.C. 2005).

Accordingly, this Court should now award Summary Judgment in favor of EPIC and order DHS to conduct a further search for documents in line with the additional information provided by EPIC, and to un-redact information previously unlawfully withheld.

## I.   Countervailing Evidence Demonstrates that DHS Conducted an Inadequate Search

The government too narrowly construes the test of a reasonable search. Only "in the absence of countervailing evidence or apparent inconsistency of proof [will] affidavits that

explain in reasonable detail the scope and method of the search conducted by the agency []
suffice to demonstrate compliance with the obligations imposed by the FOIA." *Perry v. Block*,
684 F.2d 121, 127 (D.C. Cir. 1982). An agency "fulfills its obligations under FOIA if it can
demonstrate beyond material doubt that its search was reasonably calculated to uncover all
relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514,
395 U.S. App. D.C. 138 (D.C. Cir. 2011)).

    The documents provided by the government so far contain many references to responsive
and potentially responsive documents not provided to EPIC. *See* Exhibit 1. EPIC has prepared a
list of specific documents containing email attachments and/or references to responsive
documents not provided to EPIC. The list includes the Joint Cybersecurity Privacy Threshold
Analysis (Exhibit 1 at 1, Documents 52, 68-70), a Memoranda of Agreement between DHS and
DOD (Exhibit 1 at 1, Document 103, 137, 369, 392, 396, 398, 406, and 409), reference to
agreements with ISPs (Exhibit 1 at 8, Document 204, 206, 209-210), and a Joint Cyber Security
Pilot briefing to Chief Information Officers and Chief Information Security Officers (Exhibit 1 at
2, Document 317).

    "[I]f, in the face of well-defined requests and positive indications of overlooked
materials, an agency can so easily avoid adversary scrutiny of its search techniques, the Act will
inevitably become nugatory." *Founding Church of Scientology v. NSA*, 610 F.2d 824, 837 (D.C.
Cir. 1979). The email attachments and references to so many responsive and potentially
responsive documents not produced to EPIC "raise[s] serious doubts as to the completeness of
the search," *Perry v. Block*, 684 F.2d at 127, and provide "positive indications of overlooked
materials," *Founding Church of Scientology*, 610 F.2d at 837. The overlooked materials call into
question the adequacy of the government's search despite appearances of thoroughness.

3

Despite developing a number of keywords for searching electronic files, the government's opposition does not establish that the agency conducted a sufficient search for responsive records. Whereas the NPPD Office of the Under Secretary's ("OUS") Microsoft Access database was "searched using the key terms developed," the key terms were merely "provided to the appropriate employees" that NPPD OUS identified as potentially having responsive documents. Second Holzer Decl. ¶¶ 22-23. There is no indication the NPPD OUS employees conducted searches for responsive documents in possession of the agency.

Similarly, the Office of Selective Acquisitions "conducted a search on several key terms" but did not necessarily use all the key terms. *See* Second Holzer Decl. ¶ 42. The two attorneys identified by the National Protection and Programs Legal Division (NPPLD) did not use the key terms at all but manually identified the location in their email archives and computer hard drives where they kept documents about the DIB program. Second Holzer Decl. ¶¶ 34-35.

DHS' reliance on *Steinberg v. DOJ*, *Morley v. CIA*, and *Mobley v. CIA* to argue that references to other files in records found does not obligate them to look for these files is misplaced. In *Morley*, the plaintiff provided an affidavit stating that certain meetings must have been memorialized and that a daily diary must have been kept of certain activities. *Morley v. CIA*, 508 F.3d 1108, 1120 (D.C. Cir. 2007). The plaintiff also argued that the CIA failed to provide monthly progress reports. *Id.* The court held that the assertions in Morley's affidavits amount "to nothing more than 'mere speculation that as yet uncovered documents might exist,' which is not enough to 'undermine the determination that the agency conducted an adequate search for the requested records.'" *Morley v. CIA*, 508 F.3d at 1120, *citing Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004). With respect to the progress reports, the CIA had stated it specifically searched for the requested reports but could not find them.

In *Steinberg*, the plaintiff argued that the DOJ's search was inadequate because it "failed to examine nineteen documents and six files that were cross-referenced in several of the disclosed documents." *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994). In *Steinberg*, the DOJ had provided a logical reason that accounted for the cross-references to the LaRouche organization—it had a number of ongoing investigations of the organization at the time.

