**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) No. 1:2-cv-00333-GK |
|  | ) |
| DEPARTMENT OF HOMELAND SECURITY | ) |
|  | ) |
| Defendant. | ) |

_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

This case arose out of EPIC's Freedom of Information Act request ("EPIC FOIA Request") for records related to the Defense Industrial Base Cyber Pilot ("DIB Cyber Pilot"), a joint program between the Department of Homeland Security ("DHS") and National Security Agency ("NSA") to monitor private Internet traffic of select government contractors. When the DHS failed to issue a determination or produce records responsive to the FOIA Request, EPIC filed suit. After a long, protracted dispute over agency delay in producing the documents, including the Court's amendment of a production order based on EPIC's motion for reconsideration, the Court ordered the DHS to process and release responsive records by April 15, 2013. The agency subsequently released more than 1,300 pages of records to EPIC.

As a result of obtaining these records, EPIC is eligible for and entitled to recover fees and costs in this matter. *See* 5 U.S.C. § 552(a)(4)(E). EPIC is filing this motion after the parties were unable to agree on a fee settlement after two months of communications and the filing of two status report regarding the status of fee negotiations with this Court.

1

EPIC's attorneys have spent a total of 360.1 hours on this matter. Based on contemporaneously recorded billing records and applicable billing rates in this jurisdiction, EPIC respectively requests an award of $110,673.24 in fees and costs for work to obtain the documents in this matter.

## FACTUAL BACKGROUND

In May 2011, the DHS and the NSA initiated a program to monitor traffic flowing between Internet users and certain government contractors. The existence of this program, the DIB Cyber Pilot, was confirmed by Deputy Defense Secretary William J. Lynn III in a public speech the next month. *See* Ellen Nakashima, *NSA Allies with Internet Carriers to Thwart Cyber Attacks Against Defense Firms*, Wash. Post (June 16, 2011).[1] As Defense Department officials explained, the DIB Cyber Pilot would include monitoring of network communications in an attempt to generate cyber threat intelligence. *Id.* But according to the Washington Post, the Department of Justice ("DOJ") expressed concern that the DIB Cyber Pilot program could "run afoul of laws forbidding government surveillance of private Internet traffic." *Id.* After learning about the DIB Cyber Pilot, EPIC sought to obtain documents necessary to determine whether the program was being operated in compliance with federal wiretap laws.

On July 6, 2011, EPIC submitted a FOIA request to the DHS for five categories of records related to the DIB Cyber Pilot. Compl. ¶ 17. In the request, EPIC sought "News Media" fee status. *Id.* ¶¶ 18–20.

On August 3, 2011, the DHS informed EPIC that the agency had been unable to identify or locate records from category five of EPIC's FOIA request. *See* Compl. ¶ 22.

---

[1] https://www.washingtonpost.com/national/major-internet-service-providers-cooperating-with-nsa-on-monitoring-traffic/2011/06/07/AG2dukXH_story.html.

The DHS also informed EPIC that the agency had referred the FOIA request to the DHS National Protection and Programs Directorate ("NPPD") for processing. *Id.* ¶ 23.

On January 5, 2012, after having received no responsive records or further communications from the DHS, EPIC filed an administrative appeal with DHS NPPD. Compl. ¶ 26. EPIC received no communication from the DHS regarding the administrative appeal. *See* Pl.'s Statement of Material Facts ¶¶ 10–13, ECF No. 58-1.

After the DHS failed to make a determination or produce responsive records, EPIC filed suit on March 1, 2012. *See* Compl. The Court subsequently ordered the DHS to complete production of documents and a Vaughn Index. Minute Order (May 24, 2012). But the agency did not comply with the Court's order. Instead, the agency filed a series of motions (for stay, extension, modification of scheduling orders, etc.) that extended the litigation by nearly a year. *See, e.g.,* DHS Mot. Stay Proceedings, ECF No. 13; DHS Mot. Modify Scheduling Order, ECF No. 17; Mot. Extension of Time, ECF No. 29; Cross Mot. Modify Schedule, ECF No. 33; Mot. Extension of Time, ECF No. 45; Second Mot. Extension of Time, ECF No. 51.

