*EPIC v. DHS*, No. 12-00333 (GK)
EPIC's Motion for Attorneys' Fees and Costs

# Exhibit A

# EXHIBIT E

Plaintiff's Motion for an Award of Attorneys' Fees and Costs

*Citizens for Ethics and Responsibility in Washington v. Dep't of Justice*,
Civ. No. 11-0374 (CRC)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CITIZENS FOR RESPONSIBILITY AND** | ) | |
| **ETHICS IN WASHINGTON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 11-0754 (GK) |
| | ) | |
| **U.S. DEPARTMENT OF JUSTICE,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF MICHAEL KAVANAUGH

I, Michael Kavanaugh, submit this Declaration pursuant to 28 U.S.C. § 1746.

1.  I am over the age of twenty-one, suffer no legal disability and am competent to make this Declaration. The statements made in this Declaration are true and correct and based on my personal knowledge.

2.  I am an economist in private practice at 19-4231 Road E, PO Box 1228, Volcano Hawaii, 96785.

3.  I hold a Ph.D. in economics from the University of Cincinnati (1975) and a BA in economics from Xavier University (1970). I have taught economics at the University of Cincinnati and at Northern Kentucky University. For over 35 years, I have worked as an economist for a variety of clients including the U.S. Department of Justice, the U.S. Environmental Protection Agency, the U.S. Department of the Interior, the States of Ohio, California, and Alaska, citizen groups, and private industry. I have been qualified as an expert in Federal court

in financial and economic matters many times. Attachment 1 is a copy of my resume with a listing of federal testimony and all publications in the last 10 years.

4.   A *Laffey* Matrix has been used for over twenty years as one measure to determine appropriate fee awards for litigation between the Federal government and private parties in areas where the law provides for an award of fees; to narrow the differences in disputes among private parties over the reasonableness of fee awards; and to inform and assist Courts who may have to settle these differences.

5.   A *Laffey* Matrix -- a sample of billing rates[1] taken at Washington D.C., area firms where complex litigation is likely to be performed -- if it is correctly updated, will provide prevailing hourly billing rates for complex litigation.  The billing rates will be reported by categories that reflect differing levels of legal experience. [2]

6.   Updated *Laffey* matrices are useful.  They are simple. They can ward off a second major litigation over fee awards. They save the resources needed to sample the prevailing billing rates for every fee application.

7.   As a matter of economics, a *Laffey* matrix based on a previous sample of billing rates can provide the current market billing rate if the sampled rates are properly adjusted for the time that has passed between the date of the initial sample and the present. The key questions to an economist are what sample of billing rates should be used and by what price index should the sample be adjusted.

8.   I favor adjusting the 1989 sample of legal services billing rates by using a price index that is specific to legal services. The 1989 sample was drawn in response to

---

[1] Billing rates are the price at which the service is sold.

[2] The labor categories are: (1) attorney with more than 20 years of experience; (2) attorney with 11 to 19 years of experience; (3) attorney with 8 to 10 years of experience; (4) attorney with 4 to 7 years of experience; (5) attorney with 1 to 3 years of experience, and; (6) paralegal or law clerk.

the remand decision in *Save Our Cumberland Mountains v. Hodel*.[3]  The price index is the legal services index (LSI) constructed by the U.S. Department of Labor, Bureau of Labor Statistics.

9.  The United States Department of Justice, Office of the U.S. Attorney for the District of Columbia (DOJ), on the other hand, updates a sample of 1982 legal services billing rates using a regional consumer price index that combines the price changes of over a hundred thousand diverse commodities into a single measure.

10.  A brief description of the samples of billing rates is as follows. The plaintiffs in *Laffey v. Northwest Airlines, Inc.,*[4] collected information on the hourly billing rates charged to fee-paying clients in 1981-1982 by attorneys engaged in complex federal litigation and created a composite of those rates which has become known as the *Laffey* matrix.  The 1981-1982 *Laffey* matrix was updated to 1988-1989 rates with a new survey in connection with the *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988)(*en banc*) litigation at the urging of the D.C. Circuit. The method used to find the 1989 rates is described in the declaration of Joseph Yablonski submitted in the case of *Broderick v. Ruder*, D.C. Civil No. 86-1824 (D.D.C.) (Pratt, J.).

---

[3] The documentation used to find the 1989 rates is described in the declaration of Joseph Yablonski submitted in the case of *Broderick v. Ruder*, D.C. Civ. No. 86-1824 (Pratt, J.). This documentation is recognized as an appropriate means to update the observed *Laffey* rates. *See, e.g., Salazar v. The District of Columbia*, 123 F. Supp. 2d at 13, citing, *Sexcius v. District of Columbia,* 839 F.Supp. 919, 924 (D.D.C.1993); *Trout v. Ball,* 705 F.Supp. 705, 709, n. 10 (D.D.C.1989)* (expressly approving use of Yablonski declaration from the *Broderick* case as an exhibit in support of fee petition) and; *Palmer v. Barry,* 704 F.Supp. 296, 298 (D.D.C.1989).

