**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | ) ) ) |
| Defendant. | ) ) ) |

Civil Action No. 12-0333 (GK)

**DEFENDANT'S OPPOSITION
TO EPIC'S MOTION FOR ATTORNEY FEES AND COSTS**

**Table of Contents**

Factual Background ....................................................................................................1

The Statutory Scheme for Attorney Fees Under FOIA ...........................................4

Argument ..................................................................................................................5

I.   Eligibility:  EPIC has not "substantially prevailed"; its arguments for fee eligibility
     run counter to the statutory language and established Circuit law............................................5

     A.   EPIC did not "obtain relief" through a court order.........................................................5

     B.   EPIC does not establish fee eligibility through the catalyst theory .................................9

II.  Entitlement:  Assuming *arguendo* EPIC were eligible for fees, EPIC fails to
     demonstrate it is entitled to fees ............................................................................11

III. EPIC's claimed fees are not reasonable ...............................................................18

IV. The Court should not award EPIC "fees-on-fees"……………………………………19

Conclusion ..............................................................................................................22

**Table of Exhibits**

Ex. A - sample document released by DHS to EPIC

Ex. B - sample document released by DHS to EPIC

Ex. C - EPIC Alert of April 30, 2013

Ex. D - Declaration of Dr. Laura A. Malowane

Plaintiff the Electronic Privacy Information Center ("EPIC") seeks a staggering amount of attorney fees—more than $100,000—in this Freedom of Information Act ("FOIA") case that it lost.  Under the "American rule," each party is responsible for paying its own attorney's fees, win or lose, unless a statute or contract grants explicit authority allowing the assessment of fees against the other party.  *See, e.g.*, *Baker Botts v. ASARCO*, 135 S. Ct. 2158, 2164 (2015) (discussing the American rule).  Although the FOIA statute provides that a "court *may* assess against the United States reasonable attorney fees ... in any case ... in which the complainant has substantially prevailed," 5 U.S.C. § 552(a)(4)(E) (emphasis added), neither the statute nor D.C. Circuit case law allow the Court to depart from the American rule by awarding fees to a losing plaintiff like EPIC.

As discussed herein, there are multiple reasons why the Court should deny EPIC's motion in its entirety.  EPIC is not eligible for attorney fees under the governing standards of FOIA. Even if it were eligible, EPIC does not show that it is entitled to attorney fees.  Moreover, the fees it seeks are plainly unreasonable.  *See* 5 U.S.C. § 552(a)(4)(E)(i).  DHS respectfully requests that the Court  deny EPIC's motion for costs and fees

## FACTUAL BACKGROUND

On July 6, 2011, EPIC submitted a FOIA request to the DHS for five categories of records relating to a program it described as an "NSA pilot program" that "ha[d] not been publicly named."  *See* Dkt. # 55-1 (2d Holzer Decl.) at 4, ¶ 8 (discussing request) and Dkt. # 55-1 at 29 (copy of request).  DHS later clarified with EPIC that EPIC was referring to, and seeking records regarding, the Defense Industrial Base ("DIB") Cyber Pilot, a joint program between DHS and the Department of Defense that had in fact been publicly named prior to the date of EPIC's request.[1]  2d Holzer Decl. ¶ 8.

---

[1] Indeed the DIB Cyber Pilot had been discussed by name by multiple news articles covering the same speech referenced in EPIC's FOIA request (the June 2011 speech by Deputy Defense Secretary William J. Lynn III at a global security conference in Paris, France).  *See, e.g.*,Damon Poeter, *Feds Recruiting ISPs, Defense Firms to Face Down Growing Cyber Threats*, PC

(cont…)

1

DHS Privacy responded by letter on August 3, 2011, denying the request in part and indicating that DHS Privacy had referred the remainder of the request to the National Protection & Programs Directorate (NPPD) FOIA Office for processing and direct response.  DHS Privacy referred EPIC's request to NPPD because NPPD was the most likely component within DHS to possess the requested documents.  1st Holzer Decl. ¶¶ 10-11 (Dkt. # 17-1).  As DHS has previously explained, the NPPD FOIA Office generally processed (and still processes) requests on a first-in, first-in out basis.  *Id.* ¶ 12.  NPPD operates (then and now) a small FOIA office with, at the time, only three employees.  The NPPD FOIA Office was backlogged at the time that it received EPIC's FOIA request.  NPPD had seen a dramatic, fivefold increase in FOIA requests between 2009 and 2012.  *Id.* ¶¶ 15, 17.  At the time of the referral, NPPD had approximately 180 pending FOIA requests ahead of EPIC's request.  *Id.* ¶ 12.  By the beginning of 2012, "the three employees of the NPPD FOIA Office were simultaneously working on responding to EPIC's FOIA request and hundreds of other FOIA requests," *id.* ¶ 17.

Although the NPPD FOIA Office was overloaded, it started processing EPIC's FOIA request, and it did so even prior to receiving EPIC's administrative appeal on January 5, 2012.[2] 2d Holzer Decl. ¶ 11.  An NPPD FOIA Specialist later conveyed to EPIC, on January 23, 2012, that NPPD was processing EPIC's request.  Mem. Op. 5.  EPIC filed this litigation on March 1, 2012, declining to wait for DHS to complete its administrative processing.  2d Holzer Decl. ¶ 12.

In the meantime, DHS continued to process EPIC's request, 2d Holzer Decl. ¶¶ 11-13, 14-42, conducting searches that this Court later commended as "meticulous, organized, and thorough," Mem. Op. 15.  Those searches took many months and yielded a large number of

---

MAGAZINE (June 18, 2011), http://www.pcmag.com/article2/0,2817,2387212,00.asp; *US Govt launches pilot cyber defense program with ISPs, defense firms*, INTERNATIONAL BUSINESS TIMES – U.S. ED. (June 19, 2011).

[2] Prior to receiving EPIC's appeal, NPPD FOIA's Office had started to process the request by tasking out the search to the office that was most directly responsible for DHS's involvement in the DIB Cyber Pilot, NPPD's subcomponent the Office of Cybersecurity and Communications (CS&C). NPPD FOIA Officials had also engaged with CS&C officials regarding the appropriate way to proceed with the FOIA Request given its potentially broad scope.  2d Holzer Decl. ¶ 11, 14-42.

pages of potentially responsive documents, which required a "page-by-page," "line-by-line" review to determine if any of the collected documents were in fact responsive and whether any of FOIA's exemptions applied.  Mem. Op. 8.

