**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————————

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No. 1:12-cv-00333-GK |
| | ) |
| DEPARTMENT OF HOMELAND SECURITY | ) |
| | ) |
| Defendant. | ) |

———————————————————————

### REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

After four years of FOIA litigation in which EPIC obtained more than 1,300 pages of responsive documents the government now claims—in disregard of fact, law, and the specific provisions concerning attorneys' fee—that EPIC "lost" this case. To reach that conclusion, the government manages in its brief to mischaracterize the law of this Circuit, ignore the plain text of the FOIA, and misunderstand the basic purpose of open government litigation. The government even struggles with simple math.[1]

It is the statutory fee provision, not the "American rule," Def. Opp'n at 1, which governs in FOIA cases. Further, the D.C. Circuit has made clear that court-ordered production schedules are not merely "procedural," Def. Opp'n at 8, but rather qualify as relief under Section 552(a)(4)(E)(ii). *Davy v. C.I.A.*, 456 F.3d 162, 166–67 (D.C. Cir. 2006) ("*Davy I*"). And no FOIA requester could be considered a "losing plaintiff," Def. Opp'n at 1, in a case where it successfully obtained a court order requiring the government to produce more than 1,300 pages of responsive documents.

———————————

[1] "EPIC lists different figures in different places." Def. Opp'n at 2, ECF No. 86 (referring to "110,323.24" and "110,673.24"). These numbers are merely two different parts of the final equation: fees ($110,323.24) + costs ($350) = fees and costs ($110,673.24).

1

Despite the complicated procedural history of this case, the relevant facts before the Court are simple. In July 2011, EPIC submitted a FOIA request to the DHS concerning the Defense Industrial Base Cyber Pilot ("DIB Cyber Pilot"). The DHS failed to process EPIC's request or issue a determination in a timely manner as required by law. Nine months later, on March 1, 2012, EPIC filed this suit to compel a response. During the litigation, the Court ordered DHS to produce responsive records on an expedited basis, and DHS ultimately released 1,386 pages of records concerning a government program of significant public interest. EPIC therefore substantially prevailed and is eligible to recover attorneys' fees under the FOIA.

EPIC's suit added to the fund of public knowledge: the records related to the DIB Cyber Pilot are available to be scrutinized and discussed by academics, technologists, and ordinary citizens for years to come. Furthermore, EPIC is a public interest organization and is clearly entitled to recover fees under the FOIA. Therefore, EPIC is entitled to fees.

Because EPIC is both eligible and entitle to recover fees, and because the fees EPIC seeks in this matter are reasonable, the Court should grant EPIC's request in full and award EPIC $110,323.24 in fees, $350 in costs, and $19,888.10 in fees-on-fees for the preparation of this Reply, as outlined in the Exhibits.[2]

## I. EPIC is eligible for attorneys' fees because it has substantially prevailed against DHS.

Despite the DHS's frivolous arguments to the contrary, EPIC is eligible to recover attorneys' fees because it "has substantially prevailed" in this matter. 5 U.S.C. § 552(a)(4)(E). "The *sin quo non* of eligibility is the release of tangible records." *CREW v. DOJ*, 83 F. Supp. 3d 297, 305 (D.D.C. 2015). In its opposition to EPIC's motion, the

---

[2] *See* Ex. 1, Tran Supp. Decl. ¶ 9. *See also* Sup. Aff. Alan Butler; Sup. Aff. Marc Rotenberg; Sup. Aff. T. John Tran; Aff. Aimee Thomson.

DHS ignores binding precedent that clearly supports EPIC's position. EPIC has "obtained relief" through *both* (A) "a judicial order" that mandated DHS produce records by a date certain and (B) "a voluntary or unilateral change in position by the agency" on a "not insubstantial" claim that resulted in the production of records contrary to government assertions. *See* § 552(a)(4)(E)(ii). Under either provision, EPIC is eligible for fees.

### A. EPIC substantially prevailed because DHS produced documents in response to a judicial order.

The DHS's argument that EPIC did not obtain relief through a court order relies on one recent district court case that is easily distinguishable, *Conservation Force v. Jewell*, -- F. Supp. 3d --, No. 12-cv-1665, 2016 WL 471252 (D.D.C. Feb. 5, 2016), and two D.C. Circuit cases that actually favor EPIC's position, not the government's, *Campaign for Responsible Transplantation v. Federal Drug Administration*, 511 F.3d 187 (D.C. Cir. 2007), and *Edmonds v. FBI*, 417 F.3d 1319 (D.C. Cir. 2005). Def. Opp'n at 6, 9. These citations are misleading at best, and fall apart entirely upon closer examination.

Contrary to the DHS's argument, an order requiring the production of FOIA documents by a date certain is not "just a matter of court procedure." Def. Opp'n at 6 (internal quotation marks omitted). In *Edmonds* the court found that an "order requiring expedited processing" of responsive records was an "enforceable judgment." 417 F.3d at 1322–23. Similarly, in *Campaign for Responsible Transplantation*, the court found that "*Davy* controls" where an agency "released the disputed documents only after the order was issued, and it released the documents pursuant to that order." 511 F.3d at 197. This case is not at all like *Conservation Force*, where the agency voluntarily produced records "before the Court ruled on the stay request." No. 12-cv-1665, 2016 WL 471252 at *3.

The DHS's argument also ignores the widely accepted rule, established by the

D.C. Circuit in *Davy I*, 456 F.3d 162 (D.C. Cir. 2006), that court orders "requir[ing]

Defendant to complete processing of and produce all non-referred, non-exempt

documents by a specified date" are sufficient to qualify "a plaintiff as eligible for fees."