A logical reason was also provided in *Mobley* for why evidence of additional documents did not undermine the adequacy of the government's search. The additional documents "would not have been responsive to Mobley's FOIA request." *Mobley v. CIA*, 924 F. Supp. 2d 24, 43 (D.D.C. 2013). Additionally, the court found the mere mention of the additional records during an FBI interview of Mobley did not suffice to establish their existence. *Mobley*, 924 F. Supp. at 442-43.

Unlike in *Morley* and *Mobley*, the failure to produce responsive documents in this case is not mere speculation. It is supported by the many email attachments, within the documents already obtained by EPIC, describing responsive documents. Additionally, these descriptions of responsive documents go beyond "mere reference to other files" discussed in *Steinberg*. Here, EPIC has identified documents that specifically describe records responsive to EPIC's FOIA request. This calls into question the adequacy of the government's search. "To prevail on summary judgment, 'the agency must demonstrate beyond material doubt that its search was reasonably calculated to uncover all the relevant documents.'" *EPIC v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 106 (D.D.C. 2005) citing *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). DHS should either produce the documents identified by EPIC as responsive to EPIC's FOIA Request, or provide a legal reason, based in the terms of the FOIA, why the information may not be disclosed.

**II.      DHS Has Not Demonstrated that Mr. Sherman is an Original Classification Authority**

In FOIA matters, "the burden is on the agency to sustain its action." 5 U.S.C. §

552(a)(4)(B) (2013); *see also EPIC v. Dept. of Homeland Security*, 384 F. Supp. 2d 100, 106

(D.D.C. 2005); *Soghoian v. Dept. of Justice*, 885 F. Supp. 2d 62, 69 (D.D.C. 2012). DHS did not

meet this burden to prove that certain information was properly classified; the Agency did not

establish that the material was properly classified by a valid classification authority.

Exemption 1 to the FOIA allows an Agency to withhold otherwise responsive

information if such information is "specifically authorized under criteria established by an

Executive order to be kept secret in the interest of national defense or foreign policy and . . . are

in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1)(A)-(B)

(2013). Further, 18 U.S.C. § 798, as applied through Exemption 3, "prohibits the unauthorized

disclosure of classified information." 18 U.S.C. § 798 (2013); *see also* 5 U.S.C. § 552(b)(3)

(2013). In order for records to be "properly classified" an original classification authority must

determine that the information within the records meets the proper legal standard for

classification. *See* Executive Order 13256 § 1.3(a). As previously explained, there is a specific

process set out in the law by which an individual is delegated classification authority. *See* Dkt.

No. 57 at 9-11 ("EPIC's Motion"). Such authority may only be delegated by specific individuals

and must be delegated in writing that identifies the person to be granted classification authority

by name or position. Once an individual lawfully receives such authority, he or she is able to

determine whether or not certain material meets the legal standard for classification. Executive

Order 13526 § 1.3(a).

DHS has provided no information regarding the specific individual who delegated

classification authority to Mr. Sherman or the instrument in which it was delegated. Instead,

DHS has submitted yet another affidavit that states generally, "Mr. Sherman serves as a TOP SECRET original classification authority…". Third Holzer Decl. at ¶ 8. DHS claims this language is sufficient to establish Mr. Sherman's authority, citing a single case to support its argument for sufficiency. *See* DHS Reply at 5-8, *citing to Meeropol v. Meese*, 790 F.2d 942, 952 (D.C. Cir. 1986). *Meeropol* concerned a large FOIA request for files related to the trials of Julius and Ethel Rosenberg. *See*, *id*. The D.C. Circuit held that court-ordered *in camera* review of documents was discretionary and "the court may grant summary judgment in favor of the government simply on the basis of the affidavits, if they 'contain information of reasonable detailed sufficient to place the documents within the exemption category…'". *Meeropol*, 790 F.2d at 958, *citing Lesar v. U.S. Dept. of Justice*, 636 F.2d 472, 481 (D.C. Cir. 1980). The Court in *Meeropol* went on to state that, in instances where bad faith was asserted, the Court could, in its discretion, grant *in camera* review to determine the sufficiency of the claimed exemption.

However, in this case, it has not yet been established that Mr. Sherman is in a position to make the requisite determination that information falls within a FOIA exemption based on one of the designated categories for proper classification. Such a showing is factual, not opinion-based, and cannot be proven through *in camera* review of the responsive records. *See Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973) ("it is vital that some process be formulated that will . . . permit the court system effectively and efficiently to evaluate the factual nature of disputed information."). Mr. Sherman's status can only be established through the production of the instrument that granted him original classification authority.