In response to one of the agency's motions, which requested an "extension of time until January 17, 2014 to make a complete production of documents," Def.'s Mot. to Modify the Scheduling Order, ECF No. 17, the Court held a hearing and ordered an expedited production schedule. Order, ECF No. 25. But the Court also included in this order, at the behest of the agency, a requirement that the parties "develop a proposed Protective Order" and "craft a Memorandum Agreement allowing the government to 'claw back'" any documents that had been "inadvertently produced." *Id.* In response to this unprecedented requirement of a protective order concerning documents sought under

the FOIA, EPIC filed a Motion for Reconsideration, which the Court granted in part.

Order, ECF No. 39. The Court also ordered the DHS to complete final production "no

later than April 15, 2013." *Id*.

The DHS completed production on April 15, 2013, having released 1,386 pages

of documents. The parties then proceeded to file cross motions for summary judgment,

after further delays by the DHS. EPIC moved for summary judgment on September 27,

2013, challenging the agency's withholding of records under Exemptions 1, 3, 4, 5, and

7(D). *See* Cross Mot. Summary J., ECF. No. 57.

On August 4, 2015, the Court issued a Memorandum Opinion and Order, denying

in part the DHS's motion for summary judgment and ordering the agency to "file a

revised Vaughn index explaining its withholdings under Exemption 7(D)" by September

15, 2015. *EPIC v. DHS*, ___ F.3d ___, No. 12-333, 2015 WL 4638303, at *14 (D.D.C.

Aug. 4, 2015). After seeking yet another extension, the agency finally produced a revised

Vaughn index to EPIC on September 30, 2015. Vaughn Index, ECF No. 74.

On November 12, 2015, EPIC informed the DHS via email that there were no

remaining issues in dispute with respect to the documents, and that EPIC would like to

move forward with settlement negotiations. *See* Joint Status Report, ECF No. 76. On

November 16, 2015, the parties advised the Court that the only remaining issue was

attorneys' fees and costs. *Id*. In that joint status report, EPIC and the DHS advised the

Court that they would pursue a settlement regarding attorneys' fees and costs. *Id.* In a

separate status report filed on December 15, 2015, EPIC and the DHS advised the Court

that that they were unable to come to an agreement and requested another 30 days to

attempt to resolve the fees issues and settle the case. Status Report, ECF Nos. 78–79. On

January 14, 2016, the parties advised the Court that they were unable to reach an agreement, and instead proposed a schedule for the filing of motions to resolve the fee matter. Joint Status Report, ECF No. 80.

EPIC has incurred substantial costs in this litigation. Over the four years since the filing of the initial lawsuit, EPIC's attorneys have spent a total of 360.1 hours working on this matter. Tran Decl. ¶ 13. These hours are documented in the detailed and contemporaneous billing records prepared by EPIC's attorneys. *See* Aff. of Marc Rotenberg; Aff. of Ginger McCall; Aff. of Amie Stepanovich; Aff. of Alan Jay Butler; Aff. of David Jacobs; Aff. of Jeramie D. Scott; Aff. of Julia Horwitz; Aff. of T. John Tran.

## ARGUMENT

EPIC is eligible for and entitled to recover fees it incurred to obtain documents and favorable court opinions in this matter. The FOIA provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). This attorney fee inquiry is divided into two prongs: "eligibility" and "entitlement." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011).