[4] 572 F. Supp. 354 (D.D.C. 1983), affirmed in part, reversed in part on other grounds, 746 F.2d 4 (D.C. Cir. 1984), cert. denied, 472 U.S. 1021 (1985), overruled in part on other grounds,

11.     As discussed in more detail below, indices such as the LSI or the All-Items Regional CPI sample the prices of certain goods and service and create an index. This allows a calculation of a rate of price change over various time intervals for the products and services represented by the sample.  Once the rates of price change are established they may be used to make statements about changes in the cost of living or to adjust past market prices to estimate prevailing market prices.

12.     The first time I offered an opinion on the appropriate method for adjusting the *Laffey* matrix to present time was in a 1996 affidavit that the plaintiffs submitted in *Salazar v. District of Columbia,* 123 F. Supp. 2d 8 (D.D.C. 2000), in support of their first application for attorneys' fees.  A copy of that affidavit is attached as Attachment 2.  I opined that using the LSI was the appropriate method for updating a *Laffey* matrix because it focused on the market for legal services rather than the cost of living and therefore was likely to be the better predictor of prevailing (market) rates.  The Court explicitly adopted my analysis in its decision. *See Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000).  I continue to hold the opinions expressed in that affidavit.

13.     Since then, I have prepared declarations/affidavits on the same topic in several other cases. Although I do not maintain a complete list of all my work, I do know my analysis was adopted in the cases of *Salazar v. District of Columbia*, 750 F. Supp. 2d 70 (D.D.C. 2011) Case 1:93-cv-00452-GK Document 1680 Filed 01/04/11; *Interfaith Community Organization v. Honeywell*, 336 F.Supp.2d 370 (D.N.J. 2004), affirmed, 426 F. 3d 694 (3d Cir. 2005), *PIRG v. Magnesium Elecktron, Inc.,* 1995 WL 866983, *2, 10 (D.N.J. Dec. 28, 1995), vacated on other

grounds, 123 F.3d 111 (3d Cir. 1997); *Hash et al., v. United States of America* Case 1:99-cv-00324-MHW Document 270 Memorandum decision and Order (filed 04/13/12);. and *United States of America ex rel. Robert Baker v. Community Health.* Proposed finding and Court Order, Case 1:05-cv-00279-WJ-ACT Document 594 (August 9, 2013).

14. Plaintiff's counsel asked me to explain why the approach I favor of adjusting the 1989 Laffey sample by the Legal Services Index (LSI) is a better estimator of the market prices for providing complex legal services than the DOJ approach of applying a Consumer Price Index for metropolitan Washington, D.C.,[5] ("All-Items Regional CPI")[6] to the 1983 sample; My opinions are stated to a reasonable degree of certainty under the standards of my profession.

15. There are three ways to distinguish between each approach. They are: (1) the specific goods and services included in each price index, (2) the characterization of the market in the provision of complex legal services, and (3) the age of the sample of rates.

16. All-item consumer price indices, including the All-Items Regional CPI that DOJ uses, combine the price changes of over one hundred thousand commodities into

---

[5] Prior to 1998, the index included the District of Columbia, Montgomery County, MD; Prince George's County, MD; Alexandria city, VA; Arlington County, VA Fairfax County, VA Falls Church city, VA.

Since 1998, the index includes all of the areas in the older index and adds: Baltimore City and the counties of Anne Arundel, Baltimore, Calvert, Carroll, Charles, Frederick, Harford, Howard, Queen Anne's, and Washington in Maryland; the cities of Fredericksburg, Manassas, and Manassas Park and the counties of Clarke, Fauquier, King George, Loudoun, Prince William, Rappahannock, Spotsylvania, Stafford, and Warren in Virginia; and the counties of Berkeley and Jefferson in West Virginia. See http://www.bls.gov/ro3/cpiwb.htm and http://www.census.gov/population/www/metroareas/lists/historical/60mfips.txt

[6] Both the LSI and the All-Items Regional CPI are maintained by the U.S. Department of Labor, Bureau of Labor Statistics (BLS).

a single index value to measure of the rate of price change in the overall cost of living for consumers.   For example, the 2012 CPI for all urban consumers contains a legal services component, which accounts for less than .293% (.00293) of the total spending represented in the CPI.[7]  Thus, 99.997% of the spending reflected in the 2012 CPI is for items other than legal services. The component representing food and beverage prices accounts for about 15% (.15) of the total 2012 CPI.  If legal billing rates were updated using this CPI, this would give fifty times more weight to food markets than to the legal services market. These same percentages apply to the All-Items Regional CPI.