In August, 2013, EPIC narrowed its FOIA request.  *Id.* 5.  On April 15, 2013, DHS produced 1, 276 pages of responsive documents to EPIC; 117 pages of those records were released in their entirety and the remaining 1,159 pages were partially redacted pursuant to FOIA exemptions. *Id.* at 9.  DHS produced four additional documents to EPIC on August 26, 2013.  *Id.*

Both sides moved for summary judgment.  *Id.* at 10.  On August 4, 2015, this Court granted DHS's motion summary judgment on the sufficiency of the search conducted and the withholding of documents and information under FOIA Exemptions 1, 3, 4, and 5.  Dkt. ## 67, 68. The Court denied without prejudice DHS's motion for summary judgment with regard to the withholding of certain information under an alternative FOIA Exemption 7(D) basis and ordered DHS to submit a supplemental *Vaughn* index to further explain the agency's Exemption 7(D) assertions.  *Id.* No additional documents or information were released by DHS as a result of the Court's ruling on the the Exemption 7(D) issue.  Exemption 7(D) had been asserted only in the alternative to Exemption 4, and thus the Court's "partial" granting of summary judgment to DHS actually covered all withheld documents and information.  *See* Not. of Filing (Dkt. # 73) at 2; 2d Herrington Decl. (Dkt. 74-1) ¶ 4.  DHS filed a supplemental *Vaughn* index on September 30, 3015 (Dkt. # 74).  EPIC then dropped its remaining challenge.  *See* Joint Status Report (Dkt. # 76) ¶ 2.

The Court denied in full EPIC's motion for summary judgment, denying EPIC's motion without prejudice with regard to withholdings under Exemption 7(D) and otherwise denying the motion with prejudice.  *Id.*

Despite having lost summary judgment, and having lost at nearly every other turn in this case, EPIC now seeks attorney fees for the entirety of the work it conducted in connection with this matter.  *See* Pl's Att'y Fee Br., Dkt. # 81-1.  According to EPIC's billing summary sheet, EPIC seeks $86,066.19 on a series of failed motions, rejected oppositions, and other litigation

work conducted between filing of the Complaint and the summary-judgment briefing stage; $3,640.74 for summary judgment motions-related work; $3,987.40 for "post-summary judgment" work; and $22,435.40 for fees on fees.  Dkt. # 81-9 at 2.  In total, EPIC seeks more than $100,000, though it is unclear exactly how much more than $100,000 because EPIC lists different figures in different places.  *See, e.g.*, Dkt. # 81-2 at 5 ("$110,323.24"), Dkt. 81-9 at 2 ("$110,673.24").  In addition, EPIC asks the Court to apply an elevated billing rate, based not on the presumptively reasonable *Laffey* Matrix maintained and updated by the U.S. Attorney's Office in DC, but on a competing matrix that would result in higher fees for EPIC.  Pl.'s Att'y Fee Br. 13-14.

## THE STATUTORY SCHEME FOR ATTORNEY FEES UNDER FOIA

The FOIA's provision for an award of attorney fees to a prevailing party is found in 5 U.S.C. § 552(a)(4)(E), which reads:

> (i)  The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

> (ii)  For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either—

>> (I)  a judicial order, or an enforceable written agreement or consent decree; or

>> (II)  a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.

5 U.S.C. § 552(a)(4)(E).

The first paragraph of this provision—§ 552(a)(4)(E)(i)—"naturally divides the attorney-fee inquiry into two prongs, which our [Circuit's] case law has long described as fee 'eligibility' and fee 'entitlement.'"  *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (citation omitted).  "The eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees."  *Id.* (citation omitted).  "If so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees."  *Id*. (emphasis in original).  EPIC fails both prongs of this inquiry.

4

**ARGUMENT**

I.     **ELIGIBILITY:  EPIC HAS NOT "SUBSTANTIALLY PREVAILED"; ITS
       ARGUMENTS FOR FEE ELIGIBILITY RUN COUNTER TO THE STATUTORY
       LANGUAGE AND ESTABLISHED CIRCUIT LAW**

       EPIC's motion for attorney fees fails at the threshold stage—the "eligibility" prong of the

attorney-fee inquiry—which requires EPIC to demonstrate it "substantially prevailed" in this

litigation.  As set forth above, FOIA defines "substantially prevailed" as a plaintiff who "has

obtained relief through either (I) a judicial order, or an enforceable written agreement or consent

decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's

claim is not insubstantial."  *See* 5 U.S.C. § 552(a)(4)(E)(ii). The first of these methods requires

EPIC to "identify a court order that 'constitutes judicial relief on the merits resulting in a court-

ordered change in the legal relationship between the plaintiff and the defendant.'"  *Conservation*

*Force v. Jewell*, --- F.Supp.3d ----, No. 12-cv-1665, 2016 WL 471252 at *4 (D.D.C. Feb. 5, 2016)

(citation omitted); *see also Campaign for Responsible Transplantation v. FDA*, 511 F.3d 187,

194 (D.C. Cir. 2007).  The second method codifies the so-called "catalyst theory," and requires

plaintiff to show that "the litigation substantially caused the requested records to be released."

*Conservation Force*, 2016 WL 471252 at *4 (citation omitted) (emphasis added).  EPIC is unable

to show that it "substantially prevailed" under either method.  First, there was no court order

granting EPIC relief on the merits.  Second, the record demonstrates that DHS released records

(and withheld others) in the normal course of its administrative processing; DHS did not

voluntarily or unilaterally change its position, and the litigation did not cause the records to be

released.

       A.   **EPIC did not "obtain relief" through a Court order**

       To demonstrate that it "substantially prevailed" based on court-ordered relief, 5 U.S.C. §

552(a)(4)(E)(ii)(I), a FOIA plaintiff must identify a court order that "change[d] ... the legal

relationship between the plaintiff and the defendant."  *Conservation Force*,  2015 WL 5326103,

at *4.  "[A] favorable order does not make a plaintiff a prevailing party unless the order

constitutes judicial relief on the merits resulting in a court-ordered change in the legal relationship" between the parties. *Campaign for Responsible Transplantation*, 511 F.3d at 196.