*CREW v. DOJ*, 820 F. Supp. 2d 39, 44 (D.D.C. 2011) (citing *Davy I*); *accord.* R. & R. at

4, EPIC v. FBI, 80 F. Supp. 3d 149 (D.D.C. 2015) (No. 12-667) (finding EPIC eligible

for fees because "the trial court ordered Defendant 'to produce all responsive, nonexempt

records not subject to classification/declassification review on a rolling basis, but in any

event by no later than August 1, 2013'" and this resulted in the "release of thousands of

pages of documents"); *EPIC v. FBI*, 72 F. Supp. 3d 338, 344 (D.D.C. 2014) ("While the

order at issue in *Davy I* was not a 'routine scheduling order,' neither is the Court's June

28, 2013 Order in this case; in addition to addressing scheduling matters, it ordered the

FBI to produce all non-exempt responsive documents by a date certain.").

In *Davy I*, the D.C. Circuit reviewed a district court order requiring the CIA to

provide Davy with "all responsive documents, if any, based on his 1993 and 2000 FOIA

requests, by certain dates." 456 F.3d at 164 (internal quotation marks omitted). The court

concluded that Davy had substantially prevailed because the order was "functionally a

settlement agreement enforced through a consent decree." *Id.* at 166. The order

functioned as "an enforceable judgment on the merits" of Davy's complaint; "[i]f the

Agency failed to comply with the order, it faced the sanction of contempt." *Id.* Courts

have found that even the adoption of a Scheduling Order *proposed by DOJ* changes "the

legal relationship between the parties because prior to its issuance DOJ 'was not under

any judicial direction to produce documents by specific dates; the . . . order changed that

by requiring the Agency to produce all responsive documents by the specified dates.'"
*CREW*, 820 F. Supp. 2d at 44 (quoting *Davy I*, 456 F.3d at 166).

In this case, the Court three times ordered DHS to provide all responsive documents by specified dates, and only modified the deadlines after DHS failed to "take seriously its obligation under the Court's first Scheduling Order of May 24, 2012." Order at 1, Jan. 8, 2013, ECF No. 39. In May 2012, the Court ordered "Defendant's Complete Production of Documents and Vaughn Index due by: August 24, 2012." Order at 1, May 24, 2012, ECF No. 12. In October 2012, the Court rejected a DHS request to extend the deadline to January 2014, and instead ordered the agency to make "complete production of non-exempt documents no later than March 15, 2013." Order at 3, Oct. 16, 2012, ECF No. 25. And in January 2013, the Court ordered DHS to make "complete production of non-exempt documents . . . no later than April 15, 2013." Order at 2, Jan. 8, 2013. In the end, DHS managed to comply with this final deadline.

Furthermore the DHS's myopic focus on whether the court granted or denied individual scheduling motions, Def. Opp'n at 7, misses the forest for the trees. The test is "not merely the size of the relief obtained but whether plaintiff obtained some judicial relief on the merits that resulted in a 'change in the legal relationship' between the parties." *PETA v. NIH*, No. 10-cv-1818, 2015 WL 5326103, at *5 (D.D.C. Sept. 11, 2015); *accord. Conservation Force*, No. 12-cv-1665, 2016 WL 471252 at *4. "[T]o be eligible for fees, a complainant must only substantially—not completely—prevail." *Am. Immigration Council v. DHS*, 82 F. Supp. 3d 396, 404 (D.D.C. 2015) (finding that "[b]ecause Plaintiff's suit caused [Customs and Border Protection] to release at least 156 responsive records . . . AIC 'substantially prevailed' as a result of bringing suit," and

rejecting government arguments that court acquiescence to some withholdings "stripped" AIC of its edibility for fees); *accord. PETA*, 2015 WL 5326103, at *5 (stating that the "degree of plaintiff's success" is not relevant to its "eligibility for a fee award")

The measure of success in a FOIA matter is whether the plaintiff achieved its objective: "obtaining documents unlawfully withheld." *Hall v. CIA*, 115 F. Supp. 3d 24, 28 (D.D.C. 2015). In *Hall*, the "the CIA refused to release the requested records and failed to respond to plaintiffs' request for over a year." *Id.* at 28–29. Only after litigation did the CIA release more than 4,000 documents, which the court considered "a substantial success." *Id.* at 29. The court in *Hall* also found that the plaintiffs could recover fees for all work that "related to and contributed to the ultimate search conducted" even though particular motions were not granted. *Id.*

Just as in *Hall*, the DHS in this case had refused to release the requested records and had failed to make a determination about EPIC's request for many months. *See id.* at 28–29. And just as in *Hall*, EPIC only received documents after several years of litigation. *See id.* at 29. Moreover, EPIC's "actions in diligently pursuing [its] claims were reasonable—even those that were ultimately unsuccessful." *Id.* (stating that the court "will not use the benefit of hindsight to scrutinize every one of plaintiffs' actions"). Indeed, EPIC's worked was not "excessive, redundant, or otherwise unnecessary," but instead "contributed to [its] ultimate success in this case." *Id.*

Moreover, more than half of the filings highlighted in the DHS opposition brief were only necessary because opposing counsel was unable to follow the production and briefing schedules adopted by the court. Indeed, more than a dozen docket entries reflect repeated motions by DHS for stays and extensions:

- ECF No. 6 (Apr. 12, 2012): *Consent Motion for Extension of Time to Respond to the Complaint by U.S. DHS.*
- ECF No. 13 (Aug. 24, 2012): *Motion to Stay Proceedings for 10 Days by U.S. DHS.*
- ECF No. 14 (Sept. 5, 2012): *Motion to Continue Stay of Proceedings for 10 Additional Days by U.S. DHS.* EPIC challenged this motion.
- ECF No. 17 (Sept. 14, 2012): *Motion to Modify the Scheduling Order by U.S. DHS.* EPIC challenged this motion.
- ECF No. 20 (Sept. 25, 2012): *Consent Motion for Extension of Time to File Response/Reply by U.S. DHS.*
- ECF No. 29 (Nov. 21, 2012): *Motion for Extension of Time to File Response/Reply by U.S. DHS.* EPIC challenged this motion.
- ECF No. 33 (Nov. 20, 2012): *Cross Motion to Modify Schedule by U.S. DHS.* EPIC challenged this motion.
- ECF No. 43 (May 31, 2013): *Consent Motion for Extension of Time to Produce to Plaintiff Defendant's Vaughn Index by U.S. DHS.*
- ECF No. 44 (June 14, 2013): *Unopposed Motion for Extension of Time to Produce Vaughn Index by U.S. DHS.*
- ECF No. 45 (June 25, 2013): *Motion for Extension of Time to File Summary Judgment Motion by U.S. DHS.*
- ECF No. 51 (Aug. 15, 2013): *Second Motion for Extension of Time to File Summary Judgment Motion by U.S. DHS.* EPIC challenged this motion.
- ECF No. 69 (Sept. 18, 2015): *Motion for Extension of Time to File Supplemental, Revised Vaughn Index by U.S. DHS.*
- ECF No. 84 (Mar. 3, 2016): *Unopposed Motion for Extension of Time to File Response/Reply as to Motion for Attorney Fees; Motion for Two-Business Day Extension by U.S. DHS.*

EPIC's responses and oppositions to these motions "were not unproductive or unnecessary" because they were "related to and contributed to the ultimate search conducted." *Hall*, 115 F. Supp. 2d at 29. This Court acknowledged the significance of these efforts when it "chastised the Government for its repeated last minute motions requesting extension of time." Order at 2, Oct. 16, 2012.

**B. EPIC substantially prevailed because EPIC's litigation caused DHS to make a "voluntary or unilateral change in position."**

DHS misconstrues the record by characterizing EPIC's claim as "purely chronological" and "conclusory." Def. Opp'n at 10. The record shows that EPIC's litigation *caused* DHS to produce more than 1,300 pages by April 15, 2013, which it undeniably did not want to do. Order at 2, Oct. 16, 2012. DHS also erroneously asserts that EPIC's litigation "did not cause DHS to change its position voluntarily, unilaterally, or otherwise." Def. Opp'n at 11 (internal quotation marks and alternations omitted). The record demonstrates that the litigation *caused* DHS to produce records more quickly than it had intended and to disclose records that it previously claimed did not exist. Furthermore, the cases cited by the DHS are easily distinguishable.

The cases the DHS cites in support of its interpretation of the catalyst theory are distinguishable. *CREW* and *Costle*, for instance, both involved plaintiffs claims relied solely on the timing of the agency's release of documents. *CREW v. DOJ*, 83 F. Supp. 3d 297, 303–04 (D.D.C. 2015); *All. for Responsible CFC Policy, Inc. v. Costle*, 631 F. Supp. 1469, 1471 (D.D.C. 1986). In contrast, EPIC has identified clear changes in the DHS's position that were directly caused by EPIC's lawsuit. Similarly, the plaintiff's lawsuit in *Weisberg v. DOJ* did not cause the disclosure of responsive records, in part, because the lower court failed to take into account the defendant agency's need for additional time under *Open America*. 745 F.2d 1476, 1497 (D.C. Cir. 1984). Here, the DHS had every opportunity to seek an *Open America* stay but made the decision not to do so. This case is also not like *Short v. U.S. Army Corps of Engr's*, where the plaintiff was not the cause of the release of documents because "the Corps," unlike the DHS here, "had already decided

to release the requested records prior to [plaintiff's] filing" of the lawsuit. 613 F. Supp. 2d 103, 108 (D.D.C. 2009).

When Congress reinstated the "catalyst theory" of fee eligibility in 2007, it made clear that the appropriate inquiry is whether the agency has made "a voluntary or unilateral change in position." 5 U.S.C. § 552(a)(4)(E)(ii)(II); *Summers v. DOJ*, 569 F.3d 500, 503 (D.C. Cir. 2009); OPEN Government Act of 2007, Pub. L. No. 110-175, § 4(a), 121 Stat. 2524, 2525. The "key question" is "whether the institution and prosecution of the litigation caused the agency to release the documents obtained during the pendency of the litigation." *Am. Immigration Council v. DHS*, 82 F. Supp. 3d 396, 402 (D.D.C. 2015) (internal quotation marks and alternations omitted); *accord. ACLU v. DHS*, 810 F. Supp. 2d 267, 274 (D.D.C. 2011) ("FOIA litigation 'substantially causes' the release of records if those records were identified as a result of the litigation.").