While affidavits are provided a presumption of good faith, defendants in FOIA cases are routinely required to produce documents that provide the proper foundation for assertions made therein. For example, the *Vaughn* index provides an accounting of documents located responsive

to a FOIA request and, for each document, includes the exemptions asserted and the basis for the

determination. The regular production of a *Vaughn* index in FOIA cases was established because

the "lack of knowledge by the party seeking disclosure seriously distorts the traditional adversary

nature of our legal system's form of dispute resolution. *Vaughn*, 484 F.2d at 824. In *Meeropol*,

FBI Special Agent Laurence Fann provided an affidavit in support of the adequacy of the

Agency's search for records, which was supported by documents with more information than a

typical *Vaughn* index, specifically "[e]laborate computer printouts…providing an inventory of

files, subjects, file numbers, sections and volumes, subfiles, bulky enclosures and exhibits,

numbers of pages reviewed and numbers of pages released." *Meeropol*, 790 F.2d at 951 (internal

quotations omitted). In the immediate case, DHS submitted copies of administrative documents

and e-mails between the parties to support statements in Mr. Holzer's second declaration. Dkt.

No. 53, Tab A.

Because DHS has failed to meets its burden to establish that Mr. Sherman is an original

classification authority, the Court should enter Summary Judgment in favor of EPIC.

### III.   DHS Has Not Established that Information Responsive to EPIC's FOIA Request Is Properly Exempt from Disclosure Pursuant to Exemption 3

EPIC has challenged DHS' use of Section 6 of the National Security Agency Act of 1959

as applied through Exemption 3 to withhold information in seven partially-produced documents

and one withheld-in-full record *See* 50 U.S.C. § 3605 (2013) ("Section 6"); 5 U.S.C. § 552(b)(3)

(2013). Section 6 allows information to be withheld when it relates to the "organization or any

function of the National Security Agency, of any information with respect to the activities

thereof, or of the names, titles, salaries, or number of persons employed by such agency." 50

U.S.C. § 3605 (2013). DHS provides no answer to EPIC's arguments that the record does not

properly support redactions in documents 433, 437, 454, and 434. *See* DHS Reply at 8-10. The

scope of DHS' opposition concerns only EPIC's characterization of the redactions in four other documents: 438, 441, 442, and withheld-in-full document 5.[1] *See id.*; *See also* Exhibit 2 (providing a complete copy of documents 438, 441, and 442). In these four documents, EPIC has asserted that DHS has not demonstrated that the information withheld specifically references "functions" or "activities" of the National Security Agency ("NSA").

A *Vaughn* index "must contain 'an adequate description of the records' and 'a plain statement of the exemptions relied upon to withhold each record.'" *Judicial Watch v. US Dept. of Defense*, 2013 U.S. Dist. LEXIS 122482, 2013 WL 4536118 at *4 (D.D.C. 2013), *citing Nat'l Treasury Emps. Union v. US Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986). As such, the *Vaughn* index descriptions of the released records are necessary for the FOIA requester to understand the rationale for the withholding, particularly in cases like the one at hand, where the released documents consist of highly redacted e-mails.

In its Motion for Summary Judgment, EPIC points to instances where DHS provided no information on documents for which a Section 6 claim was asserted. In those instances, the agency "merely recite[s] statutory standards." EPIC Motion at 14, *citing Larson v. Dept. of State*, 565 F.3d 857, 868 (D.C. Cir. 2009). DHS does not argue that it is sufficient for an Agency to justify its withholdings by re-stating the statutory standard. *See* DHS Reply at 8-10. However, the "additional language" that DHS cites does precisely that. DHS Reply at 9 (emphasis removed). This form language provides no additional means by which EPIC can adequately conclude that the redacted information has been properly withheld.

---

[1] Notably, DHS' *Vaughn* index does not specifically invoke Section 6 in regard to Document 441. In fact, the sole basis for withholding is that "portions of the text [are] currently and properly classified." *Vaughn* index at 197. To the extent that the material's alleged classification is the sole reason for Exemption 3 redactions in this document, this discussion is not relevant, and instead EPIC responds in Section II above.