Courts have consistently awarded fees and costs in FOIA cases in which EPIC has substantially prevailed. *See, e.g.*, *EPIC v. NSA*, 87 F. Supp. 3d 23 (D.D.C. 2015) (awarding EPIC $31,180 in fees and costs); *EPIC v. FBI*, 80 F. Supp. 3d 139 (D.D.C. 2015) (awarding EPIC $29,635 in fees and costs); *EPIC v. DHS*, 999 F. Supp. 2d 61 (D.D.C. 2013) (awarding EPIC $30,192 in fees and costs); *EPIC v. DHS*, 811 F. Supp. 2d

216 (D.D.C. 2011) (awarding EPIC $21,482 in fees and costs). Yet here the agency was unwilling to agree to a reasonable settlement of fees. Joint Status Report, ECF No. 78. As a result of the failure to reach a settlement, EPIC has incurred additional fees ("fees-on-fees") in the preparation of this motion. Because EPIC is eligible for and entitled to fees, and the fees sought are reasonable, the Court should grant this motion.

## I. EPIC Is Eligible and Entitled to Recover Fees and Costs in This Matter

### A.  EPIC Is Eligible to Recover Fees and Costs Under the FOIA

A FOIA plaintiff who has "substantially prevailed" is eligible to recover fees and costs. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 525 (D.C. Cir. 2011). The FOIA provides that a plaintiff "substantially prevails" by obtaining "relief through either (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). In this case, EPIC has substantially prevailed under both standards.

First, the Court's order directing the DHS to produce responsive records, Minute Order (May 24, 2012), is a judicial order sufficient to establish that EPIC "substantially prevailed." *See EPIC v. FBI*, 80 F. Supp. 3d at 156 (holding that EPIC substantially prevailed when the FBI produced responsive records pursuant to the court's order); *EPIC v. FBI*, 72 F. Supp. 3d 338 (D.D.C. 2014) (same). Prior to the Court's May 24, 2012 Order, the DHS was under no judicial mandate to produce the DIB Cyber Pilot records. *See* Minute Order (May 24, 2012). Only after EPIC initiated this suit and the Court ordered the production schedule did the DHS produce those records. Because the agency released the DIB Cyber Pilot records subsequent to the Court's production order, EPIC substantially prevailed.

EPIC also substantially prevailed at numerous other points in the litigation. *See* Order, ECF No. 25 (directing the DHS to "fully review at least 2,000 pages of documents per month" and to produce a Vaughn index by a date certain); Order, ECF No. 39 (striking the clawback agreement requirement, ordering the agency to "continue reviewing at least 1,500 pages of documents per month" and noting that "the Government did not take seriously its obligation under the Court's first Scheduling Order of May 24, 2012"). EPIC also substantially prevailed in this case when the Court denied in part the DHS' summary judgment motion. Order, ECF No. 67.  Specifically, the Court denied the DHS' motion with regard to the agency's withholding under FOIA Exemption 7(D). *Id.* The Court's order to the agency to "file a revised Vaughn Index explaining its withholdings under Exemption 7(D)" constitutes another independent issue upon which EPIC substantially prevailed. *Id.*

Second, EPIC's suit caused a "voluntary or unilateral change in position by the agency" sufficient to establish that EPIC substantially prevailed. *See Judicial Watch, Inc. v. DOJ*, 878 F. Supp. 2d 225, 233 (D.D.C. 2012). At the time EPIC submitted the FOIA request on July 26, 2011, the records that EPIC eventually obtained were not yet public. Compl. ¶ 17. It was not until after EPIC filed this suit and obtained a court order that the agency released: (1) several slide decks discussing the legal framework for the DIB Pilot and the policies and practices for monitoring and the issue of consent; (2) the Memorandums of Agreement between the government and Internet Service Providers; and (3) the DIB Pilot Cybersecurity Plan. Because EPIC's lawsuit was the catalyst that drove the agency to release the [records], EPIC "substantially prevailed." *See e.g., Brayton*, 641 F.3d at 525 ("[P]laintiffs can now qualify as 'substantially prevailing,' and

thus become eligible for attorney fees, without winning court-ordered relief on the merits of their FOIA claims.").

Under both standards set forth by 5 U.S.C. § 552(a)(4)(E)(ii), EPIC has "substantially prevailed."