17.     In contrast, the LSI measures the fees charged for providing specific legal services.   These services include preparing a brief, attending a deposition and representing parties in civil proceedings, which are services provided in complex federal litigation. Just as a national CPI does not and cannot include every item in the U.S. economy, the LSI does not and cannot include the fees charged for every possible service rendered by lawyers.   The size and complexity of the U.S. economy and the practice of law makes impossible the  inclusion of every good or service in an index.

18.     It is my opinion that the use of an index specific to legal services is more likely to reflect the rate of change in prevailing billing rates for legal services than a general consumer price index. A general CPI -- whether national or regional -- includes items that are not relevant to the market for legal services. These other items are given much more weight than legal services. So when an All-Items CPI

---

[7] See ftp://ftp.bls.gov/pub/special.requests/cpi/cpiri2012.txt. 2012 is the most recent year for which BLS reports its relative component analysis.

is applied to the billing rates in the *Laffey* matrix, it obfuscates the rate of price change of legal services.

19. Economists try to use the most specific index available. This helps them make a more accurate assessment of the market forces that influence prices. The specific components of the CPI, such as the LSI, to the extent they are available, are the better resource to update an industry's prices than the general CPI. This is because there are two strong forces that exert pressure on prices over time. One is inflation, a rise in the general price level; the other is a supply and demand imbalance. Often for a specific good or service, supply and demand imbalances are the stronger of the two and can accentuate or negate the general effects of inflation on a particular price (e.g. billing rates for legal services). If a broad index is used to adjust an industry's prices over time, then the specific supply and demand effects are suppressed and only the effect of inflation is captured. On the other hand, when a specific index is used, the net effect of both inflation and supply and demand imbalances is captured. This is why it is preferable, and more accurate, to use a specific index rather than a broad index.

20. Market imbalances negating inflation may be seen in the market for electrical components and parts (*e.g.,* computers) over the last thirty years. Due to strong advances in productivity in this industry, computer prices have declined while prices generally have increased due to inflation.

21. Market imbalances accentuating inflation may be seen in the market for motor fuels. From Nov-2002 to Nov-2012, fuel prices increased within the Washington D.C., area on average by 9% per year while all items increased by 2.9% per year.

Thus, if the all-items data were used to update a sample of fuel costs from 2002 to 2012, the procedure would materially underestimate the change.  If, for example, motor fuel in November 2002 cost $1 per gallon, use of the CPI would estimate its cost at $1.33 in 2012 while the specific index for motor fuel would result in an estimate of $2.37 in 2012.  The difference is an increase of $1.04 or about 78% higher than the CPI estimate.

22.     A second reason for using the approach I favor is that it more accurately reflects the conditions of competition for complex litigation.  In my opinion the market for legal services in complex federal litigation is a national market and not a local market.  This is because mobility and low-cost communication combine to make a national market for legal services in complex litigation. Washington, D.C., area law firms compete with law firms in other areas such as New York, Philadelphia, Chicago, Dallas, and San Francisco.  Once access to world-class libraries was essential to a successful scientific or legal research, today reference materials are readily available online and can be accessed anywhere. Once it took at least a day to move a custom-made document more than five hundred miles, now a document can move five thousand miles in seconds. Resource mobility and low-cost communication, then, combine to make the market for legal services in complex litigation a national market.

23.     A third reason why the way I adjust *Laffey* rates is superior to the DOJ method is because the DOJ method applies a general index to 1982 observations; I apply a specific legal services index to the most recent survey of rates developed in 1989 in response to the remand decision in *Save Our Cumberland Mountains v. Hodel.*

In general, the more contemporary the observation, the less possibility exists for forecasting error. The *Laffey* update that I have constructed, then, is more likely to be a more accurate estimate of current rates because it utilizes the more recent observations, whereas the DOJ version uses an older survey.

24.     I updated the 1989 *Laffey* Matrix as follows. First, I obtained monthly data for the legal service component of the CPI maintained by the Bureau of Labor Statistics of the U.S. Department of Labor and computed the annual change measured at mid year.  Second, I applied the annual change to the 1989 *Laffey* matrix rates for each labor category to produce an hourly rate for each of the six labor categories for each year since 1989.  The results for June 1, 2010 to May 31, 2012 are shown below. The complete matrix is attached as Attachment 3.

| Years from Law School | June 2010 to May 2011 | June 2011 to May 2012 |
|---|---|---|
| 20 + | 709 | 734 |
| 11 to 19 | 588 | 609 |
| 8 to 10 | 522 | 540 |
| 4 to 7 | 361 | 374 |
| 1 to 3 | 294 | 305 |
| Paralegal/ LawClerk | 160 | 166 |

In my opinion these rates better reflect prevailing market rates during the relevant period than do DOJ's estimates.  This is because the rates I offer begin with a more recent survey and are adjusted by an index that is focused only on the price of legal services.