EPIC argues that this Court's scheduling order of May 24, 2012 (Dkt. # 12),[3] qualifies as a "judicial order sufficient to establish that EPIC 'substantially prevailed.'" Pl's Mem. 6. However, that order does not so qualify because EPIC did not "obtain[] relief" through it. *Cf.* 5 U.S.C. § 552(a)(4)(E)(ii). DHS did not release records pursuant to the May 24, 2012 order. Indeed, the May 24, 2012 order was modified and superseded—over EPIC's repeated opposition, *see* Dkt. ## 15, 18, 19— by a subsequent order that the Court issued on October 16, 2012 (Dkt. # 25). Moreover, a "'scheduling order[ ]' that did not award the plaintiff 'judicial relief on the *merits* of [its] complaint,'" is "just a matter of court procedure," not a statutory right. *Edmonds v. F.B.I.*, 417 F.3d 1319, 1323 (D.C. Cir. 2005) (alterations and emphasis in original) (quoting *Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Dep't of Energy*, 288 F.3d 452, 458–59 (D.C. Cir. 2002)). Because the May 24, 2012 order did not "change the legal relationship between the parties," *see Campaign for Responsible Transplantation*, 511 F.3d at 194, it does not establish that EPIC "substantially prevailed," *id.*[4]

EPIC further asserts that it "substantially prevailed at numerous other points in the litigation," Pl's Mem 7, but this assertion makes one wonder if EPIC has a different litigation in mind. EPIC did not obtain relief on the merits through an order by this Court. Indeed, this Court rejected nearly all of EPIC's filings and motions in this matter, including the following:

---

[3] The May 24, 2012 Order reads:

> Upon consideration of the proposed schedule in the parties' Joint Meet and Confer Statement, it is this 24th day of May, 2012, hereby ORDERED, that the proposed schedule is adopted as follows: Defendant's Complete Production of Documents and Vaughn Index due by: August 24, 2012[;] Defendant's Motion for Summary Judgment due by: September 24, 2012[;] Plaintiff's Opposition and Cross-Motion for Summary Judgment due by: October 24, 2012[;] Defendant's Reply and Opposition due by: November 7, 2012[;] Plaintiff's Reply due by: November 21, 2012.

[4] If the May 24, 2012 order does establish that EPIC substantially prevailed, as EPIC argues, then EPIC certainly would not be entitled to the more than $100,000 it seeks in attorney fees for work conducted after May 24, 2014. *See* sections II and III, *infra*.

➢ Dkt. #1 (03/01/2012):  *Complaint*.  The Court granted summary judgment for DHS with regard to both the adequacy of DHS's search and the propriety of DHS's withholding of documents and redacted information under FOIA Exemptions 1, 3, 4, and 5.  *See* Dkt. ## 67 (Order), 68 (Mem. Op.).  Although the Court ordered DHS to submit a supplemental *Vaughn* index with respect to the government's reliance on Exemption 7(D), *see id.*, the government had asserted Exemption 7(D) only in the alternative to Exemption 4, and thus the Court's granting of summary judgment to DHS on Exemption 4 covered all redactions at issue in the supplemental *Vaughn*, *see* Dkt. # 74-1 (2d Decl. of Herrington) at ¶ 4.  After DHS filed the supplemental *Vaughn* index to further explain its reliance on Exemption 7(D), EPIC declined to continue pursuing its challenge to DHS's withholdings. *See* Dkt. # 76 (Jt. Status Report).

➢ Dkt. # 15 (9/5/2012):  *EPIC Memorandum in Opposition to Dkt. # 14, DHS's Motion to Continue Stay for 10 Additional Days*.  Rejected by 9/5/2012 Order (Dkt. # 16), granting DHS's motion.

➢ Dkt. # 18 (9/19/2012):  *EPIC Memorandum in Opposition to Dkt. # 17, DHS's Motion to Modify the Scheduling Order*.  Rejected by 10/16/2012 Order (Dkt. # 25), modifying schedule order.

➢ Dkt. # 19 (9/19/2012):  *EPIC Cross-motion for Order to Show Cause, seeking to hold DHS in contempt*.  Denied by 10/16/2012 Order (Dkt. # 25).

➢ Dkt. # 23 (10/5/2012): *EPIC's Reply in support of Dkt. # 19.  See* supra.

➢ Dkt. # 30 (11/21/2012):  *EPIC Memorandum in opposition to Dkt. # 29, DHS's Motion for Extension of Time to File Response to EPIC's Motion for Reconsideration of the 10/16/2012 Order*.  Rejected by 11/26/2012 Minute Order granting DHS's motion.

➢ Dkt. # 31 (11/26/2012):  *EPIC Cross-Motion for Order Granting EPIC's Motion for Reconsideration as Unopposed*.  Denied by 11/26/2012 Minute Order.

➢ Dkt. # 36 (12/7/2012):    *EPIC's Memorandum in opposition to Dkt. # 33, DHS's Cross-Motion to Modify Schedule*.  Rejected by 1/8/2013 Order (Dkt. # 39), modifying the schedule.

➢ Dkt. # 47  (6/28/2013):  *EPIC's Motion to Modify Scheduling Order*.  Denied by 7/25/2015 Order (Dkt. # 49).

➢ Dkt. # 52 (8/16/2013): *EPIC's Memorandum in opposition to Dkt. # 51, DHS's Second Motion for Extension of Time to File Summary Judgment Motion*. Rejected by 8/19/2013 Minute Order.

➢ Dkt. # 57 (9/27/2013):  *EPIC's Cross-Motion for Summary Judgment and Motion for Oral Hearing*.  Denied in whole with prejudice, except denied

without prejudice as to Exemption 7(D), by 8/4/2015 Mem. Op. (Dkt. # 68) and Order (Dkt. # 67).