> **1. DHS did not give any indication that it would produce responsive records until after EPIC initiated this lawsuit, and even then DHS refused to produce responsive records in a timely manner until the Court ordered it to do so.**

In the Answer to EPIC's Complaint, the DHS made clear its refusal to provide responsive records when it denied that EPIC was "'entitled to the requested relief or to any relief whatsoever.'" Answer ¶ 5, ECF No. 7. Yet the DHS ultimately produced 1,386 pages of records responsive to EPIC's FOIA request—the exact relief EPIC requested in the Complaint. Compl. at 6, ECF No. 1. Producing documents after DHS claimed that EPIC was not entitled to the production of documents constitutes a clear change in agency position. *See EPIC v. DHS*, 811 F. Supp. 2d 216, 232–33 (D.D.C. 2011) ("Given DHS's long record of noncompliance to the plaintiff's FOIA requests, followed by DHS's disclosure of a substantial quantity of non-exempt records in response to this suit,

the court concludes that the plaintiff obtained relief with regard to the non-exempt

records by catalyzing a voluntary change in DHS's conduct.").

> **2. EPIC's suit also forced the DHS to process documents on an expedited basis, which the DHS refused to do prior to the Court's scheduling order.**

When the agency sought to delay production through "January 17, 2014," the

Court denied the government's request as "far too far away," and "chastised the

Government for its repeated last minute motions requesting extensions of time." Order at

2, Oct. 17, 2012. Instead, this Court ordered production by March 15, 2013, almost a year

earlier than the government's proposed deadline. *Id.* at 3. The Court later extended this

deadline by one month, but again admonished DHS for its intransigence, observing that

"[t]here is no question that the Government did not take seriously its obligation under the

Court's first Scheduling Order of May 24, 2012." Order at 1, Jan. 8, 2013. There can be

no question that the DHS would not have produced the responsive records on such an

expedited basis but for EPIC's lawsuit.

> **3. EPIC's suit against the DHS was also a "catalyst" for the agency's production of documents that it previously claimed did not exist.**

This court has recognized that an agency undeniably changes position when it

produces documents in litigation that it claimed did not exist prior to litigation. *Am.*

*Immigration Council*, 82 F. Supp. 3d at 403–04 (finding that the agency's production of

records "manifests a 180-degree reversal from their initial position that no further

responsive records existed" and that the "Plaintiff's lawsuit served as a necessary

catalyst"). Just so here.

In August 2011, DHS stated that the "agency had conducted a search and been

able to identify or locate any records responsive to category 5 of EPIC's FOIA Request."

2d Holzer Decl. ¶ 9. Category 5 requested any privacy impact assessment ("PIA")

performed as part of the development of the DIB Cyber Pilot. Compl. ¶ 17. Yet as a

result of EPIC's litigation, the DHS produced numerous records—created well before

August 3, 2011—that involved a PIA for the DIB Cyber Pilot. *E.g.*, Ex. Vaughn Index at

221–22, ECF No. 53-4 (describing a November 2008 PIA Questionnaire and Risk

Review for the DIB Cyber Pilot that the agency withheld in full); *id.* at 25 (describing an

April 26, 2011 email chain about language for a draft PIA); *id.* at 120 (describing an

April 26, 2011 email chain discussing the development of a PIA for the DIB Cyber Pilot);

*id.* at 150 (describing a June 6, 2011 email chain discussing a draft PIA for the DIB

Cyber Pilot); *id.* at 150–51 (describing a March 25, 2011 email chain about the possible

need to develop a PIA for the DIB Cyber Pilot); *id.* at 151–52 (describing April 26, 2011,

May 11, 2011, and June 7, 2011 email chains discussing potential privacy implications of

the DIB pilot, the status of the DIB pilot PIA, and the development of a PIA for the Joint

Cybersecurity Services Pilot, which extended the existing operations of the DIB Cyber

Pilot).[3] The records released by the agency are reproduced in Exhibit A.

The DHS cannot now deny that it changed its position during the course of this

litigation. The core issue for the fee determination in this case is whether the agency

would produce responsive records in a timely manner. The agency sought to delay and

defer production from day one, but EPIC successfully achieved through litigation what

the agency would not voluntarily agree to: expedited processing and release of records.

---

[3] The records produced by DHS also included the final PIA (dated January 13, 2012), Ex.
Vaughn Index at 203, and numerous records discussing the privacy impact assessment
prepared after August 3, 2011, *e.g.*, *id.* at 4–12, 18, 19–20, 23–25, 27–28, 39, 152, 153–
154. These records are included in Exhibit B.

**II. EPIC is entitled to recover fees under the four-factor test.**

Contrary to the DHS's assertion, the four-factor entitlement test employed by the D.C. Circuit clearly weighs in EPIC's favor. *See Davy I* at 163*; see also Morley v. CIA*, 719 F.3d 689, 690 (D.C. Cir. 2013) (reaffirming the four-factor test)) ("*Morley I*"). The DHS's opposition focuses primarily on two of the four factors—the reasonableness of the agency's withholding and the "public benefit" derived from the case—although the agency also includes a cursory and frivolous one-paragraph argument regarding factors 2 and 3, Def. Opp'n at 17. The agency's fourth factor (reasonableness) argument is incorrect as a matter of fact and based on a fundamental misunderstanding of the law. The agency's first factor (public benefit) runs directly contrary to the recent and unambiguous ruling of the D.C. Circuit in *Morley v. Central Intelligence Agency*, 810 F.3d 841 (D.C. Cir. 2016).