DHS argues that information within the produced documents supports Exemption 3 redactions. This argument is unpersuasive. The text in Document 438 supports EPIC's view that the exemption was improperly asserted. In that document, DHS cites one portion of text that indicates that the document contains a "[s]ummary of legal issues prior to [Deputies Committee] prepared…*for* DDIR NSA." DHS Reply at 9 (emphasis added). However, this text bolsters EPIC's argument that the redactions do not refer to activities *of NSA*, but, instead, consist of text prepared and written by individuals at a different Agency (the Department of Justice, or "DOJ") and provided to the NSA as a resource. This reading is further supported by the subject line of the document sought by EPIC: "Prep for Monday's DC: Response to Legal *Issues DOJ Raised Re DIB Pilot*." *See* Exhibit 2 (emphasis added).

DHS' other textual arguments are similarly unavailing. The DHS cites Section 6 in Document 441 to redact the number of companies participating in the DIB Cyber Pilot, which was a joint effort between DHS and DoD. *See* Second Holzer Decl. at 2. There is, notably, no text to examine in regard to Withheld-in-Full Document 5, a document that, by DHS' own terms, "discusses assessments of a company's implementation capabilities." Vaughn Index at 207. This information must be released.

## IV.   DHS Has Improperly Applied Exemption 4 to Withhold Information that Must be Disclosed

DHS wrongfully redacted the names of corporations under Exemption 4. As explained in EPIC's Motion for Summary Judgment, the company names as used in the documents responsive to EPIC's FOIA Request do not fall within the scope of Exemption 4 because (1) they are not obtained from a person, (2) they are not "commercial information," and (3) they are not

confidential.[2] Instead of providing any specific rational as to why EPIC's arguments are incorrect, DHS' Reply points to a single case to argue that such withholdings are appropriate. *See* DHS Reply at 10-11, *citing Board of Trade v. Commodity Futures Trading Commision*, 627 F.2d 392 (D.C. Cir. 1980). However, for the reasons given below, *Board of Trade* does not bear on the facts of this case.

In *Board of Trade*, the Commodity Futures Trading Commission concluded that the requested information was exempt from disclosure, but then chose to release some information, following the mandate of the 1974 Amendment that requires the disclosure of segregable materials .[3] *Board of Trade*, 627 F.2d at 402. The Commission grounded this disclosure in the then-newly added section of the FOIA requiring all reasonably segregable portions of responsive FOIA records to be released. *See id*. at 402. Importantly, the Court in *Board of Trade* did not find that the identities were *not* improperly redacted, but that by failing to consider the document as a whole the lower court had applied an incorrect test. *See id*. at 404. Accordingly, the opinion in *Board of Trade* did not modify any of the pre-existing tests for determining the scope of Exemption 4, which are addressed at length in EPIC's Motion. *See* EPIC Motion at 15-22.

In this case, The names of the DIB participating companies were not withheld in order to "render[] otherwise exempt material disclosable." *Id*. at 402. This is largely because the

---

[2] In its opposition, the DHS misleads the Court on a key point when it states, "EPIC argues, without authority, that the identity of a public company can never be considered "confidential," even where the company served as a confidential source for the government." DHS Reply at 10. This is plainly not EPIC's position. EPIC's analysis of the agency's Exemption 4 claim focuses on the fact that the companies are publicly known as contractors for the federal government. EPIC Motion at 18-22. Indeed, these companies would not be eligible to participate in the DIB Cyber Pilot unless they first established that they were defense contractors. The characterization of companies as confidential sources is more appropriately addressed in the context of Exemption 7(D), which is discussed below.

[3] The court in *Board of Trade* also cited to the "personal privacy" standard in the FOIA for an explanation as to why corporate identities may be properly kept from public disclosure. *Board of Trade*, 627 F.2d at 401 ("The Act has always specified that '(t)o the extent required to prevent a clearly unwarranted invasion of personal privacy, an agency may delete identifying details when it makes available or publishes an opinion, statement of policy, interpretation, or staff manual or instruction"). To the extent that the D.C. Circuit had relied on this interpretation, it has been overruled by the Supreme Court, holding that companies to not have a right of personal privacy under the FOIA. *See FCC v. AT&T*, 131 S. Ct. 1177 (2011).

information in the responsive documents is not attached to any additional corporate information. Unlike in *Board of Trade*, the "blotting out [of] identities" does not "render the remaining contents of the documents nonexempt." *Id*. at 403. The relevant documents could not be withheld even if the name of the corporation was included. Instead, the names of the companies are independent from any other corporate information, and as such "are neither 'confidential' nor 'financial or commercial' information." *Id*. at 402-03, *citing* 5 U.S.C. § 552(b)(4) (2013).