### B.  EPIC Is Entitled to Recover Fees and Costs Under the D.C. Circuit's Four-Factor Test

If a FOIA plaintiff is eligible for fees and costs, the court must next determine whether the plaintiff is entitled to those fees and costs. *Brayton*, 641 F.3d at 525. Courts in this circuit employ a four-factor balancing test to determine a plaintiff's fee entitlement. *McKinley v. FHFA*, 739 F.3d 707, 711 (D.C. Cir. 2014). The four factors are: 1) "the benefit to the public, if any, deriving from the case"; 2) "the commercial benefit to the plaintiff"; 3) "the nature of the plaintiff's interest in the records"; and 4) "the reasonableness of the agency's withholding." *Id.* (citing *Tax Analysts v. DOJ*, 965 F.2d 1092, 1093 (D.C. Cir. 1992)).  All four factors favor EPIC in this case, and the Court should accordingly award reasonable attorneys' fees and costs.

The first factor of the entitlement test favors EPIC because, as a result of this case, the DHS disclosed 1,386 pages of documents detailing the DIB Cyber Pilot program that are now subject to public scrutiny. EPIC sought these documents in the public interest as a "quintessential requestor of government information envisioned by the FOIA." *EPIC v. DHS*, 982 F. Supp. 2d 56, 63 (D.D.C. Oct. 15, 2013). Furthermore, EPIC has distributed the DIB Cyber Pilot records to the public. *See EPIC Lawsuit*

*Produces Details of Internet Monitoring*, EPIC Alert (April 30, 2013) (hereinafter "EPIC Alert April 30, 2013").[2]

The public benefit factor concerns "the significance of the contribution that the released information makes to the fund of public knowledge." *McKinley*, 739 F.3d at 711. "The relevant inquiry is whether [the plaintiff's] success is *likely* to add to the fund of public information that citizens may use in making vital political choices." *EPIC v. NSA*, 87 F. Supp. 3d at 233–34 (emphasis in original; internal quotation marks omitted). As the D.C. Circuit made clear in *Davy v. CIA,* 550 F.3d 1155 (D.C. Cir. 2008), the public benefit factor favors the plaintiff where the FOIA suit results in the release of documents "providing important new information" concerning an issue "of national importance." 550 F.3d at 1159–60.

Cybersecurity is an issue of continuing political and social importance. *See, e.g.*, Everett Rosenfeld, *The Controversial 'Surveillance' Act Obama Just Signed*, CNBC (Dec. 22, 2015);[3] Andrea Peterson, *Senate Passes Cybersecurity Information Sharing Bill Despite Privacy Fears*, Wash. Post (Oct. 27, 2015).[4] The disclosure of the DIB Cyber Pilot records obtained by EPIC contributed directed to that debate. *See, e.g.*, Amie Stepanovich, *Busting the Biggest Myth of CISA—That the Program is Voluntary*, Wired

---

[2] *Available at* https://epic.org/alert/epic_alert_2008.html. EPIC disseminated the agency record to epic.org visitors and the approximately 8,000 recipients of its bi-weekly newsletter. EPIC also maintains one of the world's most popular privacy websites: epic.org. EPIC has published extensively about the Internet monitoring program. *See* EPIC, *EPIC v. DHS – Defense Contractor Monitoring* (2016) https://epic.org/foia/dhs/defense-monitoring.
[3] http://www.cnbc.com/2015/12/22/the-controversial-surveillance-act-obama-just-signed.html.
[4] https://www.washingtonpost.com/news/the-switch/wp/2015/10/27/senate-passes-controversial-cybersecurity-information-sharing-legislation/.