25.     The estimated prevailing billing rates in the table above are not a simple average of *all* billing rates of *all* law firms in an area or the nation; but are instead

estimated prevailing billing rates for law firms that are providing legal services in a particular market. The particular market consists of the rates charged paying customers for providing complex legal services. The presumption is that the firms that are charging and receiving these rates are selling skills comparable to those skills needed to effectively represent civil and constitutional rights.

Executed on this 11th day of December 2013.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                                              _____
                                            Michael Kavanaugh

Attachments
1. 2013 Kavanaugh resume
2. 1996 Kavanaugh declaration in *Salazar*
3. 2013 Adjusted *Laffey* Matrix

**Attachment 1**

# MICHAEL KAVANAUGH
## Research Economist
Phone: 808 985 7031
E-mail:  M.Kavanaugh@att.net

P.O. Box 1228
19-4231 Road E
Volcano, Hawaii 96785

**PRESENT POSITION:** Private Practice since 1985

**PREVIOUS POSITIONS**:
- Senior Economist, ICF Incorporated, 1983-85, Washington, D.C.
- Research Director, Public Interest Economics, 1976-1983, Washington, D.C. and San Francisco, CA.
- Assistant Professor, Northern Kentucky University, 1975-76

**EDUCATION**:
- PhD., Economics, University of Cincinnati, 1975
- BA. Economics, Xavier University, 1970

**EXPERIENCE**
- An independent research economist with years of experience;
- A national expert in the economic aspects of environmental enforcement and policies for controlling pollution;
- Experienced in regional economic analysis;
- Experienced in the use of economic indices;
- Experienced in valuing damages to persons, households, and commercial enterprises;
- Experienced in assessing natural resource damages; and,
- An author of groundwater management and climate change papers.

Short descriptions of selected projects follow.

**ECONOMICS & FINANCE**
I applied economics to many of the environmental changes of the last thirty years including:
- Estimating the ability of defendants to pay a penalty and the financial effects of penalties in enforcement cases;
- Estimating the benefits of cleaner beaches and rivers;
- Developing methods to determine the effects of water quality policies on agricultural output, employment and income;
- Developing methods to estimate the benefits of preserving groundwater quality;
- Advised on the adequacy of financial assurance mechanisms;
- Estimating expected and realized benefits of irrigation projects; and,
- Critiquing efforts to regulate effluents from several industries.

Designed and used financial after-tax, cash flow models to:
- Measure the ability to pay a penalty and the effects of penalties on financial position;
- Estimate the benefit gained by entities that violate law and regulation; and,
- Estimate the burden on the residential sector from municipal compliance with law and regulation.

Provided expert economic and litigation support services to the United States (and others) in Clean Water Act, Clean Air Act, Superfund, RCRA and groundwater quality cases.

*Exxon Valdez* – Estimated the employment and income effects from spending the civil settlement.  The work involved characterizing the options in the restoration plan in term of input/output models.

**Natural resource damage assessments**

- Ohio River – valued public resource damages from spills from tugs and barges.  The work combined results from Natural Resource Damage Assessment models, studies of the costs of reducing risks to drinking water, and restoration costs.
- Kailua Beach State Park – valued a three-mile beach based on recreational use and estimated the damage from wastewater treatment plant effluent.  The work involved reviewing, updating and synthesizing a variety of studies that valued recreation.
- Florida Beaches – valued beach closures from pollution at several beaches.  The work involved extensive use of the Natural Resource Damage Assessment models for coastal and marine environments.

**Energy & Environment**

- Conducted several analyses of U.S. energy industry to estimate current and future production in wetlands and in the artic.
- Commented on economic impacts to employment and structures of planned, utility-scale photovoltaic projects in Southern California.
- Estimated consequences of oil and gas leasing in the North Aleutian Basin.
- Estimated the cost effectiveness of technologies to control produced water discharges in wetlands,
- Estimated the impact of produced water controls on production, royalties and returns from coal bed methane production.
- Estimated the change in rates needed to pay for adopting cooling water intake controls at a nuclear power plant.
- Advised environmental groups on methods to fund the WV acid mine drainage reclamation fund.
- Design team member to size and fund the Superfund.