The Court granted only two motions filed by EPIC, each of which dealt with ministerial issues and received DHS's consent: Dkt. # 10 (5/18/2012), a consent motion to hold the initial scheduling conference telephonically, and Dkt. # 24 (10/10/2012), a consent motion to continue a status conference because of a scheduling conflict. Neither provided EPIC relief on the merits or any basis to find that EPIC substantially prevailed. The Court granted in part and denied in part a third motion filed by EPIC: Dkt. # 26 (11/7/2012), EPIC's motion for reconsideration of the Court's Oct. 16, 2012 revised scheduling order. That motion sought reconsideration of two provisions that the Court had *sua sponte*[5] included in its Oct. 16, 2012 order (Dkt. # 25)— provisions that had directed the parties to develop a protective order and "clawback agreement." As noted, the Court granted in part and denied in part EPIC's motion for reconsideration of the revised scheduling order; in doing so, the Court rescinded the protective order and claw back provisions but also retracted its previously-ordered requirement of rolling productions and provided DHS additional time to process documents. Dkt. # 39 (1/8/2013 Order). EPIC's partial success on this narrow, procedural motion did not provide EPIC "relief on the merits," nor did it require DHS "to do ... something that it had theretofore been unwilling to do," *cf. Campaign for Responsible Transplantation*, 511 F.3d at 194. Therefore, the Court's partial granting of EPIC's motion for reconsideration of the Oct. 16, 2012 order does not establish that EPIC "substantially prevailed." *See id.*

---

[5] EPIC incorrectly states these two provisions were included "at the behest of the agency [DHS]." Pl's Mem. 3. DHS did not seek these provisions; it was only after the Court included them in the revised scheduling order that DHS argued the Court possessed inherent authority to issue temporary protective and clawback orders as a means of facilitating rolling productions while also protecting sensitive national security information and preserving the *status quo* until ruling on motions for summary judgment. *See* Dkt. # 32 (DHS Opp. and In-the-Alternative Cross-Mot.). In the alternative, DHS argued that if the Court were inclined to revisit its protective order and clawback directive, that the Court should also increase the time for DHS's production and allow DHS to make a single production of non-exempt responsive documents rather than rolling productions. *See id.*

EPIC also argues that it "substantially prevailed" based on the Court's orders directing DHS to "produce a *Vaughn* index by a date certain" and later requiring DHS to "file a revised Vaughn Index explaining its withholdings under Exemption 7(D)." Pl.'s Att'y Fee Br. 7.  But "*Vaughn* indices are not properly understood as relief on the merits for a FOIA plaintiff." *Campaign for Responsible Transplantation*, 511 F.3d at 196.  A *Vaughn* index "does not change the legal relationship between the plaintiff and the defendant," and "an order compelling the production of a *Vaughn* index, without more, is not enough to make a plaintiff a 'prevailing party' sufficient to support a claim for attorney's fees." *Id.*

This Court denied EPIC's motion for summary judgment, and granted DHS's motion for summary judgment in large part, effectively upholding all of DHS's withholdings and redactions, as noted above.  The Court also denied nearly all interlocutory motions and oppositions filed by EPIC.  Far from "substantially prevailing" in this litigation, EPIC substantially lost.  EPIC does not establish fee eligibility under 5 U.S.C. § 552(a)(4)(E)(ii)(I) because it did not obtain court-ordered relief on the merits.

### B.  **EPIC does not establish fee eligibility through the catalyst theory**

Nor does EPIC establish fee eligibility by demonstrating it obtained relief through "a voluntary or unilateral change in position by the agency," 5 U.S.C. § 552(a)(4)(E)(ii)(II), the so-called "catalyst theory."[6]  Under the catalyst theory, a FOIA plaintiff must establish that the "lawsuit substantially *caused* the requested records to be released." *N.Y.C. Apparel F.Z.E.*, 563 F.

---

[6] The language of § 552(a)(4)(E)(ii)(II) "essentially codifies the so-called 'catalyst theory' for determining a fee request against the United States." *N.Y.C. Apparel F.Z.E. v. U.S. Customs & Border Prot. Bureau*, 563 F. Supp. 2d 217, 221 (D.D.C. 2008) (internal quotation marks and citation omitted)).  The Supreme Court had rejected the catalyst theory in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 603, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).  *See Oil, Chem. & Atomic Workers Int'l Union, AFL–CIO v. Dep't of Energy,* 288 F.3d 452, 456–57 (D.C. Cir.2002) (applying *Buckhannon* to FOIA context).  But in 2007, Congress abrogated that aspect of *Buckhannon* as applied in the FOIA context, and reinstated the catalyst theory.

Supp. 2d at 221 (*quoting Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1496 (D.C. Cir. 1984)) (emphasis added).

The catalyst-theory inquiry turns on causation: "whether plaintiff's lawsuit was necessary for its attainment of the requested documents." *Citizens for Responsibility & Ethics in Washington v. United States Dep't of Justice*, 83 F. Supp. 3d 297, 304 (D.D.C. 2015). "The mere filing of the complaint and subsequent release of the documents is insufficient to establish causation." *Weisberg*, 745 F.2d 1476, 1496. "Courts must consider other factors, such as whether the agency made a good faith effort to discover and disclose material, whether the scope of the request caused a delay in disclosure, and whether the agency was burdened by other duties that delayed its response." *All. for Responsible CFC Policy, Inc. v. Castle*, 631 F. Supp. 1469, 1470 (D.D.C. 1986); *see also Short v. U.S. Army Corps of Engr's*, 613 F.Supp.2d 103, 106 (D.D.C. 2009) ("The causation requirement is missing when disclosure results not from the suit but from delayed administrative processing.").

EPIC advances a purely chronological, conclusory argument in support of its assertion that the litigation served as a catalyst, stating: "It was not until after EPIC filed this suit and obtained a court order that the agency released [responsive records]." Pl.'s Att'y Fee Br. 7. EPIC provides no evidence that the litigation caused DHS to release records, other than the fact that DHS did not release records until after the litigation began.[7] *See id.* EPIC's conclusory statement that the "lawsuit was the catalyst that drove the agency to release the [records]," Pl.'s Att'y Fee Br. 7 (alteration in original), certainly does not demonstrate causation. EPIC's arguments provides an insufficient basis for this Court to find EPIC eligible for attorney fees under the catalyst theory, *see Weisberg*, 745 F.2d at 1496, particularly in light of evidence showing that DHS's unavoidable delay was caused by the scope of EPIC's request and a time-

---

[7] EPIC relies on "[v]ague assertions of *post hoc, ergo propter hoc*" — the "logical fallacy of assuming that a causal relationship exists when acts or events are merely sequential." *See Conservation Force*, 2015 WL 5326103, at *7.

consuming, diligent administrative process, *see* Mem. Op. (describing search); *Conservation Force*, 2015 WL 5326103, at *4, *7.