**A. The DHS had no colorable legal basis for delay in producing the records.**

The DHS's reasonableness argument rests on the faulty premise that because "this Court granted DHS's motion for summary judgment, there can be no question that the Agency's position was 'correct as a matter of law.'" Def. Opp'n at 12. This argument fundamentally misunderstands the purpose of this litigation and the nature of the relief that EPIC sought and successfully obtained—prompt production of responsive records. The DHS's alternative argument, that the agency delayed in this case because it "needed more time to review potentially responsive records," Def. Opp'n at 13, is similarly unavailing. The Court explicitly rejected the DHS's requests for delay in the October 2012 and January 2013 orders. The DHS offers no evidence or citations to controlling cases to support the proposition that it was "correct as a matter of law" when it sought to

delay production of responsive records by nearly two years. In addition to the lack of

supporting evidence or case law, the DHS's argument fails for two additional reasons.

First, contrary to the DHS's assertions, the agency's delays were a direct product

of the agency's heel-dragging and intransigence. The DHS asserts that it made "diligent,

continued, meticulous, time-consuming efforts," in processing EPIC's FOIA request. *Id.*

But the docket in this case tells a much different story. As the agency wonders aloud, the

parties may indeed have "a different litigation in mind." Def. Opp'n at 6. The Court's

September 5, 2012 Order—granting the agency a second, consecutive ten-day stay—

followed back-to-back, last-minute DHS requests for delay. Order at 1, Sept. 5, 2012,

ECF No. 16. There, the Court even found reason to make it clear that the agency was

being granted "the **FINAL** stay." *Id.* (emphasis in original). In the October 16, 2012

Order, the Court denied the DHS's plea for a 16-month delay, instead granting the agency

just six additional months to produce responsive documents. Order at 2, Oct. 16, 2012.

But the Court most accurately describes the DHS's intransigence in its January 2013

order, stating that:

> There is no question that the Government did not take seriously its
> obligation under the Court's first Scheduling Order of May 24, 2012. It
> would appear, from the Government's processing of 4,000 pages in the
> last two months, that the Government finally woke up and did take
> seriously the revised Scheduling Order of October 16, 2012.

Order at 1–2, Jan. 8 2013. Rather than highlighting agency diligence, the Court clearly

found that the agency was asleep at the wheel until EPIC and the Court nudged it awake.

Second, the DHS did not establish that it was entitled to a "substantial amount of

time to complete its processing of EPIC's FOIA request." Def. Opp'n at 13. Even if the

DHS had filed for an *Open America* Stay, which it cannot now do in retrospect, there is

little chance that it would have prevailed given the lack of supporting evidence presented. An agency seeking to stay the proceedings under the *Open America* standard must show that "(1) exceptional circumstances exist; and (2) that the [agency] is 'exercising due diligence' in responding" to the request. *EPIC v. FBI*, 933 F. Supp. 2d 42, 47 (D.D.C. 2013) (citing 5 U.S.C.§ 552(a)(6)(C)(i)). Courts have made clear that an administrative backlog and limited resources alone are not sufficient to justify an *Open America* stay. *Id*. at 49–50.

Not only was the DHS's delay in this case unjustified, the agency did not even follow the proper procedure to request additional time for production. The agency cannot now ask the Court to retroactively grant relief that it did not seek in the first place. In addition, the Court's orders in 2012 and 2013 made clear that the agency's proposed production schedules were unreasonable. As a result, factor four clearly favors EPIC.

**B. Under the D.C. Circuit's ruling in *Morley*, the public benefit factor clearly favors EPIC.**

The DHS does not even attempt in its opposition to distinguish the most recent D.C. Circuit case concerning the public benefit factor, *Morley v. Central Intelligence Agency*, 810 F.3d 841 (D.C. Cir. 2016), because there is no way to distinguish it. Instead, the agency attempts to draw attention away from binding case law by quoting two older cases that are not directly on point: *Cotton v. Heyman*, 63 F.3d 1115 (D.C. Cir. 1995), and *Alliance for Responsible CFC Policy v. Costle*, 631 F. Supp. 1469 (D.D.C. 1986). Def. Opp'n at 14. But the Court need not look beyond *Morley* to decide this case. The public benefit factor clearly favors EPIC. The DHS is simply wrong as a matter of law when its states that EPIC was required to "show that the information it receives in

response to a FOIA request constituted important *new* information." Def. Opp'n at 15

(internal citation omitted).

The traditional articulation of the "public benefit" factor is that it weighs in favor

of a FOIA plaintiff where dissemination of the information obtained is "likely to add to

the fund of information that citizens may use in making vital political choices." *Cotton v.*

*Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (internal citations omitted). But the D.C.

Circuit has explained that:

> Lest there be any uncertainty, we clarify that the public-benefit factor
> requires an *ex ante* assessment of the potential public value of the
> information requested, with little or no regard to whether any documents
> supplied prove to advance the public interest. We can imagine a rare case
> where the research harvest seemed to vindicate an otherwise quite
> implausible request. But if it's plausible *ex ante* that a request has a decent
> chance of yielding a public benefit, the public-benefit analysis ends there.

*Morley v. CIA*, 810 F.3d 841, 844 (D.C. Cir. 2016) ("*Morley II*"); *see also Morley I*, 719

F.3d at 690 (quoting *Davy v. CIA*, 550 F.3d 1155, 1162 n.3 (D.C. Cir. 2008) ("*Davy II*")

for the proposition that "[i]t would also be inconsistent with congressional intent to

disqualify plaintiffs who obtain information that, while arguably not of immediate public

interest, nevertheless enables further research ultimately of great value and interest").