Finally, even if this Court concludes that the names of the companies constitute commercial information, the information has still not been "obtained from a person," an issue DHS does not address in its Reply. *See* DHS Reply at 10-12; *see also Board of Trade*, 627 F.2d at 404 ("[t]he identities were not themselves subjected to the confidentiality test because the court decided that they were not 'commercial or financial' information.").

## V.     DHS Cannot Withhold Information Under Exemption 5 That Was Not "Inter-agency or Intra-agency Memorandums or Letters"

The agency wrongly asserts that it has established that the redacted text in Document 276 is entirely exempt from the FOIA under the deliberative process privilege and the attorney-client privilege. DHS Reply at 16; *See also* Exhibit 3, Document 276. EPIC acknowledges that the Third Holzer Declaration, which DHS provided along with its Opposition and Reply, has been provided to clarify the contents of that paragraph. Third Holzer Decl. at ¶¶ 10-14. The earlier version of the *Vaughn* index did not make clear that the quoted text was itself an excerpt from an email exchange between two DHS employees. Additional information in the Third Holzer Declaration clarifies that: 1) At some point, a DHS program officer communicated with AT&T; 2) the program officer summarized that communication in an email to a DHS attorney; and 3) An excerpt of that summary was included in Document 276. That excerpt is the redacted portion of Document 276 currently at issue. Third Holzer Decl. at 5.

However, this clarification reveals an additional misapplication of the FOIA in the agency's failure to show that it has conducted an adequate segregability analysis with regard to that communication. The underlying communication at issue occurred between DHS and AT&T, a private company. Communications between AT&T and government officials would facially fall outside the Exemption 5 standard for "inter-agency or intra-agency memorandums or letters." 5 U.S.C. § 552(b)(5) (2013); *see also Dept. of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 11 (2001).

Segregability is an affirmative duty under the FOIA. *See* 5 U.S.C. § 552(b). The agency must support its claimed exemptions with an adequate description and explanation in order to provide "the requestor with a realistic opportunity to challenge the agency's decision." *Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996). The court cannot find that the agency has provided the requestor with that opportunity without first finding that the agency has met its statutory obligation. *Id*. Thus, the agency may only justify withholding records under Exemption 5 where it has sufficiently explained in its Vaughn indices and affidavits not only why the material may be redacted under Exemption 5, but also "why there was no reasonable means of segregating factual material from the claimed privileged material." *Nat'l Whistleblower Center v. Dep't of Health & Human Servcs.*, 903 F. Supp. 2d 59, 70 (D.D.C. 2012) (citing *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004)). This rule applies not only to segregable factual materials under Exemption 5, but to all records that contain "exempt portions" and "nonexempt portions." *Juarez v. DOJ*, 518 F.3d 54, 61 (D.C. Cir. 2008).

In this case, the government has not adequately demonstrated that it conducted an adequate segregability analysis with regard to the redacted paragraph in document 276. In its Cross Motion for Summary Judgment and Opposition, EPIC argued, "AT&T is not an 'agency'

subject to Exemption 5 protection, and its communication with the agency cannot be withheld under the deliberative process privilege." EPIC Motion at 26. DHS has raised no objections to this characterization. Instead, the agency states, "the withheld portion of the document is not itself an email sent from AT&T, nor is it a verbatim transcription of a separate communication from AT&T." DHS Reply at 16. Instead, "[t]he program office employee sent the email to a DHS attorney and his supervising attorney in the context of seeking legal review and advice. As such, DHS continues to withhold the information as protected by the deliberative process privilege and the attorney-client privilege." Third Holzer Decl. ¶ 10. DHS does not even argue that it has conducted a segregability analysis regarding the underlying communication with AT&T – which is not exempt from the FOIA. Without demonstrating that it cannot segregate the non-exempt, non-deliberative material from the exempt information request legal advice, DHS has not met its burden under the FOIA.