(Aug. 9, 2015);[5] Declan McCullagh, *U.S Gives Big Secret Push to Internet Surveillance*,

C-NET (Apr. 24, 2013);[6] Sean Buckley, *DoJ Reportedly Asks Service Providers to*

*Dodge Wiretap Act*, Engadget (Apr. 24, 2013);[7] Kim Zetter, *DOJ Secretly Granted*

*Immunity to Companies that Participated in Monitoring Program*, Wired (Apr. 24,

2013);[8] Shane Harris, *Google's Secret NSA Alliance: The Terrifying Deals Between*

*Silicon Valley and the Security State*, Salon (Nov. 16, 2014);[9] Aliya Sternstein, *Pentagon*

*Opens Classified Cyber Program to All Defense Contractors, ISPs*, Nextgov (May 11,

2012).[10]

  The documents obtained by EPIC in this case revealed important details about the

government's cyber surveillance programs. For example, the documents revealed that the

Defense Department's Office of General Counsel encouraged defense contractors to

adopt language providing expansive consent to government monitoring, including the

"monitoring of data and communications in transit"; "disclos[ure] for any purpose,

including to the Government"; and a statement that users have "no [reasonable]

expectation of privacy regarding communications or data transiting or stored on the

system." EPIC Alert April 30, 2013, *supra*. The documents also show that providers

participating in the program requested immunity from federal wiretap laws. Based on

these disclosures, the extensive coverage of the documents obtained by EPIC in this case,

---

[5] http://www.wired.com/2015/08/access-cisa-myth-of-voluntary-info-sharing/.

[6] http://www.cnet.com/news/u-s-gives-big-secret-push-to-internet-surveillance/.

[7] http://www.engadget.com/2013/04/24/cnet-justice-department-helping-isps-dodge-wiretap-act/.

[8] http://www.wired.com/2013/04/immunity-to-internet-providers/.

[9] http://www.salon.com/2014/11/16/googles_secret_nsa_alliance_the_terrifying_deals_between_silicon_valley_and_the_security_state/

[10] http://www.nextgov.com/defense/2012/05/pentagon-opens-classified-cyber-program-all-defense-contractors-isps/55707/.

and the ongoing importance of cybersecurity issues in America, the first entitlement

factor weighs in favor of EPIC.

The second and third entitlement factors also favor EPIC. The "nature of the

[requester's] interest" factor is "closely related [to] and often considered together with the

commercial benefit criterion." *Tax Analysts v. DOJ*, 965 F.2d 1092, 1095 (D.C. Cir.

1992). "The second factor considers the commercial benefit to the plaintiff, while the

third factor considers the plaintiff's interest in the records." *EPIC v. DHS*, 999 F. Supp.

2d 61, 69 (D.D.C. 2013). Favored interests are "scholarly, journalistic or public-interest

oriented." *See Long v. IRS*, 932 F.2d 1309, 1316 (9th Cir. 1991) (holding that a lower

court's ruling that the plaintiff's scholarly interest weighed against her recovery of fees

was "wrong as a matter of law and an abuse of discretion").

EPIC is a 501(c)(3) non-profit public interest research center. *EPIC v. Dep't of

Def.*, 241 F. Supp. 2d 5, 5 (D.D.C. 2003). EPIC derived no commercial benefit from the

FOIA request or lawsuit. The sole benefit was to the public, which benefited from the

disclosure of the documents released in this case. Thus, EPIC's interest in this matter is

squarely within the "scholarly, journalistic or public interest oriented" interests favored

by the statute. *See EPIC v. DHS,* 811 F. Supp. 2d 216, 235 (D.D.C. 2011) (finding that

"[EPIC's] aims, which include dissemination of information regarding privacy issues to

the public . . . fall within the scholarly and public-interest oriented goals promoted by

FOIA").

Lastly, the fourth entitlement factor favors EPIC because the DHS did not have a

"reasonable legal basis" to withhold the DIB Cyber Pilot records. If the government's

justification for withholding was "correct as a matter of law," then this factor is

dispositive. *Davy*, 550 F.3d at 1162. If, however, the agency's justification is only based on "a colorable basis in law," then the factor is weighed against the other factors. *Id.* The DHS loses under either standard. At no point has the agency offered any substantive justification for withholding the DIB Cyber Pilots records. The DHS offered no justification for withholding the responsive records in the agency's answer. *See* Answer.

Because all four entitlement factors favor EPIC, and because EPIC substantially prevailed in this matter, the Court should grant EPIC's motion and award reasonable attorneys' fees and costs in this matter.