- Estimated onshore economic impacts of outer continental shelf oil and gas development in California
- Examined the efficiency and equity of federal leasing policies for oil and gas on public lands

## Global Climate

- Estimated current and future greenhouse gas emissions by fuel, sector and region.  The work involved estimating long-term energy using an economic model based on prices, income and combustion technology.
- Estimated greenhouse gas emissions by jets at altitude by region and the change in emissions from adopting advanced jet technology.
- Modeled current and future emission from the US automobile fleet under various assumptions about future fuel efficiency.
- Analyzed the benefits of substituting hydrocarbon propellants for CFC propellants in aerosol products.  The results showed the same level of consumer satisfaction could be obtained without CFCs and without increasing prices.

## PUBLICATIONS in last 10 years

## Federal Court Trial Testimony Since 1/09

American Canoe Association, Inc., et al. v. Louisa Water and Sewer Commission – Ashland KY. 7/2009, 01-cv-00099-ART

Ohio Valley Environmental Coalition, et al. v. Apogee Coal Company LLC – Huntington WV. 8/2010, 3:07-cv-00413-RCC

## Deposition Testimony since 1/08

New Jersey Municipal Authorities et al. v. Honeywell International et al. (9/09) 05-5955 DMC

Ohio Valley Environmental Coalition, et al. v.  Apogee Coal Company LLC– (8/10) 3:07-cv-00413-RCC

Ohio Valley Environmental Coalition, et al. v.  Massey Energy (4/11) 3:07-cv-00836-RCC

Ohio Valley Environmental Coalition, et al. v.  Arch Coal (5/11)

San Francisco Baykeeper v. West Bay Sanitation (7/11)

Attachment 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

OSCAR SALAZAR, <u>et al</u>., )
on behalf of themselves )
and all others similarly )
situated, )
                  )
        Plaintiffs, )
                  )
    v. )    Civil Action No. 93-452 (GK)
                  )
THE DISTRICT OF COLUMBIA, )
<u>et al</u>., )
                  )
        Defendants. )
_____)

## AFFIDAVIT OF MICHAEL KAVANAUGH

I, Michael Kavanaugh, Ph.D., do hereby affirm and state:

1.   My name is Michael Kavanaugh. I am an economist doing business at 160 Wood Street, Batavia, OH 45103.

2.   I hold a Ph.D. in economics from the University of Cincinnati (1975) and a B.A. in economics from Xavier University (1970). I have taught economics at the University of Cincinnati and at Northern Kentucky University. I have worked as a natural resource and environmental economist for a variety of clients, including the U.S. Department of Justice, the U.S. Environmental Protection Agency, environmental groups and private industry for over 20 years. I have been qualified as an expert in Federal court on financial and economic matters ten times. I copy of my curriculum vitae is attached as Attachment 1 and I incorporate it herein by reference.

3.   I have been asked by plaintiffs' counsel to render my opinion as to the appropriate price index to be used to update the <u>Laffey</u> matrix of attorneys' fees rates for complex federal litigation in the Washington, D.C. market.

4.    Based on the information supplied to me by plaintiffs'
counsel, the Laffey matrix was updated to 1988-1989 rates in
connection with the Save Our Cumberland Mountains v. Hodel, 857 F.2d
1516 (D.C. Cir. 1988)(en banc) litigation.  See Declaration of Joseph
A. Yablonski, Pl. Ex. 30.

5.    The method that plaintiffs' counsel has used to determine
the increase in Laffey rates from 1988-1989 rates to the present is to
calculate the June to June change in the legal services component of
the consumer price index and to apply the change to a base year to
arrive at an estimate for the next year.  See Plaintiffs' Application
for an Award of Litigation Costs, Including Attorneys' Fees and Out-
of-Pocket Expenses, July 1, 1996, p. 14.  The process is repeated and
a chain of estimates results with each year's estimate linked to the
preceding year's estimate by the change in the price index.  This is
an appropriate and common use of index numbers.

6.    In my opinion, as explained below, the Consumer Price Index
for U.S. City Average, Legal Service Fees ("Legal Services Index")
maintained by the U.S. Department of Labor, Bureau of Labor Statistics
(Pl. Ex. 6) is a better measure of the change in prices for legal
services in Washington, D.C., than the Consumer Price Index for
Washington, D.C., Maryland, Virginia, All Items ("DC Metro CPI") (Def.
Ex. 2).