Uncontroverted evidence in the record establishes that DHS had begun processing EPIC's FOIA request prior to this lawsuit, and that DHS was in the midst of searching for records responsive to categories 1-4 of the request when EPIC filed its Complaint.  *See* 2d Holzer Decl. ¶¶ 11-13; *see also* Mem. Op. 5 ("On January 23, 2012, a FOIA Specialist from NPPD contacted EPIC by telephone regarding the status of the FOIA request and informed EPIC that DHS was processing it.").  The litigation did not cause DHS to change its position "voluntar[ily]," "unilateral[ly]," or otherwise.  *Cf.* 5 U.S.C. § 552(a)(4)(E)(ii)(II).  Rather, DHS diligently conducted a time-consuming search for records responsive to EPIC's broad FOIA request.  The extended period of time that DHS required to produce to EPIC non-exempt responsive records was caused by administrative challenges, the scope of EPIC's request, and other FOIA duties that burdened the agency at the time that EPIC submitted its request.  None of EPIC's filings in this litigation altered DHS's position. *Brayton,* 641 F.3d at 525.  No court order required that the agency release records that it had previously decided to withhold.  *ACLU,* 810 F. Supp. 2d, 267, 273.  Instead, this Court commended DHS on its search efforts.  *See* Mem. Op. 16 ("The Government here has done a commendable job in performing its search, and the Court concludes that it has shown completion of a sufficient search to satisfy FOIA."); *id.* (describing DHS's efforts as "extraordinary").

In sum, EPIC is not eligible for the attorney fees award it seeks, and the Court should deny EPIC's motion.

## II.   <u>ENTITLEMENT</u>:  ASSUMING *ARGUENDO* EPIC WERE ELIGIBLE FOR FEES, EPIC FAILS TO DEMONSTRATE IT IS ENTITLED TO FEES

Even if EPIC were to demonstrate eligibility for an award of attorney fees, which as discussed above it has not, the Court should still deny EPIC's motion in its entirety because EPIC is not entitled to costs or fees.  *See Weisberg*, 745 F.2d at 1495.

Courts in this Circuit apply "a multi-factor standard for evaluating" entitlement. *McKinley v. FHFA*, 739 F.3d 707, 711 (D.C. Cir. 2014). "Four non-exclusive factors typically govern the entitlement inquiry:  (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents."[8] *Id.* (quotation marks and citations omitted).  The determination whether a plaintiff is entitled to costs and fees generally "rests in the sound discretion of the district court," *Church of Scientology*, 653 F.2d at 590, though there is in this Circuit a "'long- established rule of never granting a fee award to a plaintiff whose FOIA claim was incorrect as a matter of law,'" *Dorsen v. U.S. SEC*, 15 F. Supp. 3d 112, 121 (D.D.C. 2014) (quoting *Brayton*, 641 F.3d at 526).

As an initial matter, the fourth factor in the entitlement inquiry—"the reasonableness of the agency's withholding of the requested documents," *McKinley*, 739 F.3d at 711—presents a clear bar to EPIC's recovery.  As the Court has explained, "attorneys' fees may not be awarded if the government 'had a reasonable basis in law' for withholding the requested documents." *Dorsen*, 15 F. Supp. 3d at 123 (quoting *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1096 (D.C .Cir. 1992).  If the government was more than reasonable—if it was correct as a matter of law—that is the end of the entitlement question.  *Id.* at 121 ("[T]he D.C. Circuit has made clear that 'if the Government's position is correct as a matter of law, that will be dispositive.'" (quoting *Davy*, 550 F.3d at 1162) (alteration omitted)).

Because this Court granted DHS's motion for summary judgment, there can be no question that the Agency's position was "correct as a matter of law," and that EPIC is not entitled to attorney fees.  *See id.*; *Brayton*, 641 F.3d at 526 (observing that the "correct as a matter of law" principle "requires the government to satisfy the summary judgment standard by showing

---

[8] DHS is aware of the critiques concerning the four-factor entitlement inquiry generally, as well  as the public-benefit factor in particular.  *See Dorsen v. U.S. SEC*, 15 F. Supp. 3d 112, 120 n.8,  122 n.9 (D.D.C. 2014).  Still, and as this Court has observed, "this test continues to be binding  in application to cases before this Court."  *Id.* at 120 n.8.

that there are no genuine issues of material fact in dispute and that the government was justified as a matter of law").

Rather than acknowledging the clear bar here, EPIC presents a bare, unsupported argument as to why the fourth entitlement factor favors EPIC.  EPIC argues:  "At no point has the agency offered any substantive justification for withholding the DIB Cyber Pilots [sic] records."  Pl.'s Att'y Fee Br. 12.  Contrary to EPIC's baseless, counter-factual argument, DHS certainly offered substantive justifications for withholding the DIB Cyber Pilot records and portions of records that it withheld, as evidenced by both (a) the 222-page *Vaughn* index and multiple declarations DHS submitted with its motion for summary judgment, and (b) this Court's summary judgment opinion, which did not just discuss DHS's substantive justifications, but also found them persuasive.

To the extent that EPIC meant to argue that "DHS has not offered any substantive justification for its delay in releasing the DIB Cyber Pilot records that it released," such argument would also be counter-factual.  DHS has submitted multiple declarations explaining why it needed a substantial amount of time to complete its processing of EPIC's FOIA request.  *See, e.g.*, 1st Holzer Decl. (Dkt. # 17-1); 2d Holzer Decl. (Dkt. # 55-1).  Likewise, this Court recognized on more than one occasion that DHS needed more time to review potentially responsive records, to determine which were responsive, and to prepare the non-exempt responsive records for release.  *See* Minute Order of Aug. 22, 2012; Dkt. # 16; Dkt. # 25; Dkt. # 39.  Even if EPIC could show that DHS's initial response to EPIC's FOIA response constituted "resistance" and not, as DHS has shown, diligent, continued, meticulous, time-consuming efforts, the fourth factor would still present a complete bar to EPIC's entitlement to fees.  *See Nationwide Bldg. Maintenance, Inc. v. Sampson*, 559 F.2d 704, 712 n. 34 (D.C. Cir.1977) ("Certainly where the government can show that information disclosed after initial resistance was nonetheless exempt from the FOIA a plaintiff should not be awarded attorney fees under section 552(a)(4)(E).").