Given this rule, the DHS argument that because "the government had already

made a significant amount of information regarding DIB Cyber Pilot available to the

public," the public benefit factor weighs in the agency's favor is irrelevant. Def. Opp'n at

15. Because the fruit of EPIC's request—more than 1,300 pages of previously unreleased

records describing the DHS's DIB Cyber Pilot—has more than a "decent chance of

yielding a public benefit," the Court should conclude that "the public-benefit analysis

ends there." *Morley II*, 810 F.3d at 844.

**C. The second and third entitlement factors clearly favor EPIC.**

The DHS's argument concerning the second and third entitlement factors is cursory and frivolous, based on a mischaracterization of cases in this Circuit. The DHS argues that the Court should disallow fees in this case because "it appears that EPIC used FOIA documents released by the DHS primarily to promote its own work," and that the EPIC Alert newsletter promoting the FOIA records at issue included "a plea for donations." Def. Opp'n at 17. But courts have repeatedly granted EPIC's fee requests in cases very similar to this one and no court has adopted the rule that DHS requests. *E.g., EPIC v. FBI,* 72 F. Supp. 3d 338, 347 (D.D.C. 2014); *EPIC v. DHS*, 999 F. Supp. 2d 61, 69 (D.D.C. 2013); *EPIC v. DHS*, 811 F. Supp. 2d 216, 235 (D.D.C. 2011).

"FOIA suits which are motivated by scholarly, journalistic, or public interest concerns are the proper recipients of fee awards." *Tax Analysts v. DOJ,* 759 F. Supp. 28, 30 (D.D.C. 1991), *aff'd*, 965 F.2d 1092 (D.C. Cir. 1992). And even if "some private benefit accrued to EPIC by means of their success, 'Congress did not intend for scholars (or journalists and public interest groups) to forgo compensation when acting within the scope of their professional roles.'" *EPIC v. DHS*, 999 F. Supp. 2d at 69 (quoting *Campbell, v. U.S. DOJ*, 164 F.3d 20, 35-36 (D.C. Cir. 1998)). As the D.C. Circuit explained:

> Surely every journalist or scholar may hope to earn a living plying his or her trade, but that alone cannot be sufficient to preclude an award of attorney's fees under FOIA. "If newspapers and television news shows had to show the absence of commercial interests before they could win attorney's fees in FOIA cases, very few, if any, would ever prevail."

*Davy II*, 550 F.3d at 1160 (quoting *Tax Analysts*, 965 F.2d at 1096).

The DHS does not contest EPIC's journalistic or public interest motivation in this case, nor does it claim that EPIC's actions fall outside the organization's professional

role. The fact that EPIC obtains charitable contributions in furtherance of its public education mission underscores EPIC's commitment to promote public dialogue.

In *EPIC v. NSA*, the court rebuffed a similar government argument against EPIC's public interest status. 87 F. Supp. 3d 223, 234 (D.D.C. 2015). There, just as here, "[t]he defendant cites to no authority for the proposition that a non-profit organization's success at obtaining the release of documents should be held against it when that same organization mentions such success indirectly in its fundraising appeals." *Id.* This Court should reach the same conclusion here.

**III. EPIC'S proposed fee award is reasonable based on the record in this case and prevailing rates upheld by the D.C. Circuit.**

The DHS has not provided any evidence to show that EPIC's fee request in this case is "unreasonable" Def. Opp'n at 18. Having failed to do so, the agency cannot carry its burden to overcome the presumption in favor of the reasonableness of what EPIC has submitted. *See EPIC v. NSA*, 87 F. Supp. 3d 223, 229 (D.D.C. 2015). The DHS does not dispute, and therefore concedes, that EPIC's billing records are "contemporaneous, complete and standardized," and "accurately reflect the work done by each attorney." *CREW v. FEC*, 66 F. Supp. 3d. 134, 148 (D.D.C. 2014).

Rather than provide any relevant facts, the DHS simply includes a list of assertions, none of which provide a basis for the Court to determine that the fee award EPIC seeks is unreasonable. Furthermore, the DHS's arguments regarding applicable hourly rates overstate the primacy of the USAO method of adjusting the *Laffey* Matrix and ignore the D.C. Circuit's recent decision in *Salazar ex rel Salazar v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015). Instead, the agency merely resubmits arguments made and cases decided prior to *Salazar*. Def. Opp'n at 19–21.

Finally, the Court should not grant the DHS any additional opportunity to "brief EPIC's eligibility/entitlement/reasonableness of fees-on-fees." Def. Opp'n at 22. The agency has had ample opportunity to articulate its position on EPIC's fee request, and there is no justification for further briefing. EPIC has spent a substantial amount of time on this fee litigation due to the agency's refusal to accept a reasonable settlement offer. A party cannot request that the Court reconsider an argument that it has previously waived or failed to address in its opposition. *GSS Group Ltd. v. Republic of Liberia*, 31 F. Supp. 3d 50, 59 (D.D.C. 2014).

### A. EPIC's affidavits and billing records are contemporaneous, accurate, and complete.

The DHS offers only conclusory accusations, rather than actual evidence, to counter EPIC's reasonable fee request. *See* Def. Opp'n at 18–19. Courts recognize that EPIC's billing process is "exactly the type of recordkeeping required for fee awards." *EPIC v. NSA*, 87 F. Supp. 3d at 235; *see also* Tran Supp. Decl.