DHS also asserts that it "inadvertently excluded from its *Vaughn* index a detailed description of the Exemption 5 redactions in these documents [Documents 440, 442, and 444]." DHS Reply at 14. The agency also asserts, "[T]he Court could have upheld the Exemption 5 redactions in these three documents on the basis of the Exemption 5 description provided in the Second Holzer Declaration." *Id*. In fact, the agency excluded any mention of Exemption 5 in its *Vaughn* index with regard to these three documents. After careful review of both the *Vaughn* and the Second Holzer Declaration, EPIC challenged these withholdings because of the apparent contradiction in the agency's records. In fact, the Court could *not* find that the agency had met its burden to show that it had properly applied Exemption 5 to those documents, since the Second Holzer Declaration and the *Vaughn* index asserted different bases for the withholding. However, the agency has now provided supplemental *Vaughn* descriptions for these three documents. Third

Holzer Decl. ¶¶ 11-14. Based on this additional information, EPIC is satisfied that the agency

has finally met its burden to demonstrate the applicability of Exemption 5 to documents 440,

442, and 444, but not as to document 276.

**VI.   DHS Cannot Withhold Information Under Exemption 7 That Was Not Furnished By A Confidential Source**

The government wrongly invites the court to classify any company that participates in

any program within the DIB Cyber Pilot as a "confidential source" for the purpose of FOIA's

Exemption 7(D). According to the government's *Privacy Impact Assessment*, NPPD JCSP, dated

Jan. 13, 2012, there are two distinct parts to the DIB Cyber Pilot Program – the "Joint

Cybersecurity Sources Pilot," under which the government received information submitted

voluntarily to the Program, and the "DIB Opt-In Pilot," under which the government distributed

information to Internet service providers. *See* Exhibit 4. Under this configuration, companies can

receive information from the DIB Opt-In Pilot program without providing the government with

any information at all. *Id*. DHS incorrectly argues that revealing the identities of the second

category of companies – those who receive threat information from the government – will

necessarily expose the first category of companies – those who provide the government with

"cyber-incident data" and "samples of malicious code." Dkt. No. 53 at 40.

EPIC previously noted that the companies who interacted with DHS in their capacity as

information recipients should not be treated, for the purposes of the FOIA, the same way as those

who provided information. EPIC's Motion at 26. DHS responds, "[I]t is common for participants

to serve as sources for the government and the government to provide information to the

participants." This characterization necessarily distinguishes between the two categories of

companies – the "participants" and the "sources." DHS Reply at 19. The government argues that

all "participants" who receive information under the DIB Cyber Pilot Program may also be

characterized as "sources" for the purposes of the FOIA. But this cannot be true. Under the

FOIA, a "confidential source" is an entity that "furnished information," or in the case of national

security investigations, the "information furnished." 5 U.S.C. § 552(b)(7) (2013). This is because

the purpose of Exemption 7(D) is not to protect anyone with a confidential relationship with a

government agency, but specifically those who serve as confidential informants. *Mays v. Drug

Enforcement Admin.,* 234 F.3d 1324, 1330 (D.C. Cir. 2000). EPIC does not question the

agency's assurances that the program participants would be treated confidentially. EPIC does,

however, challenge the relevance of that assurance to Exemption 7(D) of the FOIA.

      The government also asserts, "EPIC also appears to make the somewhat illogical

argument that where the government furnishes information to a confidential source, the provision

of government information can negate the entity's role as a source." DHS Reply at 19. This is a

disingenuous interpretation of EPIC's analysis. Clearly, a source does not lose its "source" status

under Exemption 7 when the government provides the source with information. However, where

an Internet service provider does *not* supply the government with any information, it cannot be

considered a "source."

      EPIC does not seek the release of information that would identify "sources" and is not

seeking the disclosure of information that the government provided to companies in response to

their volunteering of cyber-incident data. Instead, EPIC seeks the information that the

government distributed to all Internet service providers under the DIB Opt-In Program,

regardless of their contribution to the voluntary information-sharing part of the JCSP.

## **<u>CONCLUSION</u>**

      For the foregoing reasons, EPIC asks the Court to deny Defendant's Motion for Summary

Judgment and grant EPIC's Cross-motion for Summary Judgment.

Respectfully submitted,

MARC ROTENGERG
EPIC Executive Director
D.C. Bar #422825

*/s/ Amie Stepanovich*
AMIE STEPANOVICH
JULIA HORWITZ[*]
JERAMIE SCOTT[**]
Electronic Privacy Information Center
1718 Connecticut Ave., NW
Suite 200
Washington, D.C. 20009
(202) 483-1140
*Counsel for Plaintiff*

---

[*] Ms. Horwitz is admitted to practice in the State of Maryland. Her application to the District of Columbia is pending.
[**] Mr. Scott is admitted to practice in the State of New York.