## II. The Attorneys' Fees EPIC Seeks Are Reasonable

EPIC seeks an award of $110,673.24 in attorneys' fees and costs in this matter, which is reasonable based on the hours worked and applicable billing rates.

To determine whether fees are reasonable, the court must consider (1) whether the attorneys charged a reasonable hourly rate and (2) whether the time attorneys logged on the case was reasonable—i.e., did the attorneys waste or otherwise unnecessarily spend time on the matter. *Judicial Watch, Inc. v. DOJ*, 774 F. Supp. 2d 225, 232 (D.D.C. 2011) (*Judicial Watch II*) (quoting *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998)).

Attorneys' fees are calculated based on the "lodestar," which is the number of hours the lawyers reasonably spent on the case multiplied by the lawyers' hourly rates. *Id*. A lawyer's hourly rate is measured by its fair market value, "regardless of whether plaintiff is represented by private or non-profit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The fee requester bears the burden of establishing the reasonableness of the hourly rates. *Salazar v. District of Columbia*, 809 F.3d 58, 64 (D.C. Cir. 2015) (citing

*Covington v. District of Columbia*, 57 F.3d 1101, 1103 (D.C. Cir. 1995)). Courts in this circuit have frequently employed the *Laffey* Matrix, a schedule of fees based on years of experience for lawyers who practice "complex federal litigation." *Eley v. District of Columbia*, 793 F.3d 97 (D.C. Cir. 2015); *see, e.g.*, *EPIC v. NSA*, 87 F. Supp. 3d 23 (D.D.C. 2015) (affirming a FOIA fee award calculated using the *Laffey* matrix).

Because the *Laffey* matrix was compiled more than thirty years ago, *see Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 1516 (D.C. Cir. 1984), *overruled in part on other grounds en banc by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C.Cir.1988), it must be periodically updated to account for inflation. *Eley v. District of Columbia*, 793 F.3d 97, 101 (D.C. Cir. 2015). Courts have previously considered several different methods for adjusting the *Laffey* matrix. *Compare Thomas v. District of Columbia.*, 908 F. Supp. 2d 233 (D.D.C. 2012) (awarding fees based on USAO *Laffey* rates), *with Salazar v. District of Columbia*, 30 F. Supp. 3d 47 (D.D.C. 2014) (awarding fees based on LSI *Laffey* rates). More recently, the D.C. Circuit has concluded that one adjustment method is superior. *Salazar*, 809 F.3d at 64.

The method approved in *Salazar* involves updating the *Laffey* matrix based on the Legal Services Index ("LSI") of the Nationwide Consumer Price Index ("LSI *Laffey* Matrix"). Courts in this Circuit have recognized that the LSI *Laffey* Matrix provides a reasonable estimation of billing rates for litigation in FOIA and other complex federal cases. *See, e.g.*, *Citizens for Responsibility & Ethics in Washington v. DOJ*, 80 F. Supp. 3d 1, 3 (D.D.C. 2015), ("[T]he Court is persuaded that the LSI-adjusted Laffey matrix, while imperfect, offers a better methodology for estimating prevailing market rates for

complex federal litigation in Washington, D.C."); *Eley v. District of Columbia*, 999 F.

Supp. 2d 137, 154 (D.D.C. 2013), *vacated and remanded*, 793 F.3d 97 (D.C. Cir. 2015)

("[T]he LSI-adjusted matrix is probably a *conservative* estimate of the actual cost of legal

services in this area, but at the very least it appears to be a more accurate reflection of the

cost of legal services both in this community and nationwide."); *Salazar v. District of

Columbia*, 123 F. Supp. 2d 8, 15 (D.D.C. 2000) ("[T]he [LSI-updated] *Laffey* matrix

more accurately reflects the prevailing rates for legal services in the D.C. community.").