7.    I have reviewed both the update to the Laffey matrix
prepared by plaintiffs' counsel (Plaintiffs' Application for an Award
of Litigation Costs, Including Attorneys' Fees and Out-of-Pocket
Expenses, July 1, 1996, p. 14), which uses the Legal Services Index to

2

bring 1988-1989 rates forward to present, and the update referred to as the United States Attorneys' Office <u>Laffey</u> matrix, which utilizes the DC Metro CPI to bring 1981-1982 rates forward to present (Pl. Exs. 7, 31).

8.    Both the Legal Services Index and the DC Metro CPI are readily available and are maintained by the U.S. Department of Labor, Bureau of Labor Statistics.   The underlying data are collected by the U.S. Department of Commerce, Census Bureau as part of its quinquennial census and its annual surveys.

9.    Economists use as specific an index as possible to determine changes in prices in a part of an industry, such as here changes of prices in legal services in the District of Columbia.   Thus, components of the Consumer Price Index are the better tool to use to update an industry's prices rather than the entire Consumer Price Index.   This is because there are two strong forces exerting pressure on prices over time.   One is inflation, a rise in the general price level; the other is supply and demand imbalances.   Often for a particular good or service, supply and demand imbalances are the stronger of the two and can accentuate or negate inflation.   If a broad index is used to adjust an industry's prices over time, then the specific supply and demand effects are suppressed and only the effect of inflation is captured.   On the other hand, when a specific index is used the net effect both of inflation and of supply and demand imbalances is captured.   Accordingly, to measure changes in an industry's prices, it is far preferable to use a specific index rather than a broad index.

3

10.    The Consumer Price Index, U.S. City Average incorporates the Legal Service Index along with many other indices to estimate the cost of living.   For example, in the 1995 Consumer Price Index, U.S. City Average for all urban consumers, legal services account for less than .5% of the spending considered by the Consumer Price Index, U.S. City Average.   See Pl. Ex. 32, p. 7.   In contrast, food prices account for about 16% of total Consumer Price Index, U.S. City Average spending. Adjusting legal fees using the Consumer Price Index, U.S. City Average would give 32 times more weight to food markets than to the markets for legal services.

11.    The same comparison is not possible for the DC Metro CPI because the DC Metro CPI does not have a separate component for legal services.   See Pl. Ex. 32, p. 13.   This is because there were insufficient observations of legal services in the Washington, D.C. metropolitan area to create a statistically valid index.   Legal services in the Washington, D.C. metropolitan area are not separately accounted for, but are included in the "Other goods and services category" which also includes tobacco, cosmetics, haircuts, school tuition, day care and funeral expenses.   Id., pp. 7, 13.   It is fair to conclude that legal services have even less weight in the DC Metro CPI than in the Consumer Price Index, U.S. City Average since there are not sufficient observations for a separate index relating solely to legal services.

12.    The Legal Services Index measures, inter alia, the hourly rate of providing many different legal services to households.   These services include: preparing a brief, attending a deposition,

4

representing plaintiffs and defendants in divorce proceedings, and
preparing a short form will.  Thus, the Legal Services Index is based
on a sample of prices of specific items.  Just as the overall Consumer
Price Index does not include all items available in the U.S. economy,
the Legal Services Index does not measure the fees charged for every
service rendered by lawyers.  Because of the extremely large size of
the U.S. economy, it would not be feasible to include every price in
the economy in an index.

13.   It is common practice in economics to make prices for part
of an industry stand for prices in the whole industry.  This is what
the Department of Commerce does when it prepares estimates of an
industry's contribution to gross domestic product (GDP).  For example,
when measurements of the entire legal industry's contribution to the
output of the nation are made, the legal services component of the
Consumer Price Index is used; when the contribution to GDP of all
physicians' services is calculated, the physician component of the
Consumer Price Index is used; and when the contribution to GDP of
radio, TV, air conditioning repair services is calculated, the
appliance and furniture repair component of the Consumer Price Index
is used.

14.   The Legal Services Index is a national index that includes
the metropolitan Washington, D.C., area.  Adjusting the Laffey matrix
with a national index assumes that the rate of change of prices for
legal services is about the same everywhere.  I note that this is not
the same thing as prices being the same everywhere.  Even if prices
differ in different places, the rate of change in prices is likely to

5

be about the same.  With resource mobility and the ability to communicate easily over distances, this is a plausible assumption. While it is possible for prices for the same good or service to change at different rates in different places, this is most likely to happen for goods or services for which there is only a local market because their transport is expensive relative to their value (_e.g._, fast food) or because communication is difficult.

15.  In my opinion, the market for legal services in complex federal litigation in Washington, D.C. is not a local market. Therefore, it would be more appropriate to use the Legal Services Index, which captures supply and demand factors particular to the legal services market as well as inflation, as compared to the DC Metro CPI, which chiefly captures inflation effects.