13

Finally in connection with the fourth factor, EPIC cites DHS's Answer, arguing: "The DHS offered no justification for withholding the responsive records in the agency's answer. *See* Answer." Pl.'s Att'y Fee Br. 12. It is not clear what point EPIC is trying to make here, but in any event, an answer is not a brief, and DHS was not required to included arguments or justifications in its Answer. *See, e.g.*, Fed. R. Civ. P. 8; 5 Fed. Prac. & Proc. Civ. § 1261 (3d ed.). Moreover, EPIC overlooks the numerous averments and defenses DHS included in its Answer, including: (a) averments denying many of EPIC's factual assertions or pointing out that EPIC's assertions constituted legal arguments to which no response was needed; (b) a "den[ial] that plaintiff [was] entitled to the requested relief or to any relief whatsoever," Answer 5; (c) an allegation that EPIC's "claims [were] barred by its failure to timely exhaust administrative remedies," *id.*; and (d) assertions that DHS's "actions did not violate the FOIA or any other statutory or regulatory provision" and that EPIC was "not entitled to compel production of records protected from disclosure by one or more exemptions to the FOIA," *id.*

Though the fourth factor of the entitlement inquiry should in this case be "'dispositive,'" *Dorsen*, 15 F. Supp. 3d at 121 (quoting *Davy*, 550 F.3d at 1162), if the Court elects to consider the other entitlement factors, it should conclude that they too do not favor EPIC.

Under the first factor, courts consider the benefit to the public of the FOIA suit. While "the release of any government document benefits the public by increasing its knowledge of its government," the D.C. Circuit has "held that Congress did not have this broadly defined benefit in mind" when it authorized FOIA fees. *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995); *see, e.g.*, *Alliance for Responsible CFC Policy v. Costle,* 631 F. Supp. 1469, 1471 (D.D.C. 1986) ("The simple disclosure of government documents does not satisfy the public interest factor."). Rather, this Court should "evaluate the specific documents at issue in the case at hand," with a focus on whether the release "is likely to *add* to the fund of information that citizens may use in making vital political choices." *Cotton*, 63 F.3d at 1120 (quotation marks and citation omitted) (emphasis added); *but see Morley v. CIA*, 810 F.3d 841 (D.C. Cir. 2016) ("[I]f it's plausible *ex*

14

*ante* that a request has a decent chance of yielding a public benefit, the public-benefit analysis ends there.").

In connection with the first factor, EPIC has failed to show that the information it received in response to its FOIA request constituted "important *new* information," *Davy,* 550 F.3d at 1159 (emphasis added), that "add[ed] to the fund of information that citizens may use," *Cotton*, 63 F.3d at 1120. By the time that EPIC filed its Complaint in this case (March 2012), and certainly before DHS completed its administrative processing of EPIC's FOIA request and produced non-exempt responsive records, many of which were redacted or highly redacted, (April 2013) the government had already made a significant amount of information regarding the DIB Cyber Pilot available to the public. For example, in January 2012, DHS published on its website the Privacy Impact Assessment ("PIA") for the National Cyber Security Division Joint Cybersecurity Services Pilot ("JCSP").[9] That document provided significant, detailed, substantive information regarding the DIB Cyber Pilot (and the JCSP), its impact on privacy, and its treatment of information that could be considered personally identifiable information (PII). *See* n.10. Similarly, in May 2012, DoD published in the Federal Register an interim final rule providing significant information to the public about the pilot program. *See Department of Defense (DoD)-Defense Industrial Base (DIB) Voluntary Cyber Security and Information Assurance (CS/IA) Activities: Interim Final Rule*, 77 Fed. Reg. 27615 (May 11, 2012).

In contrast, the documents obtained by EPIC through its FOIA request were largely redacted, and the released portions were mostly non-substantive or repetitive of information the government had already and separately provided to the public. *See, e.g.*, Ex. A, Ex. B[10] (samples

---

[9] *Available at* https://www.dhs.gov/sites/default/files/publications/privacy_nppd_jcsp_pia. pdf. The JCSP extended the existing operations of the DIB Cyber Pilot and shifted the operational relationship with the commercial service providers in the pilot to DHS. *See id.*

[10] This document was a copy of DoD's PIA for the Defense Industrial Base (DIB) CS/IA Activities; it did not constitute new information when DHS released it to EPIC in FOIA in April 2013. DoD had previously published an identical document on the DoD website; it was publicly available at least as of May 11, 2012, when a link to it was included within the interim final rule by DoD. 77 Fed. Reg. at 27616 (providing link to http://dodcio.defense.gov/Portals/0/

(cont…)

of released documents).  EPIC's fee motion emphasizes an EPIC Alert "newsletter" that EPIC

issued after receiving DHS's FOIA response.  Pl.'s Att'y Fee Br. 8, 8 n.2, 9 (citing EPIC Alert of

April 30, 2013, attached hereto as Ex. C).  That EPIC Alert, in turn, specifically mentions only

one document released by DHS in response to EPIC's FOIA request, a 13-page document

containing DoD Power Point slides, apparently the only FOIA document EPIC thought

newsworthy at the time it received DHS's FOIA release.  EPIC's attorney fees brief fails to

demonstrate that this document—or for that matter any of the other FOIA documents produced

by DHS—provided the public with the benefit of significant, new information.[11]

More troubling, EPIC appears to have publicized inaccurate, slanted, and potentially

misleading information about the information contained in the documents it received.  Both the

EPIC Alert newsletter and EPIC's attorney-fees brief imply that the DIB Cyber Pilot included

government monitoring of the networks of defense contractors that participated in the pilot.  *See*

Pl.'s Att'y Fee Br. 10 ("[T]he documents revealed that the Defense Department's Office of

General Counsel encouraged defense contractors to adopt language providing expansive consent

to government monitoring."); EPIC Alert § 1 (same).  To the contrary, information released to

EPIC by DHS makes clear that "none of the[] DIB CS/IA activities[12] involve[d] any DoD or

USG [U.S. Government] personnel performing any monitoring of DIB company or other private

networks."  *See* DHS_00941 (Ex. B at 10).  Similarly, both the EPIC Alert newsletter and EPIC's

---

Documents /DIB%20CS-IA%20PIA_FINAL_signed_30 jun2011_VMSS_GGMR_RC.pdf).

[11] The set of DoD Power Point slides appears to (a) cover the same legal considerations associated with network monitoring and user consent that were previously discussed by the Government at great length in two Department of Justice Office of Legal Counsel opinions, available to the public, and (b) otherwise provide marginal and unimportant information.  *See Legal Issues Relating to The Testing, Use, and Deployment of an Intrusion-Detection System (Einstein 2.0) to Protect Unclassified Computer Networks in the Executive Branch* (Jan. 9. 2009), https://www.justice.gov/ sites/default/files/ olc/opinions/2009/01/31/e2-issues_0.pdf; *Legality of Intrusion-Detection System to Protect Unclassified Computer Networks in The Executive Branch* (Aug. 14, 2009), https://www.justice.gov/sites/default/files/ olc/opinions/2009/08/31/legality-of-e2_0.pdf.