Given that EPIC spent many hours preparing and submitting these detailed and complete records to this court, the DHS bears the burden "to come forward with 'specific contrary evidence' to rebut the presumption of reasonableness that inheres in the plaintiff's fee request." *EPIC v. NSA*, 87 F. Supp. 3d at 235 (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1109–10 (D.C. Cir. 1995)). But the DHS has failed to do so in this case. Even the conclusory list of grievances that DHS has included in its opposition does not highlight any errors that would warrant reducing EPIC's proposed fee award.[4] EPIC has already exercised substantial billing judgment in this case, and

---

[4] EPIC notes that the billing records from December 2012 accurately reflect the work that Ms. Horwitz did to prepare for a potential appeal of the Court's October 17, 2012, Order. Tran Supp. Decl. ¶ 6. It appears that there was a small transcription error in one of the

"trial courts need not, and indeed should not, become green-eyeshade accountants in examining fee requests since [t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Id.* at 235 (internal quotations omitted).

Because the remainder of the DHS's objections lack "specific contrary evidence" to rebut the presumptive reasonableness of EPIC's fee request, *Covington*, 57 F.3d at 1109–10, a response is both unfeasible and unnecessary. However, EPIC responds to the following agency assertions.

First, the DHS asserts that "EPIC seeks more than $100,000, though it is unclear exactly how much more than $100,000 because EPIC lists different figures in different places." Def. Opp'n at 4 (citing Tran Decl. at 5, ECF No. 81-5; Exhibit G, No. 81-9 at 2). This, the agency proclaims, is a clear example of EPIC's "careless errors" and "sketchy billing practices." *Id.* at 19. But a straightforward reading of the numbers at issue show no inconsistency and calls into question the agency's other claims. In Exhibit G, containing EPIC's detailed billing records, EPIC states that the "GRAND TOTAL" of the fee request, including costs, is $110,673.24. Exhibit G at 2. In his declaration, EPIC FOIA Counsel John Tran states "a reasonable fee for the *time* EPIC attorneys spent litigating this matter would be $110,323.24." Tran Decl. 5 (emphasis added). One sentence later, Mr. Tran states "EPIC also seeks recovery of $350 in costs associated with this matter." *Id.* The sum of these amounts is $110,673.24, or the figure cited in Exhibit G. If anything, the DHS's failure to quickly recognize the $350 discrepancy—precisely the amount routinely billed as the filing fee in FOIA cases—calls into questions the government's other contentions.

---

billing entries, but EPIC has confirmed that both date and hours billed are accurate. Tran Supp. Decl. ¶ 5.

Second, the DHS claims that EPIC's "work conducted in Dec. 2012 on a memo regarding appellate review" should not have taken place before EPIC received a final decision. However, it is both reasonable and logical for an attorney to begin research on appellate review of a decision before the decision is ripe for appeal. "It is, quite simply, unnecessary and a waste of judicial resources to engage in such a picayune review of the subjective reasonableness" of the timing of legal research. *EPIC v. NSA*, 87 F. Supp. 3d at 235. Without any specific claim to rebut the presumptive reasonableness of EPIC's fee request, the agency's claim should be rejected.

Third, the agency's vague accusation that "entries have been modified or deleted since recorded," and thus "undermining EPIC's claim to have maintained contemporaneous billing records" is a prime example of one of the agency's baseless claims lacking "specific contrary evidence." *Covington*, 57 F.3d at 1109–10. However, EPIC notes to the Court that an attorney may modify entries prior to final submission in order to clarify for the Court what task is being billed. *Cobell v. Norton*, 407 F. Supp. 2d 140, 154–55 (D.D.C. 2005); *see also* Tran Supp. Decl. ¶ 5.

Courts have routinely ruled favorably on EPIC fee claims in FOIA matters, typically awarding nearly the entire fee amount sought by EPIC. *See, e.g.*, *EPIC v. FBI*, 72 F. Supp. 3d 338, 356 (D.D.C. 2014) (awarding EPIC $19,923 in fees and $350 in costs when EPIC requested $21,774 in fees and $350 in costs); *EPIC v. DHS*, 999 F. Supp. 2d 61, 69 (D.D.C. 2013) (awarding $29,841.67 in fees and $350 in costs when EPIC requested $37,197.75 in fees and costs); *EPIC v. DHS*, 892 F. Supp. 2d 28, 53 (D.D.C. 2012) (finding that EPIC was entitled and eligible to recover the full amount of its requested attorneys' fees and costs).

**B. The DHS concedes that the rates established in *Laffey* apply in this case and the D.C. Circuit has found that the LSI adjustment method is superior to the USAO method.**

The DHS correctly notes that the rates established in *Laffey* are widely recognized as reasonable in complex federal litigation. Def. Opp'n at 19–20; *see Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) ("*Laffey* I established (and *Laffey* II affirmed) the following schedule for lawyers who practice 'complex federal litigation' . . . ."). Indeed, in recognition of the complex nature of FOIA litigation, courts have previously granted EPIC fee awards based on *Laffey* rates. *E.g.*, *EPIC v. FBI*, 72 F. Supp. 3d at 349; *EPIC v. DHS*, 999 F. Supp. 2d at 70. But until recently it was an open question what method should be used to adjust the original *Laffey* rates to account for inflation. The D.C. Circuit answered that question in *Salazar ex rel Salazar v. District of Columbia*, finding that the Legal Services Index ("LSI") method produced reasonable results superior to the USAO method. 809 F.3d 58 (D.C. Cir. 2015); *see also CREW v. DOJ*, 80 F. Supp 3d 1, 3 (D.D.C. 2015) ("[T]he Court is persuaded that the LSI-adjusted Laffey Matrix, while imperfect, offers a better methodology for estimating prevailing market rates for complex federal litigation in Washington, D.C.").