The LSI *Laffey* Matrix is "more likely to reflect the rate of change in prevailing

legal services" than the USAO Laffey Matrix, it "more accurately reflects the conditions

of competition for complex litigation," and it utilizes a more recent survey of rates as

compared to the DOJ's version. Pl.'s Mot. Summ. J., Ex. E., Decl. Michael Kavanaugh at

7–10, *Citizens for Responsibility & Ethics in Washington v. DOJ*, 80 F. Supp. 3d 1

(D.D.C. 2015) ("CREW"). *See also* Tran Decl. ¶ 6. EPIC has accordingly used the LSI

*Laffey* Rates to calculate the lodestar amount in this case. *See* Tran Decl. ¶ 6.

The D.C. Circuit has held that "the second prong of the equation for calculating a

fee award—the reasonableness of hourly rates awarded under fee-shifting statutes—

consists of 'at least three elements: the attorneys' billing practices; the attorneys' skill,

experience, and reputation; and the prevailing market rates in the relevant community.'"

*Am. Lands Alliance v. Norton*, 525 F. Supp. 2d 135, 148 (D.D.C. 2007) (*citing Covington

v. District Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995)). To recover, the movant must

provide "contemporaneous, complete, and standardized time records which accurately

reflect the work done by each attorney." *Nat'l Ass'n of Concerned Veterans v. Sec'y of

Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982).

EPIC has provided complete, detailed billing records, which were contemporaneously recorded and accurately reflect the work done by each attorney. *See* Ex. 2. The records reflect the date, time, and nature of each activity, and include details about the specific task performed. *Id*. Each entry is clearly labeled with the name of the attorney performing the work, the attorney's rate, the hours of work performed on the activity, and the total amount charged for the activity. *Id*. EPIC has therefore provided satisfactory billing records in this matter.

EPIC's request is further supported by affidavits from each attorney who worked on this case during the past four years. *See* Rotenberg Aff.; McCall Aff.; Butler Aff.; Stepanovich Aff.; Scott Aff.; Jacobs Aff.; Tran Aff. EPIC's request for $350 in costs for filing in the District Court is supported by the case docket in which the clerk of the Court assigned receipt number 4616046444.

Based on the 360.1 hours worked by EPIC's attorneys on this matter and the applicable LSI *Laffey* rates, the total lodestar amount for all work on this matter is $144,806.50. *See* Tran Decl. But EPIC has reduced this lodestar amount to account for the partial summary judgment denial and based on reasonable billing judgment. *Id*. EPIC accordingly requests a reasonable award of $110,673.24 for attorney fees and costs in this matter.

### III. The Court Should Award "Fees-on-Fees"

EPIC is also entitled to recover fees for its work to obtain fees in this matter. "It is settled in this circuit that hours reasonably devoted to a request for fees are compensable." *Judicial Watch II*, 878 F. Supp. 2d at 240 (citations omitted); *see also EPIC v. DHS,* 811 F. Supp. 2d 216, 237 (D.D.C. 2011) ("It is a common practice in this

jurisdiction to award fees on fees in FOIA cases."). Based on the 50.9 hours that EPIC's attorneys dedicated to obtaining fees in this matter and the prevailing LSI *Laffey* rates, the total lodestar amount for fees-on-fees in this matter is $22,435.40. Tran Decl. The Court should accordingly grant EPIC's motion and award fees-on-fees.

**CONCLUSION**

EPIC has substantially prevailed in this case and is eligible for and entitled to recover fees under the FOIA. The award EPIC seeks is reasonable and supported by the attached affidavits, billing records, and receipts. EPIC therefore requests that the Court award it $110,673.24 in fees and costs.

Respectfully submitted,

MARC ROTENBERG (DC Bar # 422825)
EPIC Executive Director

ALAN BUTLER (DC Bar #1012128)
EPIC Senior Counsel

*/s/ Jeramie Scott*
JERAMIE SCOTT (DC Bar ##1025909)
Electronic Privacy Information Center
1718 Connecticut Ave. NW
Suite 200
Washington, DC 20009
202-483-1140
butler@epic.org
*Counsel for Plaintiff*

Dated: February 5, 2016