16.  Finally, I note that the _Laffey_ matrix prepared by plaintiffs' counsel is preferable to the United States Attorneys' Office _Laffey_ matrix for an additional reason.  Plaintiffs' _Laffey_ matrix update is based on observations from 1988-1989, while the United States Attorneys' Office _Laffey_ matrix uses 1981-1982 rates as a base.  In general, the more contemporary the observations, the less possibility exists for forecasting errors.  Thus, plaintiffs' _Laffey_ matrix is more likely to be an accurate forecast of rates because it applies an index to more recent observations to bring rates forward to the present as contrasted to the United States Attorneys' Office _Laffey_ matrix which uses an index to bring forward much earlier observations.

6

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.   Executed on September $26$, 1996.

MICHAEL KAVANAUGH

**MICHAEL KAVANAUGH**
160 Wood St.
Batavia, OH 45103-2923
Voice/Fax (513) 732-3939
E-Mail Kavanaug@iglou.com

**PRESENT POSITION:** Private practice, since 1985

**PREVIOUS POSITIONS**
Senior Economist/Project Manager, ICF Incorporated, 1983-85, Washington DC
Research Director, Public Interest Economics Foundation, 1976-83 Washington DC & San Francisco CA
Assistant Professor, Northern Kentucky University, 1975-76

**EDUCATION**
Ph.D., Economics, University of Cincinnati, 1975
B.A., Economics, Xavier University, 1970

**EXPERIENCE**
Dr. Kavanaugh is an independent research economist with over 20 years of experience in applied economics. He is a national expert in environmental enforcement and policies for municipal and industrial point sources of pollution. He has written about groundwater management and climate change. He is experienced in natural resource damage assessment and regional economic impact assessment. Selected projects include:

**ECONOMICS**
Provided expert economic and litigation support services to the United States (and others) in Clean Water Act, Clean Air Act, Superfund, Resource Conservation and Recovery Act Enforcement Cases. He estimates the economic benefit gained by entities who violate their discharge permits; and, measures the effect of penalties on their financial position. This work is based on financial after-tax, cash-flow models.

Prepared testimony on the benefits North Miami received from a landfill and on the economics of operating a landfill (Orange County, NY).

Prepared testimony on the influence of groundwater quality on residential property values; and advised and submitted affidavits supporting Alaska's position on oil and gas leasing in the North Aleutian Basin.

Michael Kavanaugh     Voice/Fax (513) 732-3939

Conducted several analyses of the economic effects of water
quality including: estimating the benefits of clean water on
beaches and rivers; developing methods to determine the
effects of water quality policies on agricultural output,
employment, and income; developing methods to estimate the
benefits of preserving groundwater quality; estimating
expected and realized benefits and costs of irrigation
projects; and critiquing efforts to regulate effluents from
several industries.  Examples include:

Ohio River - (in progress) values public resource damages
from spills from tugs and barges.  The work combines results
from the Natural Resources Damage Assessment models for Great
Lake environments, studies of the costs of reducing risks to
drinking water, and restoration costs.

Kailua Beach State Park - valued a three mile public beach
based on recreational use and estimated the damage to the
beach from wastewater treatment plant effluent.  The work
involved reviewing, updating and synthesizing a variety of
studies that valued recreation.

Florida Beaches - valued beach closures from pollution at
several Florida beaches.  The work involved extensive use of
the Natural Resource Damage Assessment models for coastal and
marine environments.

Estimated the employment and income effects from spending the
Exxon Valdez settlement.  The work involved characterising the
options in the restoration plan in terms of input/output models.

Conducted several analyses of the U.S. petroleum industry to
estimate current and future production in wetlands and in the
arctic; and to estimate the cost effectiveness of
technologies to control produced water discharges.

Estimated current and future greenhouse gas emissions by fuel,
sector, and region.  The work involved estimating long-term
energy use using an economic model based on prices and income
and forecasting combustion technolgy.  The work is used by
atmospheric modelers.

Advised environmental groups on the use of contingent valuation
to value natural resource damages and commented on the Federal
Register Notice on the use of contingent valuation to determine
damages.


Michael Kavanaugh    Voice/Fax (513) 732-3939

## PUBLICATIONS

"Fuel economies available from ultrahigh bypass jet engines" in Cost estimates of measures available to reduce U.S. greenhouse gas emissions by 2010.  ICF Washington D.C. 1990.

"End-use efficiency and NOx emissions in aviation". In S. Meyers, ed. Energy efficiency and structural change: Implications for the Greenhouse problem.  Lawrence Berkeley Laboratory, Berkeley CA 1988.

Estimates of future CO, N2O and NOx emissions from energy combustion, Atmospheric Environment, March 1987.