[12] The DIB Cyber Security / Information Assurance activities included the DIB Cyber Pilot.  *See* Ex. B at 5.

attorney-fees brief use the loaded term "surveillance" when describing the DIB Cyber Pilot, conveying a false impression of the pilot program, a program which entailed sharing government information with Internet Service Providers to improve the cybersecurity posture of the private sector participants. *Cf.* Pl.'s Att'y Fee Br. 10; EPIC Alert § 1. To the extent the EPIC Alert newsletter that EPIC distributed after receiving the FOIA documents was inaccurate, it detracted from, rather than added to—the public debate on this issue.

Finally, the "commercial benefit" and "nature of the complainant's interest" factors also favor DHS. EPIC's "501(c)(3) non-profit" status, Pl.'s Att'y Fee Br. 11, does not automatically mean that it was not commercially motivated to pursue this litigation. *See, e.g.*, *Nat'l Sec. Archive v. U.S. Dep't of Def.*, 530 F. Supp. 2d 198, 203 (D.D.C. 2008) (finding that not-for-profit organization was commercially and privately motivated); *All. for Responsible CFC Policy, Inc. v. Costle*, 631 F. Supp. 1469, 1471 (D.D.C. 1986) (same). Although EPIC asserts that it has "derived no commercial benefit from its FOIA request or lawsuit," Pl.'s Fee Mem. at 11, it appears that EPIC used FOIA documents released by DHS primarily to promote its own work. *See* news articles cited by EPIC, Pl.'s Att'y Fee Br. 10-11; EPIC Alert April 30, 2013. The first page of the EPIC Alert newsletter through which EPIC promoted both its receipt of the FOIA documents and its litigation work contained a plea for donations, further demonstrating that the "potential for private commercial benefit was sufficient incentive to encourage [EPIC] to pursue [is] FOIA claim[s]," *All. for Responsible CFC Policy*, 631 F. Supp. at 1471. *See* Ex. C at 1 (stating "Defend Privacy. Support EPIC." and providing link to make donations).

At bottom, whether the Court applies the bright-line rule that, "if the Government's position is correct as a matter of law, that will be dispositive," or whether the Court weighs together all the "relevant considerations in the entitlement calculus," *Dorsen*, 15 F. Supp. 3d at 121 (quotation marks, citations and alterations omitted), it should conclude that EPIC is not entitled to costs and fees.

### III.    EPIC'S CLAIMED FEES ARE NOT REASONABLE

#### A.  **EPIC's billing records exhibit multiple problems**

Even if the Court determines that EPIC is entitled to fees and that it will examine EPIC's billing submissions (which it should not), it should still decline to grant the unreasonable award that EPIC seeks.

Where a court determines that a plaintiff is eligible and entitled to fees, the court may grant only those fees that are "reasonable." 5 U.S.C. § 552(a)(4)(E)(i). An appropriate starting point is typically the lodestar, a reasonable number of hours multiplied by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1982). This Court has recognized that the "*Laffey* Matrix" that was developed and maintained by the United States Attorney's Office for the District of Columbia may serve as a useful guidepost for determining reasonable rates for attorneys' fee in complex federal litigation in the District of Columbia. *McClam v. Dist. of Columbia*, 808 F. Supp. 2d 184, 188-89 (D.D.C. 2011).  "The rates contained in the *Laffey* Matrix are typically treated as the maximum rates that will be presumed to be reasonable when a court reviews a petition for statutory attorney's fees." *Id.*

Here, EPIC presents an example of especially egregious overbilling, and courts may properly deny fee motions in their entirety when confronted with such unreasonable requests. As the D.C. Circuit has explained, a court "may deny in its entirety a request for an outrageously unreasonable amount, lest claimants feel free to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place." *Envtl. Defense Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993) (quotation marks and citations omitted); *see LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 906 (D.C. Cir. 1998) ("[A] district court might in some circumstances consider a fee request, or a particular item within a fee request, so 'outrageously unreasonable' that outright denial of the request or an item within the request would be appropriate." (citation omitted)).  Examples of the numerous problems apparent in EPIC's billing records include:

> ➤ The total amounts that EPIC says it is seeking do not equate with the amounts shown on billing spreadsheet it submits.

➢ EPIC bills for the work it conducted on each one of the losing oppositions and motions listed previously in this brief, in section I(A), *supra*.

➢ EPIC bills for working conducted in Dec. 2012 on a memo regarding appellate review of court order, but EPIC had recently filed a motion for reconsideration (of the Oct. 16, 2012 order) and had not yet received a decision, so it would not be working on any appeal

➢ EPIC bills for reviewing the "adequacy of DHS's Exemption 7(D) claims in supplemental Vaughn and Declaration for memo re: appellate review of court order" months before DHS submitted its supplemental *Vaughn* and declaration.

➢ EPIC's billing materials contain careless errors, suggesting that entries have been modified or deleted since recorded, and otherwise undermining EPIC's claim to have maintained contemporaneous billing records.

➢ EPIC lists numerous examples of repetitive, block billing.

➢ EPIC assigned multiple attorneys to conduct routine tasks.

➢ EPIC wasted time opposing routine motions seeking extensions of time.

➢ EPIC spent as much to date on its attorney fees work as it did on summary judgment, even though its summary judgment work included an opening and reply brief.

This Court has previously admonished EPIC not to engage in sharp, sketchy billing practices. *See Elec. Privacy Info. Ctr. v. U.S. DHS* ("*EPIC*"), 982 F. Supp. 2d 56, 64 n.3 (D.D.C. 2013) ("EPIC is now aware of the law. This Court would not like to see EPIC bill a case in this way again. After all, . . . this Court could have in its discretion refused to award *any* fees." (quotation marks, citations and alterations omitted)).  The Court should not now reward EPIC for its unsuccessful, wasteful work.