More recently, the LSI *Laffey* matrix has been adopted in a FOIA case in this Circuit. *CREW v. DOJ*, No. 1:11-CV-00374, 2016 WL 554772, at *1 (D.D.C. Feb. 11, 2016) (awarding FOIA attorneys' fees based on the LSI *Laffey* matrix). *But see Poulsen v. DHS*, No. CA 13-498, 2016 WL 1091060, at *6 (D.D.C. Mar. 21, 2016) (declining to apply the LSI *Laffey* matrix in a case that "did not involve creation of a *Vaughn* index or briefing of dispositive motions"). The DHS in this case has not provided any compelling evidence to show that the LSI method does not produce reasonable rates. The only evidence cited by the agency, Def. Opp'n at 20–21, is the same declaration that was

rejected by the court in *CREW*. *CREW*, No. 1:11-CV-00374 (CRC), 2016 WL 554772, at

*1 (relying on the LSI-adjusted *Laffey* rates instead of adopting Dr. Malowane's

recommendation that the court use USAO *Laffey* Matrix, Decl. Dr. Laura Malowane,

CREW, No. 1:11-CV-00374 (CRC), 2016 WL 554772, ECF No. 73-1). DHS does even

include alternative billing rates that would apply to the current year.

   The DHS is correct when it states "most fee applicants in FOIA cases in this

district do not seek (let alone receive)" rates based on the LSI *Laffey*. Def. Opp'n at 20.

But that is only true because it was not until the recent decision in *Salazar v. District of

Columbia*, that the D.C. Circuit has provided certainty as to the reasonableness of the LSI

*Laffey* matrix. The DHS's reliance on *Eley v. District of Columbia* is misplaced. Def.

Opp'n at 20. The *Eley* panel reversed a lower court fee award because the plaintiff failed

to establish that LSI Laffey rates "'are in line with those prevailing in the community for

*similar* services,' i.e., IDEA litigation." *Eley*, 793 F.3d 97, 104–05 (D.C. Cir. 2015)

(quoting *Covington*, 57 F.3d at 1107). The Court in *Salazar* explained that the *Eley*

analysis was adopted "in the particular context of IDEA claims, [where] there is a

submarket in which attorneys' hourly fees are generally lower than the rates in either of

the Laffey matrices." *Salazar*, 809 F.3d at 64. The court in *CREW* examined the market

for attorneys' fees in FOIA cases, "identified no such submarket," and concluded that

LSI *Laffey* rates were reasonable. *CREW*, No. 1:11-CV-00374 (CRC), 2016 WL 554772,

at *1 (internal quotation omitted).

   The case billing record in this matter contains detailed, contemporaneous time

entries along with a calculation of the lodestar rate for each individual entry based on the

applicable rate for each attorney in the LSI *Laffey* matrix. Tran Decl. ¶¶ 3–5. Because the

D.C. Circuit has found that the LSI method produces reasonable fee rates, and because courts in this Circuit have applied LSI *Laffey* rates in FOIA cases, the Court should find that the rates used to calculate fees requested by EPIC in this matter are reasonable.

### C. DHS has waived its opportunity to dispute to EPIC's request for fees-on-fees.

It is "'is settled in this circuit' that '[h]ours reasonably devoted to a request for fees are compensable,'" provided they are reasonable. *EPIC v. FBI*, 80 F. Supp. 3d 149, 162 (D.D.C. 2015) (citing *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Rest.*, 771 F.2d 521, 528 (D.C. Cir. 1985) (modification in the original)). Moreover, EPIC is entitled to fees incurred in the production of this reply brief because the DHS has "raised a variety of threshold and substantive objections to fees" to which EPIC has "appropriately responded." *Am. Immigration Council v. DHS*, 82 F. Supp. 3d 396, 413 (D.D.C. 2015) (finding that plaintiff's request for fees-on-fees, which included successful litigation on whether plaintiff was even eligible for and entitled to attorneys' fees, was "not excessive" and was "reasonably devoted to its request for fees" (internal quotation marks and alterations omitted)).

By failing to object to EPIC's request for fees-on-fees, Def. Opp'n at 14, the DHS has waived its opportunity to dispute EPIC's eligibility for and entitlement to its reasonable request for fees-on-fees.[5] The DHS does not get a second opportunity to brief issues raised by EPIC's motion.

### CONCLUSION

EPIC is eligible for and entitled to recover its fees and costs from the DHS in this matter. EPIC's fees are reasonable and supported by the proper documentation. The

---

[5] Counsel for DHS appears to have run out of time to respond to all of the points raised in EPIC's Motion for Attorney Fees. Def. Opp'n (filed on March 9, 2016 at 12:57 AM).

Court should award EPIC $110,323.24 in fees, $350 in costs, and $19,888.10 in fees-on-fees for time spent preparing this Reply, as documented in the Exhibits attached to EPIC's Motion for Fees and the Exhibits attached to this Motion.

Respectfully submitted,

MARC ROTENBERG (DC Bar #422825)
EPIC Executive Director

ALAN JAY BUTLER (DC Bar #1012128)
EPIC Senior Counsel

*/s/ Jeramie Scott*
JERAMIE SCOTT (DC Bar #1025909)
Electronic Privacy Information Center
1718 Connecticut Ave. NW
Suite 200
Washington, DC 20009
202-483-1140
jscott@epic.org
*Counsel for Plaintiff*

Dated: March 22, 2016