Tropospheric CH4/CO/NOx: The next 50 years, coauthor with Anne M. Thompson. UNEP/USEPA International Ozone Conference, 1986.

Eliminating CFCs from aerosol uses: the U.S. experience and its applicability to other nations.  U.S. Environmental Protection Agency, Washington, February 1986.

The 1983 world oil surplus: some implications for OCS leasing. Prepared for the U.S. House Subcommittee on the Panama Canal/OCS Washington, April 1983.

The effect of OCS leasing schedules and procedures on fair market value.  Paper presented to the Western Economic Association, Seattle July 1983.

Efficient strategies for preserving groundwater quality, with Rob Wolcott.  U.S. Environmental Protection Agency, May 1982.

Exclusive territorial distributorships and consumer welfare: the case of beer.  Food Marketing Institute, Washington D.C. 1982.

The Great Giveaway, with others, Sierra Club, October 1982.

The public benefits of the proposed Union Pacific, Missouri Pacific, Western Pacific Consolidation.  Interstate Commerce Commission, August 1981

Regional economic impacts of OCS oil and gas development. with Susan Little and Rob Wolcott.  Governor's Office of Planning and Research, California, November 1976.

Michael Kavanaugh      Voice/Fax (513) 732-3939

Attachment 3

Adjusted Laffey Matrix

| Year | | Adjustment Factor | Paralegal/ Law Clerk | Years Out of Law School | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | 1-3 | 4-7 | 8-10 | 11-19 | 20+ |
| 6/1/13 | 5/31/14 | 1.0244 | 175 | 320 | 393 | 567 | 640 | 771 |
| 6/1/12 | 5/31/13 | 1.0258 | 170 | 312 | 383 | 554 | 625 | 753 |
| 6/1/11 | 5/31/12 | 1.0352 | 166 | 305 | 374 | 540 | 609 | 734 |
| 6/1/10 | 5/31/11 | 1.0337 | 160 | 294 | 361 | 522 | 588 | 709 |
| 6/1/09 | 5/31/10 | 1.0220 | 155 | 285 | 349 | 505 | 569 | 686 |
| 6/1/08 | 5/31/09 | 1.0399 | 152 | 279 | 342 | 494 | 557 | 671 |
| 6/1/07 | 5/31/08 | 1.0516 | 146 | 268 | 329 | 475 | 536 | 645 |
| 6/1/06 | 5/31/07 | 1.0256 | 139 | 255 | 313 | 451 | 509 | 614 |
| 6/1/05 | 5/31/06 | 1.0427 | 135 | 248 | 305 | 440 | 497 | 598 |
| 6/1/04 | 5/31/05 | 1.0455 | 130 | 238 | 292 | 422 | 476 | 574 |
| 6/1/03 | 5/31/04 | 1.0507 | 124 | 228 | 280 | 404 | 456 | 549 |
| 6/1/02 | 5/31/03 | 1.0727 | 118 | 217 | 266 | 384 | 434 | 522 |
| 6/1/01 | 5/31/02 | 1.0407 | 110 | 202 | 248 | 358 | 404 | 487 |
| 6/1/00 | 5/31/01 | 1.0529 | 106 | 194 | 238 | 344 | 388 | 468 |
| 6/1/99 | 5/31/00 | 1.0491 | 101 | 184 | 226 | 327 | 369 | 444 |
| 6/1/98 | 5/31/99 | 1.0439 | 96 | 176 | 216 | 312 | 352 | 424 |
| 6/1/97 | 5/31/98 | 1.0419 | 92 | 168 | 207 | 299 | 337 | 406 |
| 6/1/96 | 5/31/97 | 1.0396 | 88 | 162 | 198 | 287 | 323 | 389 |
| 6/1/95 | 5/31/96 | 1.0320 | 85 | 155 | 191 | 276 | 311 | 375 |
| 6/1/94 | 5/31/95 | 1.0237 | 82 | 151 | 185 | 267 | 301 | 363 |
| 6/1/93 | 5/31/94 | 1.0552 | 80 | 147 | 181 | 261 | 294 | 355 |
| 6/1/92 | 5/31/93 | 1.0511 | 76 | 139 | 171 | 247 | 279 | 336 |
| 6/1/91 | 5/30/92 | 1.0445 | 72 | 133 | 163 | 235 | 265 | 320 |
| 6/1/90 | 5/31/91 | 1.0794 | 69 | 127 | 156 | 225 | 254 | 306 |
| 6/1/89 | 5/31/90 | 1.0700 | 64 | 118 | 144 | 209 | 235 | 284 |
| 6/1/88 | 5/31/89 | | 60 | 110 | 135 | 195 | 220 | 265 |