### B. **EPIC has not shown that the LSI Matrix provides a reasonable hourly rate; the great weight of actual fee awards and fee applications in this Circuit supports the USAO Laffey Matrix.**

EPIC fails to demonstrate that this Court should accept EPIC's preferred hourly rate, based on the so-called "LSI Matrix," rather than the "presumptively reasonable" rates in the *Laffey* matrix maintained and updated by the U.S. Attorney's Office in DC (the "USAO *Laffey* Matrix"), *Jeppsen*, 86 F. Supp. 2d at 38.  "An applicant is required to provide *specific* evidence

of the prevailing community rate for the type of work for which he seeks an award.'" *Eley*, 793

F.3d at 100 (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1329, 1325

(D.C. Cir. 1982)).  Here, EPIC has not met its burden of demonstrating that its suggested rates

are reasonable in this particular case.

   *Eley* emphasizes the persuasive power of actual judicial decisions awarding attorney's

fees as evidence to establish a reasonable hourly rate. *See* 793 F.3d at 102, 104 (repeatedly noting

the government's citation of forty cases awarding attorney's fees based on rates at or below the

USAO *Laffey* Matrix, versus only four cases using the LSI Matrix). Similar to *Eley*, EPIC here

does not overcome the unassailable reality that "the USAO *Laffey* matrix is far more widely

accepted" than the LSI Matrix as "the benchmark for reasonable fees in this Court." *Berke v.*

*Fed. Bureau of Prisons*, 942 F. Supp. 2d 71, 77 (D.D.C. 2013) (quotation omitted); *see also*

*Heller v. District of Columbia*, 832 F. Supp. 2d 32, 48 (D.D.C. 2011) ("[T]he rates produced by

the USAO *Laffey* Matrix are frequently awarded to attorneys engaged in complex federal

litigation in this district."); *DL v. District of Columbia*, 256 F.R.D. 239, 243 (D.D.C. 2009) ("[I]n

the typical case the standard *Laffey* matrix has garnered approval."). Indeed, EPIC does not even

attempt to do so.  It does not cite or even discuss any of the FOIA cases applying the USAO

*Laffey* Matrix.

   Contrary to EPIC's assertion, the recent *Salazar v. District of Columbia* case that EPIC

highlights in its brief does not announce a broad rule that the LSI Matrix provides a superior

adjustment method as compared to the USAO *Laffey* Matrix.  *Compare* Pl.'s Att'y Fee Br. 13-14

*with* Salazar, 30 F. Supp. 3d 47 (D.D.C. 2014).  Salazar is not even a FOIA case, it is a Medicaid

class action case.  30 F. Supp. 3d at 52.

   Looking specifically at FOIA cases in this Court—in accordance with EPIC's burden to

show "the prevailing community rate for the type of work for which [it] seeks an award," *Eley*,

793 F.3d at 100 (quotation omitted)—DHS attaches, as Ex. D to this opposition, the declaration

of Dr. Laura A. Malowane.  Dr. Malowane's research bears out the primacy of the USAO *Laffey*

Matrix. Most fee applicants in FOIA cases in this district do not even seek (let alone receive) the

excessive rates commensurate with the LSI Matrix.[13]  Further examining actual fee awards in FOIA cases per *Eley*, the LSI Matrix rates greatly exceed what this Court awarded earlier in 2015 to a senior partner from a prominent private law firm relying on his actual billing rates. *See Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 82 F. Supp. 3d 396, 409 (D.D.C. 2015).  In that case, a partner at Dorsey & Whitney LLP with over thirty years' experience was awarded FOIA attorney's fees at his normal, undiscounted hourly billing rates of $595 for 2012-2013, $620 for 2013-2014, and $650 for 2014-2015 (as compared to EPIC's requested hourly rates of $753 for 2012-2013, $771 for 2013-2014, and $789 for 2014-2015). *See id*. The Court in that case fittingly denied the concurrent request of non-profit co-counsel to be compensated using the excessive LSI Matrix. *See id*. at 410. Likewise, the Court in *CREW v. U.S. Dep't of Justice* rejected a FOIA plaintiff's attempt to use the elevated-compensation levels of the LSI Matrix rather than the USAO *Laffey* Matrix, holding that the USAO *Laffey* Matrix provided the best available approach for determining a FOIA attorney's hourly rate.  *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, No. CV 12-1491 (JDB), 2015 WL 6529371, at *12 (D.D.C. Oct. 27, 2015).

In the unlikely event that the Court decides to award EPIC attorney fees, even though it is neither eligible nor entitled to such fees, EPIC has not met its burden of demonstrating that the Court should adopt EPIC's preferred hourly rate.

---

[13] The finding that most fee applicants neither seek nor receive hourly rates higher than the USAO *Laffey* Matrix holds true when looking at fee decisions in this Court across all types of cases, without limitation to FOIA matters. *See* Malowane Decl. ¶ 61. Dr. Malowane's search located 132 such cases from the past five years in which it could be determined what fees the applicant sought, or which matrix the applicant proposed using. *See id*. ¶ 58 & n.39. Excluding one particular serial applicant (the same attorney for whom fees were sought in *Eley*), over 80% of all fee requests were at rates the same as or lower than the USAO *Laffey* Matrix rates. *See id*. ¶ 60.  Regardless of including the one serial applicant, fees were actually awarded at or below the USAO *Laffey* Matrix rates in well over 90% of the cases. *See id*. ¶ 62. These empirical findings strongly indicate there is no groundswell of price pressure encouraging higher rates than provided in the USAO *Laffey* Matrix. Few fee applicants in this Court ever seek higher rates, and even fewer obtain them.

## IV.    THE COURT SHOULD NOT AWARD EPIC "FEES-ON-FEES"

To the extent that this Court grants any portion of EPIC's motion, DHS respectfully requests the opportunity to brief EPIC's eligibility/entitlement/reasonableness of fees-on-fees. For now, DHS simply notes that EPIC reportedly spent 50.9 hours to date in an effort to obtain fees in this matter, roughly equivalent to the amount of time it spent on summary judgment which entailed multiple briefs.

## CONCLUSION

For the foregoing reasons, DHS respectfully requests that the Court deny EPIC's motion for costs and fees.

Dated:  March 8, 2016                    Respectfully submitted,

                                         BENJAMIN C. MIZER
                                         Principal Deputy Assistant Attorney General

                                         MARCIA BERMAN
                                         Assistant Director

                                         ___*/s/ Lisa Zeidner Marcus*_____
                                         LISA ZEIDNER MARCUS
                                         Trial Attorney
                                         (N.Y. Bar Registration No. 4461679)

                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         20 Massachusetts Avenue, 7th Floor
                                         Washington, DC 20001
                                         (202) 514-3336
                                         lisa.marcus@usdoj.gov

                                         *Counsel for Defendant*